Dennis Everett Lacy    F-64225
Mule Creek State Prison
4001 Highway 104
P.O. Box 409000    M1A-04up
Ione, California  95640
          IN PRO SE



FILING FEE PAID
Yes ___  No ✓
IFP MOTION FILED
Yes ✓  No ___
COPIES SENT TO
Court ✓  Pro Se

FILED

JUN 18 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# IN THE DISTRICT COURT OF THE UNITED STATES

## IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

DENNIS EVERETT LACY,
          DEFENDANT / PETITIONER,

          vs

PEOPLE OF THE STATE OF CALIFORNIA,
          PLAINTIFF / RESPONDENT,
JAMES TILTON,
     SECRETARY OF CORRECTIONS,
CALIFORNIA DEPARTMENT OF
     CORRECTIONS & REHABILITATION,
THE ATTORNEY GENERAL OF THE
     STATE OF CALIFORNIA,
          RESPONDENT,

'08 CV 1083 W BLM

CIVIL NUMBER: _____
(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

PETITION FOR WRIT OF HABEAS CORPUS

UNDER 28 U.S.C. §2254
BY A PERSON IN STATE CUSTODY

01. Name and location of the court that entered the judgment of conviction under attack:
     Superior Court of California - San Diego County – North County Division
     325 South Melrose Drive   Vista, California  92081

02. Date of judgment of conviction:   February 28th, 2007

03. Trial court case number of the judgment of conviction being challenged:   SCN223021

04. Length of sentence:   32 months

05. Sentence start date and projected release date:
     Sentence Start Date:       March 15th, 2007
     Projected Release Date:    February 9th, 2009

06. Offense(s) for which you were convicted or pleaded guilty (all counts):   PC §484 / §666

07. What was your plea?   GUILTY

08. If you pleaded not guilty, what kind of trial did you have?   NOT APPLICABLE

09. Did you testify at the trial?   NO

01                                    **DIRECT APPEAL**

02

03    10. Did you appeal from the judgment of conviction in the *California Court of Appeal?*    **YES**

04    11. If you appealed in the *California Court of Appeal*, answer the following:
      (a) Result:    **Wende Brief Filed by Appointed Counsel**
05    (b) Date of Result:    **UNKNOWN**
      (c) Case Number and Citation [if known]:    **SCN 223021/D050836**
06    (d) Grounds raised on direct appeal:    **Wende Brief Filed by Appointed Counsel**

07    12. If you sought further direct review of the decision on appeal by the *California Supreme Court* (e.g., a
      Petition for Review), please answer the following:    **NOT APPLICABLE**
08

09    13. If you filed a petition for certiorari in the *United States Supreme Court*, please answer the following with
      respect to that petition:    **NOT APPLICABLE**
10

11                        **COLLATERAL REVIEW IN STATE COURT**

12

13    14. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any
      petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment
14    in the *California Superior Court?*    **YES**

15    15. If your answer to #14 was "YES", give the following information:

16        (a) *California Superior Court* Case Number:    **HCN932**
          (b) Nature of Proceeding:    **Petition for Writ of Habeas Corpus**
17        (c) Grounds Raised:    **Perjury / Insufficient Evidence / Ineffective Assistance of Counsel**
          (d) Did you receive an evidentiary hearing on your petition, application or motion:    **NO**
18        (e) Result:    **DENIED**
          (f) Date of Result:    **11/08/2007**

19

20    16. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any
      petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment
21    in the *California Court of Appeal?*    **YES**

22    17. If your answer to #16 was "YES", give the following information:

23        (a) *California Court of Appeal* Case Number:    **D052020**
          (b) Nature of Proceeding:    **Petition for Writ of Habeas Corpus**
24        (c) Grounds Raised:    **Perjury / Insufficient Evidence / Ineffective Assistance of Counsel**
          (d) Did you receive an evidentiary hearing on your petition, application or motion:    **NO**
25        (e) Result:    **DENIED**
          (f) Date of Result:    **03/20/2008**

26

27    18. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any
      petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment
28    in the *California Supreme Court?*    **YES**

01  19. If your answer to #18 was "YES", give the following information:

02      (a) *California Supreme Court* Case Number:    S162649
    (b) Nature of Proceeding:    **Petition for Writ of Habeas Corpus**
03      (c) Grounds Raised:    **Perjury / Insufficient Evidence / Ineffective Assistance of Counsel**
    (d) Did you receive an evidentiary hearing on your petition, application or motion:    **NO**
04      (e) Result:    **DENIED**
    (f) Date of Result:    **05/21/2008**

05

06  20. If you did not file a petition, application, or motion (e.g., a Petition for Writ of Habeas Corpus) with the
California Supreme Court containing the grounds raised in this federal Petition, explain briefly why you did
07  not:    **NOT APPLICABLE**

08

09  ## COLLATERAL REVIEW IN FEDERAL COURT

10  21. Is this your first federal Petition for Writ of Habeas Corpus challenging this conviction?    **YES**

11  //

12  //

13  //

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

**22.   GROUNDS FOR RELIEF**

GROUND 01: State concisely every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

INEFFECTIVE ASSISTANCE OF COUNSEL – Court Appointed Counsel failed to submit appropriate motions prior to "readiness conference" [Order to Show Cause; Motion to Suppress; etc.]; failed to investigate witnesses (Warren A. Woodberry); failed to properly investigate origin and authenticity of document presented by witness Warren A. Woodberry on behalf of MICHAEL STEWART [document now claimed by MICHAEL STEWART in Declaration dated 02/29/2008 to be fraudulent in nature]; failed to called Arresting Officer/Investigating Officer JUSTIN ROMANO (Oceanside Police Department #1284) to the witness stand during the Preliminary Hearing conducted on 01/23/2007 in order to impeach testimony of witness WARREN A. WOODBERRY.

SUPPORTING FACTS: (Tell your story briefly without citing cases or law)

The facts are set forth under oath in the Statement of Facts and Arguments and Memorandum of Points and Authorities In Support of Petition for Writ of Habeas Corpus; Request for Appointment of Counsel; Request for Expedited Hearing and attached Exhibits "A" thru "J" as fully incorporated herein.

SUPPORTING CASES, RULES, OR OTHER AUTHORITY (optional):

Legal Authority is set forth in the Statement of Facts and Arguments and Memorandum of Points and Authorities In Support of Petition for Writ of Habeas Corpus; Request for Appointment of Counsel; Request for Expedited Hearing and attached Exhibits "A" thru "J" as fully incorporated herein.

Did you raise **GROUND ONE** in the *California Supreme Court*?    YES

01    23.    GROUNDS FOR RELIEF

02        **GROUND 02:** State concisely every ground on which you claim that you are being held in
03        violation of the constitution, law or treaties of the United States. Summarize briefly the facts
          supporting each ground. If necessary, you may attach pages stating additional grounds and/or facts
04        supporting each ground.

05        **Prosecution Error / Misconduct** – Prosecutor failed to advise the Court that the witness
06    (WARREN A. WOODBERRY) has testified at the Preliminary Hearing on 01/23/2007, under oath,
      presenting statements and information contrary and contradictory to the statements and information he
07    had presented to Oceanside Police Officer JUSTIN ROMANO (#1284) on the evening of 01/04/2007 at
      the Wal-Mart Stores, Inc. facility, in order to secure the arrest of this Petitioner for the alleged violation
08    of Penal Code Section §211, a Robbery.

09

10        **SUPPORTING FACTS:** (Tell your story briefly without citing cases or law)

11        The facts are set forth under oath in the Statement of Facts and Arguments and Memorandum of
      Points and Authorities In Support of Petition for Writ of Habeas Corpus; Request for Appointment of
12    Counsel; Request for Expedited Hearing and attached Exhibits "A" thru "J" as fully incorporated
      herein.
13

14        **SUPPORTING CASES, RULES, OR OTHER AUTHORITY** (optional):

15        Legal Authority is set forth in the Statement of Facts and Arguments and Memorandum of
      Points and Authorities In Support of Petition for Writ of Habeas Corpus; Request for Appointment of
16    Counsel; Request for Expedited Hearing and attached Exhibits "A" thru "J" as fully incorporated
      herein.
17

18

19

20

21

22

23

24

25

26

27    Did you raise **GROUND TWO** in the *California Supreme Court*?    **YES**

28

01     24.     GROUNDS FOR RELIEF

02          GROUND 03: State concisely every ground on which you claim that you are being held in
          violation of the constitution, law or treaties of the United States. Summarize briefly the facts
03          supporting each ground. If necessary, you may attach pages stating additional grounds and/or facts
          supporting each ground.

04

05          Witness WARREN A. WOODBERRY submitted Manufactured / Fabricated / Fraudulent
     Evidence at the Preliminary Hearing conducted 01/23/2007, claiming the document presented was on
06     behalf of MICHAEL STEWART, representing that the document had been given to WARREN A.
     WOODBERRY by MICHAEL STEWART in order to present before the Court at the scheduled
07     Preliminary Hearing on 01/23/2007. Newly discovered evidence in the form of a Declaration of
     MICHAEL STEWART dated February 29th, 2008 relating to a Civil Complaint in the Superior Court of
08     California, County of San Diego – North County Division, Case Number #37-2007-00079792-CU-CR-NC
     entitled LACY vs WOODBERRY/STEWART/WAL-MART STORES, INC., establishes that MICHAEL
09     STEWART declares: "12. I never provided any statements or declarations to any individual or entity
     relating to the January 4th, 2007 incident at Wal-Mart."

10

11          SUPPORTING FACTS: (Tell your story briefly without citing cases or law)

12          The facts are set forth under oath in the Statement of Facts and Arguments and Memorandum of
     Points and Authorities In Support of Petition for Writ of Habeas Corpus; Request for Appointment of
13     Counsel; Request for Expedited Hearing and attached Exhibits "A" thru "J" as fully incorporated
     herein.

14

15          SUPPORTING CASES, RULES, OR OTHER AUTHORITY (optional):

16          Legal Authority is set forth in the Statement of Facts and Arguments and Memorandum of
     Points and Authorities In Support of Petition for Writ of Habeas Corpus; Request for Appointment of
17     Counsel; Request for Expedited Hearing and attached Exhibits "A" thru "J" as fully incorporated
     herein.

18

19

20

21

22

23

24

25

26

27     Did you raise GROUND THREE in the *California Supreme Court*?     YES

28

25.    GROUNDS FOR RELIEF

GROUND 04: State concisely every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

INSUFFICIENT EVIDENCE was presented within the testimony of the Preliminary Hearing conducted on 01/23/2007, in the Municipal Court in order to justify a finding that the Petitioner had exhibited the required elements of "force" and/or "fear" against WARREN A. WOODBERRY on the evening of 01/04/2007, during the incident outside of the Wal-Mart Stores, Inc. facility, in which a finding of "guilt" could be justified for a bind-over to the Superior Court for further proceedings.

SUPPORTING FACTS: (Tell your story briefly without citing cases or law)

The facts are set forth under oath in the Statement of Facts and Arguments and Memorandum of Points and Authorities In Support of Petition for Writ of Habeas Corpus; Request for Appointment of Counsel; Request for Expedited Hearing and attached Exhibits "A" thru "J" as fully incorporated herein.

SUPPORTING CASES, RULES, OR OTHER AUTHORITY (optional):

Legal Authority is set forth in the Statement of Facts and Arguments and Memorandum of Points and Authorities In Support of Petition for Writ of Habeas Corpus; Request for Appointment of Counsel; Request for Expedited Hearing and attached Exhibits "A" thru "J" as fully incorporated herein.

Did you raise **GROUND FOUR** in the *California Supreme Court*?    YES

01   26. Do you have any petitions or appeals now pending in any court, either state or federal, pertaining to the judgment under attack?    NO

02

03   27. If your answer to #26 is "YES", give the following information:    **NOT APPLICABLE**

04   28. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

05

06       (a) At Preliminary Hearing:    **David A. Thompson**

07                                       **San Diego County Public Defender's Office**
                                         **400 South Melrose Drive   #200    Vista, California   92081**

08       (b) At Arraignment and Plea:    **David A. Thompson**

09                                       **San Diego County Public Defender's Office**
                                         **400 South Melrose Drive   #200    Vista, California   92081**

10       (c) At Trial:    **NOT APPLICABLE**

11       (d) At Sentencing:    **David A. Thompson**

12                             **San Diego County Public Defender's Office**
                               **400 South Melrose Drive   #200    Vista, California   92081**

13       (e) On Appeal:    **GARY V. CROOKS**

14                         **3401-A Adams Avenue #308**
                           **San Diego, California   92116**

15       (f) On any Post-Conviction proceeding:    **NOT APPLICABLE**

16       (g) On Appeal from any adverse ruling in a Post-Conviction proceeding:    **NOT APPLICABLE**

17   29. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?    NO

18

19   30. Do you have any future sentence to serve after yu complete the sentence imposed by the judgment under attack?    NO

20

21   I, the undersigned, say: I am the Petitioner in this action. I declare under penalty of perjury under the laws of

22   the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

23   DATED: June 15th, 2008                        Respectfully Submitted,

24

25                                      /S/  Dennis Everett Lacy        F-64225
                                       Dennis Everett Lacy
26                                      Petitioner/Defendant IN PRO SE
                                       Mule Creek State Prison
27                                      P.O. Box 409000    M1A-04up
                                       Ione, California   95640

28

# APPENDIX A

S162649

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

In re DENNIS EVERETT LACY on Habeas Corpus

---

The petition for writ of habeas corpus is denied.

SUPREME COURT
FILED

MAY 2 1 2008

Frederick K. Ohlrich Clerk

_____
Deputy

**GEORGE**
_____
Chief Justice

01   Dennis Everett Lacy    F-64225
     Mule Creek State Prison
02   4001 Highway 104
     P.O. Box 409000    M1A-04up
03   Ione, California  95640
              IN PRO SE

04

**FILED**

JUN 1 8 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

05              IN THE DISTRICT COURT OF THE UNITED STATES

06          IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

07

08

09   DENNIS EVERETT LACY,
                   DEFENDANT / PETITIONER,
10
                        vs
11                                          CIVIL NUMBER:

**'08 CV 1083 W BLM**

              (TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

12   PEOPLE OF THE STATE OF CALIFORNIA,      **PETITION FOR WRIT OF HABEAS CORPUS**
                   PLAINTIFF / RESPONDENT,
13   JAMES TILTON,
         SECRETARY OF CORRECTIONS,            UNDER 28 U.S.C. §2254
14   CALIFORNIA DEPARTMENT OF                BY A PERSON IN STATE CUSTODY
         CORRECTIONS & REHABILITATION,
15   THE ATTORNEY GENERAL OF THE
         STATE OF CALIFORNIA,                 **EXHIBITS "A" thru "J"**
16                   RESPONDENT,

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

WMO-30 (4/94)

## Wal-Mart Stores, Inc.
## Loss Prevention Apprehension Report
### (PLEASE PRINT CLEARLY)

Date: Offense: __6 / 09, 2007__

Shoplifting __✓__   Other _____

Case # IS __07__ - __00__ - __03__ - __41__
(YR) (RG) (ST) (SEQ#)

Store Location: __OCEANSIDE, CA__ # __5025__
(City, State)

Name: __CARR__                    __DENNIS__
(Last)                    (First)

(If minor, parent or legal guardian's name)

Address: __15'2 S. NEVADA #H__   __45 OCEANSIDE   CA__   __92054__
(Street)         (City)         (State)         (Zip Code)

Phone: ( ___ ) _____   Age: __46__   DOB: __05/30/60__   SS#: __555 - 08 - 4347__

Description: __6'__ , __165__ , __M__ , __W__ , __BLND__ , __GRN__ , __LT__
(Height) (Weight) (Sex) (Race)   (Hair)   (Eyes)   (Complexion)

__MARRIED__ ,
(Marital Status)                 (Scars / Distinguishing Marks)

$ _____
(Value of Purchase Made)         __N9616594__ , __CA__
                                 (Driver's License Number)         State

$ __40.00__
(Amount of Money on Person)

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

Apprehended by: __WARREN WOODBERRY__   , __ASSET PROTECTION__
(Name)                         (Job Title)

Time Apprehended Person Came / Left Office:   Arrived: __2125__   Departed: _____

Time Police Officer Called: __2140__   Arrived: __2150__   Parents Called: _____   Arrived: _____

Police Officer: __C. Wilson__   Badge No. __1095__

Charges Filed?   Yes __✓__   No _____   Was EAS involved?   Yes _____   No __✓__

Location of Evidence: __ASSET PROTECTION OFFICE__   Evidence Tagged?   Yes __✓__   No _____

Person Preparing Report? __WARREN WOODBERRY__   , __ASSET PROTECTION #1__
(Name)                         (Job Position)

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

| Item Description | Dept. Number | Cost | Retail Unit Price | Quantity | Total |
|---|---|---|---|---|---|
| Rascal Flatts CD | 5 | | 13.88 | 1 | 14.96 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| Total | | | | | |

Name of Witnesses: __MICHAEL STEWART__   (If not associate, address and Phone)

Read top paragraph of Civil Statute and gave copy to offender?                    Yes _____   No _____

Case # _____ - _____ - _____ - _____

Statement of Facts (Who, What, When, Where):                    Date of Offense: _____ / _____ / _____

ON THURSDAY January 4TH, at Appoximately 2125 hrs. I, WARREN WOODBERRY oBSERVED A WHITE male INDIVIDUAL IN THE ELECTRONICS dept. SELECT A CD AND BEGAN TO ACT VERY SUSPICIOUS By looking AROUND AND Act AS IF HE was waiting FOR THE AISLE TO CLEAR. I BEGAN To follow THE INDIVIDUAL LATER TO BE KNOWN AS MR DOUGLES LACY TO THE AUTO MOTIVE DEPARTMENT WHERE THERE HE REMOVED A SET OF KEYS FROM HIS RIGHT SIDE Pocket AND OPEN THE CD. WITH MR. LACY STILL IN CLEAR VIEW. I followed Him To HARD WARE. THERE MR LACY SELECTED THREE CANS OF SPRAY PAINT. I CONTINUED To Follow MR. LACY To THE FRONT END OF THE FACILITY WHERE HE (IN PUT THE AUTOMOTIVE DEPT IS WHERE MR. LACY CONCEALED THE CD ON HIS PERSON. WHEN HE REACHED THE FRONT END HE PURCHASED THE THREE CANS OF SPRAY PAINT AND A CAN OF CINNAMON ROLLS I CONTINUED To Followed MR. LACY BECAUSE HE FAILED TO PURCHASE THE CD. I Approache MR LACY APPROXIMATELY 4-5 FEET FROM THE EXIT OF THE FACILITY AND ASKED IF THERE WERE ANY ITEMS ON HIS PERSON WHICH HE DID NOT PURCHASE HE THEN BECAME VERY IRATE. MR. LACY HAD TO BE PHYSICALLY RESTRAINED AND ESCORTED BACK INTO THE FACILITY ASSISTANT manager MICHAEL STEWART WITNESSED THE INCIDENT. OCEANSIDE Police WAS CONTACTED.

Statement of Person Apprehended:

_____

# EXHIBIT "B"



ALWAYS LOW PRICES.

WAL★MART
WE SELL FOR LESS
MANAGER ADAM BOWER
( 760 ) 730 - 1371
OCEANSIDE, CA 92056
ST# 5075 OP# 00000893 TE# 17 TR# 01469
RASCAL FLATT 072061650752      13888 X
SUBTOTAL      13888
TAX 1  7.750 %      1008
TOTAL      14896
CASH TEND      14896
CHANGE DUE      0800

# # ITEMS SOLD 1

*************************************
****  INVALID RECEIPT - TRAINING  ****
*************************************
It's Rollback Season,
10,000 ways to save.
01/04/07    22:12:45

# EXHIBIT "C"

# OCEANSIDE POLICE DEPARTMENT

## OFFICER'S REPORT NARRRATIVE

07000341
Case Number

Offense:  PC 211 Robbery

Location:  3405 Marron Rd. Oceanside, Ca

Victim:  Wal Mart

Suspect:  Lacy, Dennis

Date of offense:  01/04/07

Beat:/Dist.:  07/037

---

1   **ORIGIN:**

2   On 1/4/07 at about 2150 hours, I responded to a radio call reference a PC 211 suspect being

3   detained at Wal Mart located at 3405 Marron Rd.  Officers Ringrose and Wilson also responded

4   to the scene.

5

6   **OFFICERS OBSERVATIONS AND ACTIONS:**

7   Upon my arrival I contacted Asset Protection Associate Woodberry.  Woodberry informed me he

8   had a subject later identified as (Dennis Lacy), detained in the Loss Prevention Room.  Woodberry

9   stated he observed Lacy take a CD off of the shelf, open the CD case, took the disk out of the case,

10  and placed the disk into the left breast jacket pocket.  Lacy then exited the store with out paying for

11  the CD.  As Woodberry confronted Lacy, Lacy became irate and attempted to assault Woodberry.

12

13  Woodberry provided me with a written statement detailing the incident involving Lacy.  I also took

14  Woodberry's information and verbal statement necessary for the report.   Woodberry was unable to

15  play back the surveillance video that captured the incident.  I provided lacy with a case number and

16  in formed to contact OPD once the surveillance video was accessible.

17

18  As I took custody of Lacy I noticed he had a small abrasion on the top of his head and had an

19  approximate 3 inch abrasion on his left cheek.  I asked Lacy if he received the abrasions during the

20  struggle with Woodberry.  Lacy said he was not injured during the struggle.  Lacy stated he received

21  the abrasions two days prior when he was doing some work around his house.

---

| Reporting employee | I.D. No. | Date | Division | Reviewed by | I.D. No. | Page No. |
|---|---|---|---|---|---|---|

# OCEANSIDE POLICE DEPARTMENT

# OFFICER'S REPORT NARRRATIVE

07000341
Case Number

Offense: PC 211 Robbery

Location: 3405 Marron Rd. Oceanside, Ca

Victim: Wal Mart

Suspect: Lacy, Dennis

Date of offense: 01/04/07

Beat:/Dist.: 07/037

1  I transported Lacy to OPD for processing. I admonished Lacy of his Miranda rights. Lacy invoked\
2  his Miranda rights and refused to make a statement. FET Rebick took photographs to document the
3  abrasions to Lacy's head and facial area. Lacy was later booked into VDF for PC 211 Robbery.

4

5  **STATEMENTS:**
6  Woodberry said on 1/4/07 at about 2125 hours, observed Lacy in the Electronics Department.
7  Lacy took a (Rascal Flats) CD off of the shelf. Lacy began to look around to see if anyone was
8  watching him. He then waited for the aisle to clear.

9

10  Woodberry followed Lacy to the Automotive Department. Woodberry observed Lacy remove a
11  set of keys from his right side pant pocket. Woodberry saw Lacy use the keys to remove the CD
12  packaging open the CD case. Lacy then placed the disk into his left breast jacket pocket.

13

14  Lacy continued on to the Hard wear Department. Lacy picked up three cans of spray paint and
15  proceeded to the check out register. Lacy purchased the three cans of spray paint and a can of
16  cinnamon rolls but did not pay for the CD.

17

18  Once Lacy had exited the store Woodberry confronted Lacy about the CD. Woodberry asked
19  Lacy to bring the CD back into the store. Lacy said he was not going to go back into the store.
20  As Woodberry approached Lacy, Lacy became irate and physically combative. He attempted to
21  hit Woodberry in the face with a closed right fist. Woodberry was able to avoid Lacy's punch
22  and managed to grab hold of Lacy's arms. Lacy was able to pull his right arm free. Lacy raised
23  his right arm up in a closed fist towards Woodberry's face and attempted to strike Woodberry.

| Reporting employee | I.D. No. | Date | Division | Reviewed by | I.D. No. | Page No. |

# OCEANSIDE POLICE DEPARTMENT

## OFFICER'S REPORT NARRATIVE

| 07000341 |
| --- |
| Case Number |

Offense: PC 211 Robbery

Location: 3405 Marron Rd. Oceanside, Ca

Victim: Wal Mart

Suspect: Lacy, Dennis

Date of offense: 01/04/07

Beat:/Dist.: 07/037

---

1 Lacy missed Woodberry and Woodberry got a hold of Lacy and pulled Lacy towards him. As

2 Woodberry was escorting Lacy back into the store, Lacy and Woodberry tripped over each other

3 and fell to the ground. Woodberry was able to regain control of Lacy and detained him in the

4 loss prevention room.

5

6 **EVIDENCE:**

7 See Evidence Report.

8

9 **INJURIES:**

10 None.

11

12 **WITNESS:**

13 See attached.

14

15 **PROPERTY LOSS:**

16 None.



## OCEANSIDE POLICE DEPARTMENT
## PROPERTY & EVIDENCE

Submitted by: Justin Romano

CASE#: 07000341
Incident Type: PC 211
Page 1 of 1
Location occurred:
3405 Marron Rd.

**SUSPECT(S)**

| NAME: Lacy, Dennis | DOB: 05/30/1960 | JUVENILE [ ] |
| NAME: | DOB: | JUVENILE [ ] |
| NAME: | DOB: | JUVENILE [ ] |

**VICTIM/OWNER/FINDER:**

TYPE: Owner    NAME:    Lacy, Dennis    DOB:    05/30/1960    PHONE: (760)721-3297
JUVENILE [ ]    ADDRESS: 1115 1/2 #A S. Nevada St    CITY: Oceanside    ZIP: 92054
TYPE:    NAME:    DOB:    PHONE:
JUVENILE [ ]    ADDRESS:    CITY:    ZIP:

| BARCODE | ITEM# | CATEGORY | DESCRIPTION | SERIAL# | CURRENCY AMT |
|---|---|---|---|---|---|
| 00043228 | 001 | Evid Veh | Key chain with 10 keys attached to it. | | |
| | HOLD AS | DATE SEIZED | LOCATION SEIZED | OFFICER INSTRUCTIONS | |
| | Evidence | 01/05/2007 | 3405 Marron Rd. | | |

EXHIBIT "D"

D. .LARATION AND DETERMINATION    GENERAL
(PROBABLE CAUSE FOR WARRANTLESS ARREST)

| ARRESTEE: Lacy, Dennis, Everett | DOB: 05/30/60 | BOOKING #: |
|---|---|---|

| CHARGES: PC 211 Strong Arm Robbery | DATE/TIME/PLACE OF ARREST: 01/04/07 2240 Hours 3405 Marron Rd. Oceanside, Ca |
|---|---|

| ARRESTING AGENCY: Oceanside PD | ARRESTING OFFICER / ID #: Romano #1284 | AGENCY FAX #:435-4979 |
|---|---|---|

## FACTS ESTABLISHING ELEMENTS OF CRIME AND IDENTIFICATION

On 1/4/07 at about 2200 hours, I received a radio call reference a robbery suspect in custody at the Wal Mart located at 3405 Marron Rd. Upon my arrival, I contacted asset Protection Associate Woodberry. Woodberry informed me he had a subject identified as Dennis Lacy in custody.

Woodberry informed me that he was watching the surveillance cameras and observed Lacy in the Electronics Department and picked up a CD off of the shelf. Lacy then began to look around waiting for the aisle to clear. Woodberry followed lacy to the Automotive Department. Lacy took out a set of keys from his pocket and used the keys to open the CD packaging, took the CD out of the case, and placed the CD into the left breast pocket of his jacket. Lacy went to the check out register and purchased three cans of spray paint and a can of cinnamon rolls. Lacy did not pay for the CD.

Lacey exited the store and was approached by Woodberry. Woodberry asked Lacy if he had any items on his person that he forgot to purchase. Lacy became irate with Woodberry. As Woodberry began to escort Lacy back into the store Lacy became physically combative with Woodberry. Lacy tried to strike Woodberry in his face with his right closed fist. Woodberry was able to avoid Lacy's punch and was able to get a hold of Lacy's arms. Lacy was able to pull his right arm free and raised his right arm up in a closed fist and tried to strike Woodberry in his face. Lacy missed and Woodberry pulled Lacy towards him. Lacy and Woodberry tripped over each other and fell to the ground. Woodberry was able to gain control of Lacy and detained him in the Loss Prevention Room.

---

☐ **See attached reports, incorporated herein by reference**

------------------------------------------------

I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief. Executed in the County of San Diego, State of California.

Dated: 1/4/07                                          (Declarant's Signature)

------------------------------------------------

On the basis of the foregoing Declaration (☐ and attached reports), I hereby determine that there:

☐ IS                    ☐ IS NOT

probable cause to believe this arrestee has committed a crime.

---

(Date)          (Time)              (Magistrate's Signature)

                              By:

                                    (For Telephonic Approvals)

# EXHIBIT "E"

05 28

SAN DIEGO REGIONAL
ARREST/JUVENILE CONTACT REPORT

| | | |
|---|---|---|
| [X] ARREST REPORT | | AGENCY NUMBER: 07000341 |
| [ ] JUVENILE CONTACT | | SDSO BOOKING NUMBER: 07701014A |

| WARRANT [ ] LOCAL [ ] OUT | AGENCY: OPD | ARJIS ASSISTED? [Y] [X] | PAGE 1 of 8 | RELATED REPORTS (TYPE, NUMBER) |
| NOTIFY WARRANT | ARREST DATE 1/4/07 | TIME 2240 | BEAT/DISTRICT 7/037 | | CITATION NUMBER |

**CHARGE(S):** PC 211 ROBBERY

ADDN'L. CHGS. [ ]    ADULT RELEASES [ ] OR [ ] 849PC [ ] 1 [ ] 2

**PERSON ARRESTED (L,F,M):** LACY DENNIS EVERETT

NICKNAME:

| RACE CODE LEGEND | A: OTHER ASIAN B: BLACK C: CHINESE | D: CAMBODIAN E: FILIPINO F: GUAMANIAN | H: HISPANIC I: INDIAN J: JAPANESE | K: KOREAN L: LAOTIAN O: OTHER | P: PACIFIC ISLANDER S: SAMOAN | U: HAWAIIAN V: VIETNAMESE W: WHITE | Z: ASIAN INDIAN |

| RACE ~ | SEX M | AGE 46 | D.O.B. 5/30/60 | P.O.B. PANAMA | HT. 600 | WT. 165 | BUILD THIN | HAIR GRY BRN | EYES BRN |

**ALIAS/MAIDEN NAME (L,F,M):**

**ARRESTEE'S ADDRESS:** 1115 1/2 #A S. NEVADA    CITY: OCEANSIDE    HOME PHONE: 721-3297

| MILITARY YES [ ] | OCCUPATION/RANK UNEMPLOYED | EMPLOYER/SCHOOL UNEMPLOYED | ADDRESS | CITY | BUS. PHONE NA |

**EMERGENCY CONTACT/NEXT OF KIN (L,F,M):**    ADDRESS    CITY    HOME PHONE

| IS SUBJECT A SUSPECTED USER OF NARCOTICS/DRUGS? YES [X] | INTERPRETER REQUIRED? YES [ ] | LANGUAGE ENGLISH | SUSPECT'S RELATION TO VICTIM(S): | RELATIVE  ACQUAINTANCE  STRANGER [X] |

**LOCATION OF ARREST:** 3405 MARRON RD    CITY: OCEANSIDE    **LOCATION OF OFFENSE:** 3405 MARRON RD    CITY: OCEANSIDE    OFFENSE DATE 1/4/07    OFFENSE TIME 2130

| CITIZEN ARREST? YES [ ] | ARRESTING OFFICER ROMANO | I.D. 1284 | ADMONISHED BY ROMANO | DO YOU UNDERSTAND EACH OF THESE RIGHTS THAT I HAVE EXPLAINED TO YOU? "YES" |

HAVING IN MIND AND UNDERSTANDING YOUR RIGHTS AS I HAVE TOLD YOU, ARE YOU WILLING TO TALK WITH US? "NO."    STATEMENT YES [ ]

### ARRESTEE DESCRIPTION

| HAIR LENGTH/TYPE | HAIR STYLE | FACIAL HAIR | COMPLEXION | SPEECH | VOICE |
|---|---|---|---|---|---|
| 1 BALD 2 COLLAR 3 LONG 4 NECK 5 SHORT 6 SHOULDER 1 COARSE 2 FINE 3 THICK 4 THINNING 5 WIRY 6 OTHER: | 1 AFRO/NAT. 2 BRAIDED 3 BUSHY 4 GREASY 5 MILITARY 6 PONYTAIL 7 PROCESSED 8 STRAIGHT 9 WAVY/CURLY 10 WIG 11 OTHER: | 1 CLEAN SHAVE 2 FULL BEARD 3 FU MANCHU 4 GOATEE 5 LOWER LIP 6 MUSTACHE 7 NONE/FUZZ 8 SIDEBURNS 9 UNSHAVEN 10 VAN DYKE 11 OTHER: | 1 ACNE 2 DARK 3 FRECKLED 4 LIGHT 5 MEDIUM 6 PALE 7 POCKED 8 RUDDY 9 SALLOW 10 TANNED 11 OTHER: | 1 ACCENT 2 LISPS 3 MUMBLES 4 OFFENSIVE 5 QUIET 6 RAPID 7 SLOW 8 STUTTERS 9 TALKATIVE 10 OTHER: | 1 DISGUISED 2 HIGH PITCH 3 LOUD 4 LOW PITCH 5 MEDIUM 6 MONOTONE 7 NASAL 8 PLEASANT 9 RASPY 10 SOFT 11 OTHER: |
| [5] [4] | [8] | [1] | [4] | [5] | [5] |

| DRIVER'S LICENSE NO. N9616594 | STATE CA |
| SOCIAL SECURITY NO. 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 |
| FBI NO. |
| CII NO. |
| OTHER I.D. | TYPE |
| UNDOCUMENTED PERSON | YES [ ] |

**FURTHER SUSPECT DESCRIPTION (I.E., GLASSES, TATTOOS, TEETH, BIRTHMARKS, JEWELRY, SCARS, MANNERISMS, ETC.)**
TT DAGO STOMACH   TT NAKED GIRL UPPER RIGHT ARM   UNICORN RIGHT FOREARM

**CLOTHING DESCRIPTION** GRY FLANNEL JACKET BLK HAT RED SWEATSHIRT BLK JEANS BLK SHOES

| SUSPECT VEHICLE: | YEAR | MAKE | MODEL | COLOR/COLOR | BODY TYPE | LICENSE NO. | STATE |

**ADDITIONAL VEHICLE IDENTIFIERS (CHROME, DAMAGE, ETC.)  VIN NUMBER**    DISPOSITION OF VEHICLE

**REGISTERED OWNER (L,F,M):**    ADDRESS    CITY

### EVID.

**PROPERTY TAG NOS.** 00341    **DISPOSITION OF EVIDENCE** OPD EVIDENCE

### COMPAN'S

| #1 NAME (L,F,M) | ADDRESS | CITY | PHONE | RACE | SEX | AGE | D.O.B. | ARRESTED YES [ ] | ADDN'L. COMPANIONS LISTED |
| #2 NAME (L,F,M) | ADDRESS | CITY | PHONE | RACE | SEX | AGE | D.O.B. | ARRESTED YES [ ] | YES [ ] |

### VIC./W.

| [V/W] NAME (L,F,M) WAL MART | RES. ADDRESS | CITY | HOME PHONE |
| BUS. ADDRESS 3405 MARRON RD | CITY OCEANSIDE | BUS. PHONE | RACE | SEX | D.O.B. | ADDN'L. VIC./WIT. YES [X] |

| REPORTING OFFICER ROMANO | I.D. 1284 | DIVISION F/O | REPORT DATE 1/5/07 | TIME 0345 | REPORT APPROVED MMC | I.D. 724 | BOOKING APPROVED |

ARJIS

PAGE **2 OF 8**

RACE CODE LEGEND: A·JT· B·BU· C·CHINESE HAN D·CAMBODIAN F·FILIPINO G·GUAHANIAN H·HISPANIC I·INDIAN J·JAPANESE K·KOREAN L·LAOTIAN O·OTHER P·PACIFIC ISLANDER S·SAMOAN U·H.  ..N ..ESE V·VIL. W·WHITE Z·ASIAN INDIAN

AGENCY NUMBER **07000341**

## JUVENILE ONLY

| FATHER/STEPFATHER'S NAME (L,F,M) | ADDRESS | CITY | HOME PHONE | BUS. PHONE |

| MOTHER/STEPMOTHER'S NAME (L,F,M) | ADDRESS | CITY | HOME PHONE | BUS. PHONE |

| SCHOOL | GRADE | PARENTS NOTIFIED BY: WHOM AND HOW | DATE | TIME |

| LIVES WITH | | | RELEASE DATE | TIME |

FIELD DISP.: ☐ 1·JUVENILE HALL ☐ 2·OTHER POLICE AGENCY: _____ ☐ 3·OTHER _____ NAME/RELATIONSHIP OR ORGANIZATION
AGENCY

ATTITUDE OF JUVENILE AND PARENTS/GUARDIAN

DET. DISPO.: ☐ 1·REFER COURT/PROB ☐ 2·DEPT. DIVERSION ☐ 3·COUNSEL/INFORMAL ☐ 4·OTHER _____

## NARRATIVE

ADDITIONAL CHARGES: **NONE.**

NARRATIVE: **SEE ATTACHED**

CONTINUED ☒

## CITIZEN ARREST

I have arrested **DENNIS LACY**

☑ For a public offense ·committed or attempted in my presence.

☐ When the person arrested has committed a felony, although not in my presence.

☐ When a felony has been in fact committed, and I have reasonable cause for believing the person arrested to have committed it.

I know that pursuant to Section 849 of the Penal Code of the State of California, it is necessary for me to sign a complaint stating the charge against the prisoner, which complaint must be made before a magistrate, and I agree to sign said complaint and appear in said matter without delay.

Date: **1·04·06**    Signed: _____

| ARRESTING CITIZEN (L,F,M) PRINT **WOODBERRY, WARREN** | RES. ADDRESS | CITY | HOME PHONE |

BUS. ADDRESS **3405 MISSION RD OCEANSIDE** | CITY | BUS. PHONE | RACE | SEX | D.O.B.

## ADULT·MISD. ONLY

Check each reason for not releasing the subject with a written notice to appear.

**(ADULTS ONLY)**

☐ 1. The person arrested was so intoxicated that he could have been a danger to himself or to others.

☐ 2. The person arrested required medical examination or medical care or was otherwise unable to care for his own safety.

☐ 3. The person was arrested for one or more of the offenses listed in section 40302 of the vehicle code.

☐ 4. There were one or more outstanding warrants for the person.

☐ 5. The person could not provide satisfactory evidence of personal identification.

☐ 6. The prosecution of the offense(s) for which the person was arrested or the prosecution of any other offense(s) would be jeopardized by immediate release of person arrested.

☐ 7. There was a reasonable likelihood that the offense(s) would continue or resume, or that the safety of persons or property would be imminently endangered by release of the person arrested.

☐ 8. The person arrested demanded to be taken before a magistrate or refused to sign the notice to appear.

☐ 9. Any other reason: _____

K CASE ADDITIONS

D CASE DELETIONS

SE CHANGES

**SAN DIEGO REGIONAL**
**ADDITIONAL VICTIMS AND/OR WITNESSES**
**AND/OR OTHER PEOPLE ASSOCIATED WITH THE CRIME**

| PAGE | CASE NUMBER |
|---|---|
| 5 of 8 | 07000371 |

| LOCATION OF INCIDENT (OR ADDRESS) | CITY | BEAT | DISTRICT |
|---|---|---|---|
| 3405 MARRON RD. | OCEANSIDE | 7 | 037 |

| V SP / W DC RP | W-TYPE 01 | VICTIM'S NAME (LAST, FIRST, MIDDLE/OR ORGANIZATION) J. ROMANO | RESIDENCE ADDRESS | | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|---|

| RESIDENCE PHONE | RACE | SEX | DATE OF BIRTH | ID TYPE OPD | ID NUMBER 1284 | INTERPRETER REQUIRED Y/N | RELATION TO: VICTIM R A S F / SUSPECT R A S F | RESIDENT SD COUNTY Y N U |
|---|---|---|---|---|---|---|---|---|

| STATUS E | EMPLOYER (RANK IF MILITARY) OPD | BUSINESS OR MILITARY ADDRESS 3855 MISSION AV | CITY OCEANSIDE | STATE | ZIP 92054 | DAYS OFF — | WORK HOURS — |
|---|---|---|---|---|---|---|---|

| BUSINESS PHONE 435-4900 | ADDITIONAL INFORMATION (VICTIM VEHICLE INFORMATION, IF APPLICABLE) | STATEMENT TAKEN Y N | V/W ASSIST Y N |
|---|---|---|---|

| V SP / W DC RP | W-TYPE 16 | VICTIM'S NAME (LAST, FIRST, MIDDLE/OR ORGANIZATION) T. RINGROSE | RESIDENCE ADDRESS | | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|---|

| RESIDENCE PHONE | RACE | SEX | DATE OF BIRTH | ID TYPE OPD | ID NUMBER 1227 | INTERPRETER REQUIRED Y/N | RELATION TO: VICTIM R A S F / SUSPECT R A S F | RESIDENT SD COUNTY Y N U |
|---|---|---|---|---|---|---|---|---|

| STATUS E | EMPLOYER (RANK IF MILITARY) OPD | BUSINESS OR MILITARY ADDRESS 3855 MISSION AV | CITY OCEANSIDE | STATE CA | ZIP 92054 | DAYS OFF — | WORK HOURS — |
|---|---|---|---|---|---|---|---|

| BUSINESS PHONE 435-4900 | ADDITIONAL INFORMATION (VICTIM VEHICLE INFORMATION, IF APPLICABLE) | STATEMENT TAKEN Y N | V/W ASSIST Y N |
|---|---|---|---|

| V SP / W DC RP | W-TYPE 16 | VICTIM'S NAME (LAST, FIRST, MIDDLE/OR ORGANIZATION) C. WILSON | RESIDENCE ADDRESS | | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|---|

| RESIDENCE PHONE | RACE | SEX | DATE OF BIRTH | ID TYPE OPD | ID NUMBER 1095 | INTERPRETER REQUIRED Y/N | RELATION TO: VICTIM R A S F / SUSPECT R A S F | RESIDENT SD COUNTY Y N U |
|---|---|---|---|---|---|---|---|---|

| STATUS E | EMPLOYER (RANK IF MILITARY) OPD | BUSINESS OR MILITARY ADDRESS 3855 MISSION AV | CITY OCEANSIDE | STATE CA | ZIP 92054 | DAYS OFF — | WORK HOURS — |
|---|---|---|---|---|---|---|---|

| BUSINESS PHONE 435-4900 | ADDITIONAL INFORMATION (VICTIM VEHICLE INFORMATION, IF APPLICABLE) | STATEMENT TAKEN Y N | V/W ASSIST Y N |
|---|---|---|---|

| V SP / W DC RP | W-TYPE | VICTIM'S NAME (LAST, FIRST, MIDDLE/OR ORGANIZATION) WARREN WOODBERRY | RESIDENCE ADDRESS 213 FRYMAN CT. | | CITY O'SIDE | STATE | ZIP 92057 |
|---|---|---|---|---|---|---|---|

| RESIDENCE PHONE 477-3726 | RACE | SEX | DATE OF BIRTH | ID TYPE | ID NUMBER | INTERPRETER REQUIRED Y/N | RELATION TO: VICTIM R A S F / SUSPECT R A S F | RESIDENT SD COUNTY Y N U |
|---|---|---|---|---|---|---|---|---|

| STATUS | EMPLOYER (RANK IF MILITARY) WAL-MART | BUSINESS OR MILITARY ADDRESS 3405 MARRON RD. | CITY O'SIDE | STATE | ZIP 92056 | DAYS OFF | WORK HOURS |
|---|---|---|---|---|---|---|---|

| BUSINESS PHONE 730-1399 | ADDITIONAL INFORMATION (VICTIM VEHICLE INFORMATION, IF APPLICABLE) | STATEMENT TAKEN Y N | V/W ASSIST Y N |
|---|---|---|---|

| V SP / W DC RP | W-TYPE | VICTIM'S NAME (LAST, FIRST, MIDDLE/OR ORGANIZATION) | RESIDENCE ADDRESS | | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|---|

| RESIDENCE PHONE | RACE | SEX | DATE OF BIRTH | ID TYPE | ID NUMBER | INTERPRETER REQUIRED Y/N | RELATION TO: VICTIM R A S F / SUSPECT R A S F | RESIDENT SD COUNTY Y N U |
|---|---|---|---|---|---|---|---|---|

| STATUS | EMPLOYER (RANK IF MILITARY) | BUSINESS OR MILITARY ADDRESS | CITY | STATE | ZIP | DAYS OFF | WORK HOURS |
|---|---|---|---|---|---|---|---|

| BUSINESS PHONE | ADDITIONAL INFORMATION (VICTIM VEHICLE INFORMATION, IF APPLICABLE) | STATEMENT TAKEN Y N | V/W ASSIST Y N |
|---|---|---|---|

| V SP / W DC RP | W-TYPE | VICTIM'S NAME (LAST, FIRST, MIDDLE/OR ORGANIZATION) | RESIDENCE ADDRESS | | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|---|

| RESIDENCE PHONE | RACE | SEX | DATE OF BIRTH | ID TYPE | ID NUMBER | INTERPRETER REQUIRED Y/N | RELATION TO: VICTIM R A S F / SUSPECT R A S F | RESIDENT SD COUNTY Y N U |
|---|---|---|---|---|---|---|---|---|

| STATUS | EMPLOYER (RANK IF MILITARY) | BUSINESS OR MILITARY ADDRESS | CITY | STATE | ZIP | DAYS OFF | WORK HOURS |
|---|---|---|---|---|---|---|---|

| BUSINESS PHONE | ADDITIONAL INFORMATION (VICTIM VEHICLE INFORMATION, IF APPLICABLE) | STATEMENT TAKEN Y N | V/W ASSIST Y N |
|---|---|---|---|

| V SP / W DC RP | W-TYPE | VICTIM'S NAME (LAST, FIRST, MIDDLE/OR ORGANIZATION) | RESIDENCE ADDRESS | | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|---|

| RESIDENCE PHONE | RACE | SEX | DATE OF BIRTH | ID TYPE | ID NUMBER | INTERPRETER REQUIRED Y/N | RELATION TO: VICTIM R A S F / SUSPECT R A S F | RESIDENT SD COUNTY Y N U |
|---|---|---|---|---|---|---|---|---|

| IS | EMPLOYER (RANK IF MILITARY) | BUSINESS OR MILITARY ADDRESS | CITY | STATE | ZIP | DAYS OFF | WORK HOURS |
|---|---|---|---|---|---|---|---|

| BUSINESS PHONE | ADDITIONAL INFORMATION (VICTIM VEHICLE INFORMATION, IF APPLICABLE) | STATEMENT TAKEN Y N | V/W ASSIST Y N |
|---|---|---|---|

| WITNESS TYPE: | 01 Arresting Officer 06 Other Lay Witness 12 Other Expert 13 Investigator | RACE CODE LEGEND | A = OTHER ASIAN B = BLACK C = CHINESE | D = CAMBODIAN F = FILIPINO G = GUAMANIAN | H = HISPANIC I = INDIAN J = JAPANESE | K = KOREAN L = LAOTIAN O = OTHER | P = PACIFIC ISLANDER S = SAMOAN | U = HAWAIIAN V = VIETNAMESE W = WHITE | Z = ASIAN INDIAN | STATUS: | E - Employed U - Unemployed S - Student N - Non-Salaried Work |

| REPORTING OFFICER | ID NUMBER |
|---|---|

EXHIBIT "F"



# San Diego County
# SHERIFF'S DEPARTMENT
## BOOKING INTAKE / PERSONAL PROPERTY INVENTORY

| FIRST TWO BOXES TO BE COMPLETED BY JAIL STAFF | | |
|---|---|---|
| Jail Booking Number Assigned | Pre-Intake Clerk ID # | Agency Case # |
| 0 | | 07000341 |

### PERSONAL INFORMATION — PROPER COMPLETION OF THIS FORM WILL EXPEDITE YOUR BOOKING

| Name: Last, First Middle | Suffix | Race | Sex | Age | Date of Birth (mm/dd/yyyy) |
|---|---|---|---|---|---|
| LACY DENNIS EVERETT | | W | M | 46 | 05/30/1960 |

| Alias Names: Last, First Middle | Suffix | Passport # |
|---|---|---|
| | | |

| Height | Weight | Hair | Eyes | Place of Birth: City / State / Country | Citizenship (Country) |
|---|---|---|---|---|---|
| 6 0 | 165 | BRN | BRN | PANAMA | US |

| Home Address | Street | City | State | Zip | Home Phone |
|---|---|---|---|---|---|
| 1115 1/2 #A S. NEVADA St. | | Oceanside | CA | 92054 | (760) 721-3297 |

| Employer Name | Street | City | State | Zip | Work Phone |
|---|---|---|---|---|---|
| UNEMPLOYED | | | | | ( ) |

| Social Security Number | DL, State ID or Other ID Number | License State | ARREST REMARKS: |
|---|---|---|---|
| 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 | N9010591 | CA | |

### ARREST INFORMATION

| Arresting Agency | Arrest Date / Time | Billing Agency | Location of Arrest (Beat # or Street Address and City) 3405 MATRON RD OCEANSIDE CA | Court Destination: (Circle) |
|---|---|---|---|---|
| OC | 11/1/07 2370 | OC | | SD  ELC  SBC  (NCV) |

| Arresting Officer:  Name & ID | Transporting Officer & ID#: | Vehicle Location: ☒ Left At Scene  ☐ Towed By: | TOTAL BAIL AMOUNT: |
|---|---|---|---|
| ROMANO 1784 | | | |

| ARREST #1 (Field Charges or Warrant Information) | | | ARREST #2 (Additional Warrants or Additional Charges) | | |
|---|---|---|---|---|---|
| Section | Code | Description | Section | Code | Description |
| 1 PC | 211 | ROBBERY | 1 | | |
| 2 | | | 2 | | |
| 3 | | | 3 | | |
| 4 | | | 4 | | |
| 5 | | | 5 | | |

### PERSONAL PROPERTY INVENTORY        HOLDS: ☐ FEDERAL    ☐ STATE PAROLE    ☐ IMMIGRATION

PREBOOK ARJIS            BOOK ARJIS

Cash Accounting (USA Currency Only)

| | | |
|---|---|---|
| ___ x $1 = $ ___ | WALLET: Y X  N ___ | BELT: Y X  N ___ | KEYS: | SHOES: | MEDICATIONS: |
| ___ x $2 = $ ___ | PURSE: Y ___ N X | GLASSES: Y ___ N X | Y ___ N Y | Y X N _ | Y ___ N X |
| ___ x $5 = $ ___ | CELL PHONE: Y X  N ___ | | | | |
| ___ x $10 = $ ___ | WATCH: Y ___ N X | RING: Y X  N ___ | NECKLACE: Y X N ___ | EARRING: Y ___ N X |
| 2 x $20 = $ 40.00 | ___ YM | X ___ YM | X ___ YM | ___ YM |
| ___ x $50 = $ ___ | ___ WM | ___ WM | ___ WM | ___ WM |
| ___ x $100= $ ___ | ___ OTHER | ___ OTHER | ___ OTHER | ___ OTHER |

ADDITIONAL PROPERTY REMARKS:

**TOTAL $ 40.00**

| Sealed Bag w/Inmate Property Delivered to Jail    YES ☒    NO ☐ | Inmate's Signature | Arresting Officer's Signature |
|---|---|---|
| | | |

J-15 10/04
DISTRIBUTION: WHITE–BOOKING   YELLOW–INTAKE DEPUTY   PINK–ARRESTING OFFICER   GOLDENROD–INMATE

EXHIBIT "G"

*Cu—1—9—07*    *79*

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
## NORTH COUNTY DIVISION

THE PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff,

v.

DENNIS EVERETT LACY,
  *dob 05/30/60, Booking No. 07701014A;*

Defendant

CT No.  CN223021
DA No.  OAY526

COMPLAINT-FELONY

---

INFORMATION

Date: _____

---

## PC296 DNA TEST STATUS SUMMARY

| Defendant | DNA Testing Requirements |
|---|---|
| LACY, DENNIS EVERETT | DNA sample required upon conviction |

## CHARGE SUMMARY

| Count | Charge | Issue Type | Sentence Range | Special Allegations | Allegation Effect |
|---|---|---|---|---|---|
| 1 | PC211 | Felony | 2-3-5 | | |

LACY, DENNIS EVERETT

PC1054.3                                        INFORMAL REQUEST FOR DISCOVERY

he undersigned, certifying upon information and belief, complains that in the County of San Diego, State of California,
e Defendant(s) did commit the following crime(s):



# CHARGES

## COUNT 1 - ROBBERY

On or about January 4, 2007, DENNIS EVERETT LACY did unlawfully and by means of force and fear take personal property from the person, possession and immediate presence of WARREN WOODBERRY, in violation of PENAL CODE SECTION 211.

# PRIORS

*DENNIS EVERETT LACY:*

## PROBATION DENIAL PRIORS

And it is further alleged that said defendant, DENNIS EVERETT LACY, was previously convicted twice or more in this state of a felony, and in any other place of a public offense which if committed in this state would be punished as a felony, within the meaning of PENAL CODE SECTION 1203(e)(4).

| Charge | Date of Conviction | Court Number | Court | County | State |
|--------|--------------------|--------------|-------|--------|-------|
| PC459-T | 04/06/1981 | CRN6731 | Superior Court | San Diego | CA |
| PC459-T | 04/06/1981 | CRN6731 | Superior Court | San Diego | CA |
| PC470 | 04/06/1981 | CRN6731 | Superior Court | San Diego | CA |
| PC459-T | 05/05/1981 | CRN6731 | Superior Court | San Diego | CA |
| PC470 | 05/05/1981 | CRN6731 | Superior Court | San Diego | CA |
| PC1320.5 | 01/20/1989 | CRN14764 | Superior Court | San Diego | CA |
| PC12021(A) | 06/28/1990 | CRN16146 | Superior Court | San Diego | CA |
| PC1320.5 | 06/28/1990 | CRN16146 | Superior Court | San Diego | CA |
| PC496.1 | 06/28/1990 | CRN16594 | Superior Court | San Diego | CA |
| HS11359 | 11/19/1997 | SCN053135 | Superior Court | San Diego | CA |
| HS11359 | 11/19/1997 | SCN053204 | Superior Court | San Diego | CA |
| PC1320.5 | 11/19/1997 | SCN063258 | Superior Court | San Diego | CA |
| PC1320.5 | 11/19/1997 | SCN063266 | Superior Court | San Diego | CA |

TICE: Any defendant named on this complaint who is on criminal probation in San Diego County is, by receiving this complaint, on notice that the evidence presented to the court at the preliminary hearing on this complaint is presented for a dual purpose: the People are seeking a holding order on the charges pursuant to Penal Code Section 872 and simultaneously, the People are seeking a revocation of the defendant's probation, on any and all such probation grants, utilizing the same evidence, at the preliminary hearing. Defenses to either or both procedures should be considered and presented as appropriate at the preliminary hearing.

Pursuant to PENAL CODE SECTION 1054.5(b), the People are hereby informally requesting that defendant's counsel provide discovery to the People as required by PENAL CODE SECTION 1054.3.

The People reserve the right to amend the accusatory pleading to further allege any and all facts in aggravation in light of Blakely v. Washington (6/24/2004) 542 U.S. 296 [124 S.Ct. 2531, 2004 WL 1402697].

Sheriff's records indicate that as of the booking date one or more defendants have not yet provided a DNA sample to the DOJ database. Pursuant to Penal Code Section 296(e), the court shall order collection of DNA from the defendant(s) if advised by the prosecuting attorney that a sample is required but has not been provided by the defendant. Pursuant to Penal Code sections 296/296.1, if not already required from a past conviction, any defendants who have not done so will be required to provide a sample upon conviction of this felony offense.


I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT AND THAT THIS COMPLAINT, CASE NUMBER CN223021, CONSISTS OF 1 COUNT.

Executed at Vista, County of San Diego, State of California, on January 9, 2007.


_____
COMPLAINANT


NFORMATION

BONNIE M. DUMANIS
District Attorney
County of San Diego
State of California
by:

_____               _____
Date                                    Deputy District Attorney

# EXHIBIT "H"

DOTNAF-7367

1   IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2     FOR THE COUNTY OF SAN DIEGO 2007 FEB -2  PM 3:45

3   NORTH COUNTY JUDICIAL DISTRICT CLERK  SUPERIOR COURT

4             SAN DIEGO, CA

5 DEPARTMENT 24    HON. JOEL M. PRESSMAN, JUDGE

6            )

7 THE PEOPLE OF THE STATE OF CALIFORNIA,)

              )

8       PLAINTIFF,  )

              )

9 V.          ) CASE NO. CN223021

              )

10 DENNIS EVERETT LACY,   )

              )

11      DEFENDANT.  )

   _____)

12

13    REPORTER'S TRANSCRIPT OF PROCEEDINGS

14      PRELIMINARY HEARING

15    TUESDAY, JANUARY 23, 2007

16    (PAGES 1-44, INCLUSIVE)

17 APPEARANCES:

18

19 FOR THE PEOPLE:   OFFICE OF THE DISTRICT ATTORNEY
          BY:  ROBERT AUGST

20          325 S. MELROSE DRIVE, SUITE 5000
          VISTA, CALIFORNIA  92081

21 FOR THE DEFENDANT:  OFFICE OF THE PUBLIC DEFENDER
          BY:  DAVID A. THOMPSON

22          400 SOUTH MELROSE DRIVE, SUITE 200
          VISTA, CALIFORNIA  92081

23

24 ALSO PRESENT:    OFFICER JUSTIN ROMANO
          INVESTIGATING OFFICER

25          JOSEPHINE LOPEZ

26

27     CATHY COMFORD, CSR, RPR
     CSR CERTIFICATE NO. 10889

28      OFFICIAL REPORTER
      VISTA, CALIFORNIA

COPY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CHRONOLOGICAL INDEX OF WITNESSES

| PEOPLE'S WITNESSES: | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Warren Woodberry | 2 | 19 | 35 | |

1

| | |
|---|---|
| 1 | **VISTA, CALIFORNIA; TUESDAY, JANUARY 23, 2007; 3:15 P.M.** |
| 2 | **THE COURT:**  Good afternoon, everybody. |
| 3 | **MR. THOMPSON:**  Good afternoon. |
| 4 | **MR. AUGST:**  Good afternoon. |
| 5 | **THE COURT:**  This is the case of the People of the |
| 6 | State of California versus Dennis Everett Lacy, Case |
| 7 | 223021, on for preliminary hearing this morning and |
| 8 | evidentiary hearing on probation violation, Cases |
| 9 | CN196469 and CN221412. |
| 10 | Could I have your appearances for the record, |
| 11 | please. |
| 12 | **MR. AUGST:**  Yes.  Good afternoon, Your Honor. |
| 13 | Robert Augst for the People.  And with me is our |
| 14 | investigating officer, Officer Romano. |
| 15 | **THE COURT:**  Good afternoon. |
| 16 | **MR. THOMPSON:**  Good afternoon, Your Honor.  David |
| 17 | A. Thompson, with the Office of the Public Defender, |
| 18 | appearing with Mr. Lacy, who's present in court in |
| 19 | custody. |
| 20 | **THE COURT:**  Good afternoon.  Are we ready to |
| 21 | proceed? |
| 22 | **MR. THOMPSON:**  Yes. |
| 23 | **MR. AUGST:**  Yes, Your Honor. |
| 24 | **THE COURT:**  Okay.  Thank you.  You may call your |
| 25 | first witness. |
| 26 | **MR. AUGST:**  Thank you.  People call Warren |
| 27 | Woodberry. |
| 28 | /// |

2

1            **WARREN ARDELL WOODBERRY,**

2 having been first duly sworn, testified as follows:

3     **THE CLERK:** Sir, can I have you please state your

4 full name and then spell each of them for the record.

5     **THE WITNESS:** Warren Ardell Woodberry, W-a-r-r-e-n,

6 A-r-d-e-l-l, W-o-o-d-b-e-r-r-y.

7     **THE CLERK:** Thank you.

8     **THE COURT:** Thank you.

9               **DIRECT EXAMINATION**

10 **BY MR. AUGST:**

11     Q.  Good afternoon, Mr. Woodberry.

12     A.  Good afternoon, sir.

13     Q.  Where do you currently work?

14     A.  With Walmart.

15     Q.  Is that the Walmart located at 3405 Marron Road

16 in Oceanside, California, in the County of San Diego?

17     A.  Yes, it is.

18     Q.  Were you working at that Walmart back on

19 January 4th, 2007?

20     A.  Yes.

21     Q.  And what's your position at Walmart?

22     A.  Asset protection.

23     Q.  And back on January 4th, 2007, sometime around

24 9:30 p.m., did your attention focus on any particular

25 individual within the store?

26     A.  Yes, sir.

27     Q.  And what did you observe and what caught your

28 attention?

3

1    A.    I observed a gentleman in the electronic

2  department in the CD aisle with a CD, looking around

3  suspiciously.  That was suspicious to me.  I began to

4  follow him.

5    Q.    Now, the gentleman you're referring to, do you

6  see that person in court today?

7    A.    Yes, sir.

8    Q.    Could you tell us where that person is sitting

9  and what they're wearing?

10    **MR. THOMPSON:**  I'll stipulate to identification of

11  my client, Your Honor.

12    **THE COURT:**  Thank you.

13    **MR. AUGST:**  Thank you.

14  **BY MR. AUGST:**

15    Q.    So you observed the Defendant with a CD.  Did

16  you observe him select the CD off the shelf?

17    A.    Yes, I did.

18    Q.    And what did you see him do with this CD?

19    A.    He selected the CD, then walked towards the

20  automotives department.  There he removed a set of keys

21  from his right-side front pocket, opened the CD, took it

22  out, and tossed the empty case onto a shelf.

23    Q.    Did he have any other items or merchandise in

24  his hands prior to opening the CD up?

25    A.    No.

26    Q.    Then what did he do?  Did you see what he did

27  with the CD itself after he took it out of the case?

28    A.    He put it in the left breast pocket of his

4

1  jacket.

2    Q.   Was that an interior pocket or an exterior

3  pocket?

4    A.   It was an interior pocket.

5    Q.   And the case -- what again did he do with the

6  case?

7    A.   He tossed it on the shelf in the automotives

8  department.

9    Q.   Did you continue to watch the Defendant?

10   A.   Yes, sir.

11   Q.   What did he do next?

12   A.   He walked over to hardware.  There he met with

13 one of the associates there and was talking to him about

14 paint.  He selected three cans of paint from hardware.

15   Q.   Where did he go after that?

16   A.   He walked to foods.  There he selected some

17 cinnamon buns.

18   Q.   And where did he go next?

19   A.   To the front, one of the front-end registers.

20   Q.   Did you observe what happened at the register?

21   A.   He purchased the three cans of spray paint and

22 the cinnamon buns.

23   Q.   At any point did you see the Defendant again

24 remove the CD from the interior pocket of his jacket and

25 present it to pay for it?

26   A.   No, sir.

27   Q.   What did you see the Defendant do after paying

28 for the spray paint and the cinnamon buns?

1     A.    He then walked towards the front of the store
2  where he was exiting.
3     Q.    Did you follow him at that point?
4     A.    Yes, sir.
5     Q.    And what happened next?
6     A.    I followed him outside the store, approached
7  him, stated my name, told him my position with the
8  store.  I asked if there was any merchandise on his
9  person that he did not purchase, and he said no.
10     Q.    When you first contacted the Defendant and
11  identified yourself, were you still inside the Walmart
12  or were you outside?
13     A.    We were both outside.
14     Q.    What's the area like where you contacted him?
15     A.    As you exit the store, there's a vestibule area
16  that you walk through, and then you walk through another
17  door and that's the outside.  There is a sidewalk, some
18  benches, and then the parking lot.
19     Q.    And in which part of these places you've
20  described did you actually first contact the Defendant?
21     A.    On the sidewalk.
22     Q.    And you stated that he said he didn't have any
23  merchandise he didn't pay for.
24          After you asked him and he responded no, what
25  happened next?
26     A.    I don't remember exactly the words, but he
27  became very irate.  I then asked him -- I had the CD
28  case with me.  I asked him, "What about the CD?"

1        He denied purchasing anything -- not purchasing
2   anything.  I asked him, "What about the CD?"  He then
3   pulled the CD from his outside left breast pocket and
4   said that he brought it in the store with him.
5        Q.   Now, you said you had the case with you.  How
6   did you come to gain possession of the case?
7        A.   When I observed him throw the case or toss the
8   case onto the shelf, I went around the aisle and picked
9   it up.
10       Q.   And did you inspect it at that time?
11       A.   Yes, sir.
12       Q.   And what did you notice about it?
13       A.   That it was open and empty.
14       Q.   And what CD was this?  Do you remember the name
15   or the group or something?
16       A.   It was a Rascal Flatts CD.
17       Q.   Okay.  Back to outside, the Defendant, you say,
18   presented a CD from one of his jacket pockets?
19       A.   Yes, sir.
20       Q.   And it was -- what pocket exactly was it?
21       A.   It was his left breast pocket.
22       Q.   Exterior pocket?
23       A.   I believe it was then in his exterior pocket.
24   There may have been a hole inside the jacket there or
25   something.
26       MR. THOMPSON:  Objection.  Calls for speculation.
27   Move to strike.
28       THE COURT:  Sustained, that last part.

1    BY MR. AUGST:

2        Q.    Earlier on, when you saw him place the CD in

3    the store into a pocket, that was interior or exterior?

4        A.    I believe it was interior.

5        Q.    Okay.  And did you gain possession of the CD

6    from the Defendant that he presented from his exterior

7    left breast pocket?

8        A.    Yes.

9        Q.    Did you take a look to see what CD it was?

10       A.    Yes, sir.

11       Q.    What CD was that?

12       A.    It was a Rascal Flatts CD.

13       Q.    And that matched the empty case that you had

14   found inside the store?

15       A.    Yes, sir.

16       Q.    What happened after the Defendant pulled this

17   Rascal Flatts CD out of his left breast pocket outside

18   the store?

19       A.    He stated that he brought the CD in with him.

20   I told him that I observed him conceal the CD on his

21   person and asked him to bring it back inside and we'll

22   resolve the matter.  And he refused to.

23       Q.    Now, when you say "he refused to," what exactly

24   happened that indicated to you he was refusing?

25       A.    Well, he was still very irate at the time,

26   arguing real loud, in a real loud voice.  He didn't want

27   to bring the CD back inside.

28       Q.    So what happened at that point?

8

1      A.    At that point he lunged as if he was going to

2    take off, and I grabbed him.   And --

3      Q.    Could you describe kind of exactly how he

4    lunged and in which direction he was lunging?

5      A.    I was standing in front of him, and he lunged

6    to his right, towards the parking lot.

7      Q.    And what did you do at that point?

8      A.    I reached out and grabbed the back of his

9    jacket and pulled him back towards the facility.

10     Q.    What happened then?

11     A.    He struggled, and I had to physically restrain

12   him at that point.

13     Q.    Now, when you say "he struggled," what do you

14   mean by that?

15     A.    He was trying to -- I was trying to detain him,

16   and he was trying to get out of my grasp.

17     Q.    How was he trying to get out of your grasp?

18     A.    By any way he could, just whatever way he

19   could.  He tried his best to get out of my grasp.

20     Q.    Was he -- did he ever swing any punches or

21   swing his arms in the air?

22     MR. THOMPSON:  Objection.  Leading.

23     THE COURT:  Sustained.

24   BY MR. AUGST:

25     Q.    If you can just explain for us exactly what he

26   was doing physically.  When you say that he was trying

27   to get away from your grasp, exactly what was he doing?

28     A.    He was trying to -- I had him by the jacket,

9

1 and he was trying to break away, like with his arms and

2 all.

3     Q.   Could you stand and demonstrate for us kind of

4 what he was doing.

5     A.   Yeah.  I had him by the jacket back here, and

6 after he lunged and as I'm holding him, he's still

7 trying to break free of my grasp with his arms.

8        He then at one point he did swing his right

9 hand like this, and after I detained him and got him,

10 was again like this.  He didn't swing at that point, but

11 he was like this, as if he was going to swing.

12    **MR. AUGST:**  Okay.  So the first thing, Your Honor,

13 for the record, the witness demonstrated he grabbed

14 with, I believe it was, his right arm and pointed to the

15 back of his neck, indicating where he grabbed the

16 Defendant, I believe, by the jacket.  He swung both of

17 his arms in backwards motions, back and forth, with his

18 elbows aiming backwards.  He demonstrated with his right

19 arm in a closed fist a swing across the body, to the

20 left side of his body.

21    **MR. THOMPSON:**  He crossed the front side, left of

22 the Defendant's body.

23    **MR. AUGST:**  Yes.  And then he stated also that the

24 Defendant at some point had his right fist raised.

25    **THE COURT:**  I think that's an accurate collaboration

26 of the description.

27 **BY MR. AUGST:**

28     Q.   Now, with regard to -- we'll go through each of

1  those.  The first motion you demonstrated, where you

2  were swinging your elbows backwards, were you hit with

3  any elbows?

4      A.   Not that I recall.

5      Q.   Did the swinging of the elbows appear to be

6  attempted blows or were they just flailing in an attempt

7  to run away?

8      A.   They were kind of violently flailing.

9      Q.   And the swing where you demonstrated with your

10  right arm, that was -- is it accurate that -- was it the

11  Defendant's right arm that made that swing?

12      A.   Yes, it was.

13      Q.   And it went across his own front of his body?

14      A.   Yeah.  Kind of down, across, like this.

15      Q.   Okay.  And where were you in relation to where

16  that swing was being thrown?

17      A.   I was on the side, kind of behind, on his left

18  side behind him.

19      Q.   How close would you say his right fist came to

20  your body when that swing was thrown?

21      A.   Probably -- wasn't too close.  Probably this

22  far from my body.

23      THE COURT:  Indicating about a foot?

24      THE WITNESS:  Yes, sir.  That's right.

25  BY MR. AUGST:

26      Q.   What was the Defendant's left arm doing during

27  all of this?

28      A.   He had a bag of the items that he did purchase

1     in his hand, and at some point he released them.

2         Q.   At any point did the Defendant actually strike

3     you with either a punch, kick, or elbow?

4         A.   Not that I recall.

5         Q.   At some point while -- well, what happened

6     after the Defendant made the swing across his body with

7     the right arm?

8         A.   I still had the back of his jacket, and I

9     pulled at his jacket to bring him back towards the

10    facility or inside, and his jacket and shirt both came

11    off.  He got in my grasp again, and I then grabbed him

12    by his body.

13        Q.   How did he get out of your grasp?

14        A.   Because I had him by the jacket and his jacket

15    and sweatshirt came off.

16        Q.   What happened after his jacket and sweatshirt

17    came off exactly?

18        A.   He was still attempting to flee, and I grabbed

19    him.

20        Q.   How did you grab him at that point?

21        A.   I believe I grabbed him by his back, by the

22    back like this.

23        Q.   Like what you would call a bear hug type thing?

24        A.   Yes, like a bear hug.

25        Q.   And what happened when you grabbed the

26    Defendant from behind in a bear hug type hold?

27        A.   He was still trying to, I guess, resist my

28    detention, and I was pulling him inside the store.  We

1    were inside the store.  I was still pulling him in, and
2    at that point we both went over to the floor.  I pulled
3    him, and I guess with the force we both went over to the
4    floor --
5         Q.    And what --
6         A.    -- inside the store.
7         Q.    -- what happened while you were on the floor
8    inside the store?
9         A.    He was still at that point attempting to break
10   free, and I was still trying to restrain him.
11        Q.    And when you say "he was still attempting to
12   break free," what exactly was he doing on the floor
13   inside the store?
14        A.    He was still kicking and moving his arms
15   violently, trying to break free from my grasp still.
16        Q.    What was he kicking at?
17        A.    The air.
18        Q.    And his arms, were they flailing just in the
19   air, or were they aimed towards you?
20        A.    Just in the air.
21        Q.    Okay.  What happened after you were struggling
22   with the Defendant on the ground?
23        A.    Then I was able to stand him to his feet.  We
24   both came to our feet, and I was directing him back to
25   the AP office where we take the detained individuals.
26        Q.    At any point during this whole incident with
27   the Defendant, were you struck with any blows to your
28   body?

1    A.   No.   He just made gestures as if he was going

2    to strike me, but I was never struck.   I don't recall I

3    was.

4    Q.   And these gestures, could you describe what

5    type of gestures they were?

6    A.   Mostly with the right fist, like this.

7    MR. AUGST:   Okay.   Your Honor, may the record

8    reflect the witness demonstrated -- he held up his right

9    closed fist, fist at about, you know, head high, temple

10   level, and arm at about perpendicular, 90 degrees out

11   from his shoulder?

12   THE COURT:   Yes.

13   BY MR. AUGST:

14   Q.   How many times did he make gestures like that

15   during the course of this incident?

16   A.   Couple times, I believe.

17   Q.   Was he saying anything during the course of

18   this struggle?

19   A.   Yes.   I don't recall exactly what he was

20   saying.

21   Q.   Do you have any recollection as to what he may

22   have been saying during the course of this?

23   A.   No.

24   Q.   Do you recall whether or not he was saying any

25   threats of physical harm to you or anything like that?

26   MR. THOMPSON:   Objection.   Leading.

27   THE COURT:   Sustained.

28   THE WITNESS:   Not that I recall.

1    **MR. THOMPSON:**  Move to strike the answer.

2    **THE COURT:**  The answer will be stricken.

3    **BY MR. AUGST:**

4    Q.    And at the point the Defendant was holding up

5    his right fist, how close were you to him at that point?

6    A.    I was still -- we were still pretty close

7    together.  I was still trying to detain him.  A foot,

8    maybe.  Still a foot.

9    Q.    And when was it that that first happened?

10   A.    When I -- when we both came to our feet, and I

11   was directing him back towards the office.

12   Q.    When you both came to your feet?

13   A.    Inside the store.

14   Q.    So after you had fallen on the floor in the

15   store, the two of you came to your feet, and that's

16   when he --

17   A.    Yes.

18   Q.    -- the first time he held his fist up?

19   A.    Yes.

20   Q.    Okay.  And when was the next time you saw the

21   Defendant hold up his fist?

22   A.    Once again when we got closer to the office,

23   just before entering the office.

24   Q.    What happened once you got to the office?

25   A.    We got there, and I told him what we were

26   detaining him for again.  He was still irate at that

27   point.  We asked him to have a seat.  He refused to have

28   a seat.  He began to call on his cell phone.  The party

1    on the other line, he was telling them to get to

2    Walmart.  There was something happening.  They needed to

3    get there.  We kept asking for his cell phone.  He

4    refused to get off the phone.

5       Q.   At any point did the Defendant get off the

6    phone?

7       A.   Yes.

8       Q.   And at some point did you take the phone from

9    him?

10      A.   Yes.

11      Q.   Was a search done of his person by you or other

12   Walmart employees?

13      A.   No.  We asked him to turn over his personal

14   items.  He refused but later he did give us all his

15   personal items.

16      Q.   What items did he give you?

17      A.   A cell phone, a wallet, some cash and a

18   screwdriver.

19      Q.   And could you describe what the screwdriver

20   looked like?

21      MR. THOMPSON:  Your Honor, can the witness be

22   seated?

23      MR. AUGST:  Oh, yeah.

24      THE COURT:  Certainly.

25      THE WITNESS:  Thank you.

26      THE COURT:  Do you prefer to stand?

27      THE WITNESS:  No.

28      THE COURT:  Okay.

1     **THE WITNESS:**  I don't remember the color.  It was a

2    standard screwdriver, Phillips head, I believe.

3    BY MR. AUGST:

4     Q.   About how long would you estimate the metal

5    portion of the screwdriver to be?

6     A.   Five inches, maybe.

7     Q.   And where did the Defendant have the

8    screwdriver?

9     A.   It was stuffed in the back of his pants there.

10     Q.   Did it appear to be in a pocket?

11     A.   No.

12     Q.   Where did it appear to be?

13     A.   The back of the pants, here.

14    **MR. AUGST:**  Your Honor, may the record reflect the

15    witness indicated in the center of his pant line,

16    basically, in the small of his back?

17    **THE COURT:**  Yes.

18    BY MR. AUGST:

19     Q.   Prior to when the Defendant produced this

20    screwdriver to you, had you seen him in possession of

21    the screwdriver at all during the incident?

22     A.   No.

23     Q.   At any point had you seen the Defendant make

24    any type of hand movement towards the region where this

25    screwdriver was later retrieved from?

26     A.   No.  But later I thought that he may have been

27    trying to go for it, the screwdriver.

28     Q.   What made you think that?

1    MR. THOMPSON:  Objection.

2    THE COURT:  Wait.

3    MR. THOMPSON:  Let me think of my proper objection.

4    THE COURT:  Sustained.

5    MR. THOMPSON:  I think his thinking process after

6    the fact is irrelevant to the charge.

7    THE COURT:  Exactly.  It would be relevance.

8    MR. THOMPSON:  Yes.

9    BY MR. AUGST:

10    Q.  Did you ever observe anything -- did you ever

11    watch video of this incident?

12    A.  Yes, sir.

13    Q.  And that would be Walmart surveillance video?

14    A.  Yes.

15    Q.  Did you observe anything on the video that

16    indicated to you he may have been going for the

17    screwdriver at some point?

18    A.  Just the way his arms were flailing violently,

19    and when I was trying to detain him, I was trying to

20    keep his arms in the front of him.

21    MR. THOMPSON:  Objection.  It calls for speculation

22    of what was in the Defendant's mind as he was flailing

23    around his arms.

24    THE COURT:  Sustained.

25    MR. AUGST:  Your Honor?

26    THE COURT:  You can ask him about what he observed

27    on the video.

28    ///

1    BY MR. AUGST:

2       Q.    Did you observe anything on the video with

3    regard to the Defendant's hands moving to the portion of

4    his body where this screwdriver was later produced from?

5       A.    When I was detaining him, I didn't give him a

6    chance to get his hands -- to get them back that far.

7       Q.    Okay.  In the -- I guess it -- which office was

8    it?  Administrative office or --

9       A.    Asset protection office.

10      Q.    In the Asset protection office, at any point

11   did the Defendant make any type of gestures or physical

12   gestures towards you?

13      A.    No.  Just bulging in his chair so that -- as if

14   he was going to lunge at us again.

15      Q.    Can you describe exactly how he was bulging in

16   his chair?  Actually, let me go back.

17            Was he in handcuffs at that point?

18      A.    No, he wasn't.

19      Q.    And how was he bulging towards you?

20      A.    He was sitting back and then just bulging up

21   front, to the front of the chair, like this.

22      Q.    And who was in the office with you at that

23   time?

24      A.    One of the assistant managers, Michael Stewart.

25      Q.    During the course of the entire incident, did

26   any of the Defendant's arm swings or arm flails, as

27   you've described them, appear to be aimed directly at

28   you or your person?

1    A.    No, not that I recall.

2    Q.    How about any of his kicks or leg flailing?

3   Did any of that appear to be directed to you or your

4   body?

5    A.    No.

6   **MR. AUGST:**  Thank you.  Nothing further.

7   **MR. THOMPSON:**  I guess I have a few questions, Your

8   Honor.  Is that why you're looking at me?

9   **THE COURT:**  I was just wondering if you had any

10  questions.

11                    **CROSS-EXAMINATION**

12  **BY MR. THOMPSON:**

13   Q.    Mr. Woodberry, is it your testimony that when

14  you confronted Mr. Lacy outside the store about any

15  property that he hadn't paid for --

16   A.    Yes, sir.

17   Q.    -- that he told you the CD was his?

18   A.    Yes, sir.

19   Q.    And when he pulled the CD out of his pocket, it

20  was from out of his exterior left jacket pocket; is that

21  right?

22   A.    I believe so.

23   Q.    And his left hand, he had a bag in that hand;

24  correct?

25   A.    Yes, sir.

26   Q.    Prior to exiting the store, it was your

27  testimony that he had put the CD that he had taken out

28  of the package and put it into his inside pocket --

1     A.    Yes, sir.

2     Q.    -- is that right?

3     MR. THOMPSON:  Your Honor, for the record, we have

4  just had some documents delivered that I had subpoenaed,

5  and I'm going to be asking the Court to do an

6  examination on those.

7     THE COURT:  Well, before -- do we have any problem

8  with the lady who just delivered these?

9     MR. THOMPSON:  Pardon me?  No.  That should have

10 been -- that's Josephine Lopez.  Josephine Lopez is

11 apparently acting as the custodian of records for

12 Walmart.  These should be personnel records of this

13 witness.

14    THE COURT:  Okay.  All right.

15    MR. THOMPSON:  So I think the Court should take

16 custody of those.

17    THE COURT:  It's okay.  Is she free to leave?

18    MR. THOMPSON:  Yes.

19    THE COURT:  Any objection?

20    MR. AUGST:  No, Your Honor.

21    THE COURT:  Okay.  Thank you.

22    MS. LOPEZ:  Thank you.

23 BY MR. THOMPSON:

24    Q.    Did you ever inspect Mr. Lacy's jacket after

25 you had eventually detained him?

26    A.    Yes.

27    Q.    And did the jacket have an exterior left

28 pocket?

1      A.    Yes, sir.

2      Q.    And did it have an interior left pocket?

3      A.    Yes, sir.

4      Q.    And were -- was there anything inside the

5  interior left pocket --

6      A.    No.

7      Q.    -- when you looked through the jacket?

8      A.    No.

9      Q.    All right.  When you were initially -- when you

10  initially observed Mr. Lacy inside the store, was that

11  from observing him on a video screen or from live

12  observation?

13      A.    Live observation.

14      Q.    Do you recall giving a -- do you recognize the

15  police officer who is sitting to the left of the DA

16  here?

17      A.    Yes, sir.

18      Q.    Do you recall talking to him?

19      A.    Yes, sir.

20      Q.    That's Officer Romano; right?

21      A.    Yes, sir.

22      Q.    Do you remember telling him that you observed

23  Mr. Lacy while you were watching the surveillance

24  cameras?  Did you tell Officer Romano that?

25      A.    Not that I recall.

26      Q.    All right.  When you observed Mr. Lacy put the

27  CD into his pocket, again, that was while he was in the

28  automotive section?

1      A.    Yes, sir.

2      Q.    Mr. Lacy?  And had you followed him completely

3   to the automotive section from the CD section?

4      A.    Yes, sir.

5      Q.    Was he ever out of your sight during that walk?

6      A.    No, sir.

7      Q.    Not even around an endcap of one of the display

8   shelves?

9      A.    No, sir.

10      Q.    All right.  And then after he secreted the CD

11   in his interior pocket, you followed him to some area

12   where he picked up some cinnamon rolls; correct?

13      A.    No.  Before that I followed him to hardware.

14      Q.    Okay.  And that's where he picked up the paint?

15      A.    Yes.

16      Q.    Okay.  So from the area where you saw him

17   secret the CD to the area where you saw him pick up the

18   spray paint cans, was he in your vision 100 percent of

19   the time?

20      A.    Yes, sir.

21      Q.    And then so from the spray paint can area to

22   the cinnamon roll area of the store, did you follow him

23   that entire way?

24      A.    I followed him the entire way to the foods

25   department where he got the cinnamon rolls.

26      Q.    Was there any point where he was out of your

27   vision?

28      A.    I don't believe so.

1      Q.   Okay.  And in your store at that time -- this

2   is after Christmas; right?

3      A.   Yes.

4      Q.   And in your store at that time, were there not

5   some little display boxes in the aisles with, like,

6   Christmas clearance merchandise?

7           Do you know what I'm talking about?

8      A.   Yes.

9      Q.   Okay.  Were there some of those throughout the

10  store?

11     A.   Yes, I believe so.

12     Q.   And is it possible that Mr. Lacy could have

13  taken the CD out of his interior pocket, deposited it

14  into one of the boxes without you seeing him do it?

15     MR. AUGST:  Objection.  Calls for speculation.

16     MR. THOMPSON:  I'm asking if it's possible, Your

17  Honor.

18     THE WITNESS:  No, sir.

19     THE COURT:  There's your answer.  Overruled.

20  BY MR. THOMPSON:

21     Q.   All right.  So you're saying that every moment

22  you had enough visual on him that he couldn't have done

23  this without you seeing him?

24     A.   Yes, sir.

25     Q.   All right.  When police officers arrived

26  initially, it was not this officer who is present here;

27  is that right?

28     A.   That's right.

1    Q.    It was Officer Ringrose (phonetic) and Wilson;
2    correct?
3    A.    Yes, sir.
4    Q.    And then you first told those two officers your
5    version of what happened; right?
6    A.    Yes, sir.
7    Q.    And they wrote Mr. Lacy a citation; correct?
8    A.    Not that I recall.  I don't --
9    Q.    They were going to let him go, right, with a
10   citation?
11   A.    I don't remember.
12   **MR. AUGST:**  Objection.  Calls for speculation.
13   **THE COURT:**  Overruled.  The speculation part is
14   sustained, but the citation part, since it was a
15   compound question, is overruled.
16   **BY MR. THOMPSON:**
17   Q.    Okay.  Did you ever hear them mention a
18   citation?
19   A.    No, not to my -- I don't recall any citation
20   being mentioned.
21   Q.    Did you have any sense they were going to let
22   Mr. Lacy go?
23   A.    No, sir.
24   **MR. AUGST:**  Objection.  Calls for speculation.
25   **THE COURT:**  Sustained.
26   **MR. AUGST:**  Motion to strike.
27   **THE COURT:**  That will be stricken.
28   ///

1   BY MR. THOMPSON:

2       Q.   Did you -- you wrote a little statement about

3   this case, didn't you?

4       A.   Yes, sir.

5       Q.   It was a handwritten statement; right?

6       A.   Yes, sir.

7       Q.   At the bottom of your statement you wrote that

8   Michael Stewart witnessed the incident; isn't that

9   right?

10      A.   Yes, sir.

11      Q.   In fact, that's not true, is it?

12      A.   He was a witness to the detention of Mr. Lacy.

13      Q.   He didn't witness the fracas that went on

14  outside, outside the vestibule area, did he?

15      A.   No, sir.

16      Q.   But you wrote that he witnessed the incident;

17  right?

18      A.   Not -- I wasn't suggesting that he witnessed

19  the altercation.

20      Q.   So when you wrote, "Assistant manager Michael

21  Stewart witnessed the incident," you didn't mean that he

22  witnessed the fracas outside?

23      A.   No, sir.

24      Q.   Okay.  You brought today with you to court a

25  statement by M.A. Stewart; correct?

26      A.   Yes.

27      Q.   Is that Michael Stewart?

28      A.   Yes.

1    Q.   And when did he write this statement, do you

2  know?

3    **MR. AUGST:**  Objection.  Lack of foundation.

4    **MR. THOMPSON:**  If he knows, Your Honor.

5    **THE WITNESS:**  I don't know.

6    **THE COURT:**  Sustained.

7  **BY MR. THOMPSON:**

8    Q.   The statement that you brought, did you witness

9  a signature being placed on that statement?

10    A.   No, sir.

11    Q.   It was just given to you by Michael Stewart?

12    A.   Yes, sir.

13    Q.   You don't have any idea when it was written?

14    A.   No, sir.

15    Q.   Okay.  Did he talk to any of the police

16  officers, any of the three police officers who arrived?

17    **MR. AUGST:**  Objection.  Lack of foundation.  Calls

18  for hearsay.

19    **THE COURT:**  Sustained.

20    **MR. THOMPSON:**  Your Honor, it's -- I think if he can

21  know whether or not Michael -- all right.  I'll ask it a

22  different way.

23    **THE COURT:**  Yes.

24  **BY MR. THOMPSON:**

25    Q.   Did you see Michael Stewart talking to any of

26  the police officers that day?

27    A.   Not that I recall.

28    Q.   Okay.  Was he there when the police officers

1    arrived?

2        A.    Yes, sir.

3        Q.    In the AP room?

4        A.    Yes, sir.

5        Q.    Mr. Lacy never swung at Mr. Stewart that you

6    could see; correct?

7        A.    Not that I saw.

8        Q.    All right.  And he wasn't outside the store

9    during this supposed altercation with you; isn't that

10   correct?  He, being Mr. Stewart.

11       A.    No, sir.

12       Q.    Okay.  Do you know where he was when the

13   altercation you've described took place?  Do you know

14   where he was?

15       A.    No.  No.  He was inside the facility.

16       Q.    Okay.  The area where the altercation took

17   place was just outside the sliding glass doors; is that

18   correct?

19       A.    Yes.

20       Q.    Like three, four, five feet?

21       A.    Yes, sir.

22       Q.    All right.  When Mr. Lacy walked outside,

23   that's as far as he got outside; right?  Three or four

24   or five feet outside the door?

25       A.    Yes.

26       Q.    And you were how far behind him when you

27   somehow got his attention?

28       A.    I was four to five feet from him when I first

1     approached him.

2       Q.   And when you approached him, you were

3     approaching him from -- from the rear, as in standing

4     behind him; correct?

5       A.   No.   From the front.   From the front.

6       Q.   Okay.   So he's walking out the door.   Let's say

7     where I'm standing right now, on the other side of the

8     bar, I am inside Walmart.   Okay?

9       A.   Yes.

10       Q.   The sliding glass doors, they slide this way;

11     correct?

12       A.   Yes.

13       Q.   He walks outside.   Are you standing over here

14     or over here?

15       A.   I'm standing in front of him.

16       Q.   So you can see his face?

17       A.   Yes, sir.

18     **MR. THOMPSON:**   Your Honor, for the record, he's

19     stomach-to-stomach, face-to-face four to five feet away;

20     is that right?

21       **THE COURT:**   All right.

22       **THE WITNESS:**   Yes.

23     **BY MR. THOMPSON:**

24       Q.   All right.   How did you get around to his

25     front?

26       A.   I was still observing him at the register, and

27     I was already at the front.   I was already at the front

28     entrance waiting for him to exit.

1    Q.   So you exited before him?

2    A.   Yes. And I came back in and he made his

3 purchases. I let him leave, and that's when I

4 approached him and asked him if he had any merchandise

5 that he'd not purchased.

6    Q.   So were you inside the store when he walked

7 out?

8    A.   I'm sorry?

9    Q.   Were you inside the vestibule when Mr. Lacy

10 walked out of the store?

11    A.   Yes, sir.

12    Q.   How were you face-to-face with him then?

13    A.   The vestibule is outside the store.

14    Q.   Right.

15    A.   He was walking. I'm standing here, outside the

16 store. He's walking out the store.

17    Q.   Okay. So you're completely in -- in the

18 exterior of the store?

19    A.   Inside the vestibule.

20    Q.   Well -- we watched a video this morning,

21 right --

22    A.   Yes, sir.

23    Q.   -- of the area where we were kind of primarily

24 focusing on, where he's outside with a bag?

25    A.   Yes.

26    Q.   And you're not even on the screen; right? I

27 want to talk about that.

28    A.   Yes, sir.

1  Q. Is that outside the store or inside the

2 vestibule?

3  A. That's outside the store.

4  Q. All right.  And you're telling us today that

5 you were already outside the store when he walked

6 outside the store?

7  A. I was outside watching him make his purchase.

8 I came back -- I never lost visual of him.  He made his

9 purchase, came out, I walked to the vestibule and

10 watched him walk out.  And that's when I followed him

11 outside the vestibule to the sidewalk, and that's where

12 I approached him, on the sidewalk.

13  Q. All right.  So you're saying you can see him

14 face-to-face outside on the sidewalk?

15  A. Yes, sir.

16  Q. And you tell him, "Hey, do you have any

17 property of Walmart?"

18  A. Yes, sir.

19  Q. Right?  And he says, "No"?

20  A. Yes.

21  Q. And you say, "What about the CD?"

22  A. Yes, sir.

23  Q. And he says, "I've got my own CD"?

24  A. Yes, sir.

25  Q. And he pulled it out of his pocket?

26  A. Yes, sir.

27  Q. He never tried to swing at you out there?

28  A. Not at that time.

1    Q.   Well, he never tried to swing his fist at your

2  face; right?

3    A.   No, sir.

4    Q.   Okay.  When you had ahold of his jacket, would

5  you say --

6         Can you stand up, Bob.  I'm going to use

7  Mr. Augst as a demonstration.

8         Would you say -- turn this way -- that you had

9  him by the scruff of the neck, like that?

10   A.   Yes.

11   Q.   By the collar?

12   A.   His jacket was bunched.  By the jacket and the

13  collar.

14   Q.   So you had the jacket-collar area; right?

15   A.   Yes, sir.

16   Q.   So it wasn't the middle portion of the jacket

17  or the lower portion?

18   A.   No.

19   Q.   It was the collar portion?

20   A.   It was bunched from the middle up to the

21  collar.

22   Q.   So you had a good grip of that?

23   A.   Yes, sir.

24   Q.   Including the sweatshirt?

25   A.   Yes, sir.

26   Q.   When the jacket and the sweatshirt eventually

27  came off, did they come over his head?

28   A.   Yes.  From the back, over his head.

1    Q.   All right.  And up until that point, he hadn't

2  tried to take a swing at you; right?

3    A.   No, sir.

4    Q.   And he was continuing to say, "It's my CD.

5  It's my CD"?

6    A.   Yes.  Up until he tried to take off.

7    Q.   All right.  Did you ever match any numbers on

8  the CD with any of Walmart's numbers?

9    A.   Yes, sir.

10    Q.   And the numbers on the CD itself?

11    A.   On the CD itself?

12    Q.   Yeah.

13    A.   No.

14    Q.   On the day of this incident when Officer Romano

15  came later, you tried to play back some video for him;

16  right?

17    A.   Yes, sir.

18    Q.   And you weren't able to?

19    A.   No, sir.

20    Q.   Any idea why?

21    A.   It was an old CC TV video recorder.  If we stop

22  recording, it will -- it will stop recording all the

23  shots.

24    Q.   And there are many shots within that store?

25    A.   Yes.

26    Q.   If we wanted to, we could have shots from

27  probably throughout -- from when Mr. Lacy walked

28  throughout the store; right?

| | | |
|---|---|---|
| 1 | A. | Probably. |
| 2 | Q. | And, in fact, I subpoenaed those, didn't I? |
| 3 | A. | Yes, sir. |
| 4 | Q. | And you didn't bring those today, did you? |
| 5 | A. | I don't have them. |
| 6 | Q. | You didn't bring them with you, did you? |
| 7 | A. | No. |
| 8 | Q. | I also issued an SDT for your personnel file; |
| 9 | right? | |
| 10 | A. | I don't know. |
| 11 | Q. | You got two SDTs; correct? |
| 12 | A. | SDTs? |
| 13 | Q. | Subpoenas duces tecum.  You got two packets of |
| 14 | subpoenas? | |
| 15 | A. | Yes, sir. |
| 16 | Q. | Did you read them? |
| 17 | A. | Yes. |
| 18 | Q. | One of them asked for your personnel file; |
| 19 | right? | |
| 20 | A. | No.  I got a subpoena for another case. |
| 21 | Q. | All right.  The point at which you and Mr. Lacy |
| 22 | wind up entering into the store, we watched that video | |
| 23 | today too; right? | |
| 24 | A. | Yes, sir. |
| 25 | Q. | It appears that you threw him onto the ground, |
| 26 | doesn't it? | |
| 27 | A. | Appears to be. |
| 28 | Q. | Is that a fair characterization of how it |

1 happened?

2     A.   As I was pulling him, we both -- with the force

3 I was pulling him back into the store, we both went to

4 the ground.

5     Q.   So you wouldn't call that that you were

6 throwing him to the ground?

7     A.   No, sir.

8     Q.   Okay.  You had him still by the shirt, though,

9 at that time; right?

10     A.   I -- I don't recall.

11     Q.   You had never seen Mr. Lacy prior to that day,

12 as far as you know?

13     A.   He looked familiar, but I can't really say that

14 I did.

15     Q.   You never had any altercations with him in the

16 past?

17     A.   No, sir.

18     Q.   Prior to you grabbing his shirt, he had not

19 swung at you; is that right?

20     A.   That's right.

21     Q.   And, in fact, what you wrote in your statement

22 was that after you accused him of the theft, he became

23 irate and he had to be physically restrained; is that

24 right?

25     A.   Yes, sir.

26     Q.   There was no --

27                     (Interruption)

28     **THE COURT:**  Would you turn the phone down a little.

1  BY MR. THOMPSON:

2      Q.    There was no physical force applied by Mr. Lacy

3  on you prior to you grabbing his shirt; is that right?

4      A.    Not directly to me, no.

5      Q.    One more question.  During that time frame,

6  between your accusation of him and you and he falling

7  into the store, to use your term, he had -- you had no

8  knowledge of this screwdriver; correct?

9      A.    No, sir.

10     Q.    And you had no knowledge of any other potential

11  weapons; correct?

12     A.    No, sir.

13     MR. THOMPSON:  That's all I have, Your Honor.

14     MR. AUGST:  Very brief redirect.

15     THE COURT:  Okay.

16                  REDIRECT EXAMINATION

17  BY MR. AUGST:

18     Q.    The jacket that you saw the Defendant place the

19  CD in, did you ever do an inspection of the pockets of

20  the jacket?

21     A.    Yes.

22     Q.    Did you look in, I guess, what would be the

23  inside left breast pocket?

24     A.    Yes, sir.

25     Q.    Did you look in also the outside left breast

26  pocket?

27     A.    Yes, sir.

28     Q.    Did there appear to be backing separating the

1    inside and the outside pocket?

2        A.    Yes.

3        Q.    Did there --

4        A.    I believe.

5        Q.    Did there appear to be any opening between the

6    outside and inside breast pocket?

7        A.    I don't recall.  It was a really quick

8    inspection.  Everything was happening really fast.

9        Q.    When you inspected the pocket, were you

10   specifically checking to see if there was any type of

11   opening between the two pockets?

12       A.    I was checking to see if there were any

13   weapons.

14       MR. AUGST:  Thank you.  Nothing further.

15       MR. THOMPSON:  No more questions, Your Honor.

16       THE COURT:  Thank you.  May this witness be excused?

17       MR. AUGST:  Yes, Your Honor.

18       THE COURT:  Thank you, sir.

19       THE WITNESS:  Thank you, Your Honor.

20       MR. AUGST:  People rest.

21       THE COURT:  Thank you.

22       MR. THOMPSON:  No affirmative evidence, Your Honor.

23       THE COURT:  What would you like me to do with your

24   subpoenaed documents?

25       MR. THOMPSON:  Maybe we could argue first and then

26   talk about that.

27       MR. AUGST:  What was that?

28       THE COURT:  Fine.

1     MR. AUGST:  I missed what happened.

2     MR. THOMPSON:  He was asking about the subpoenaed

3   documents.  I'm going to want them at some point, but I

4   think the Court's going to have to do an ex parte to

5   look at them.

6     MR. AUGST:  Do you want to just do it now, stipulate

7   to the release of them, and you and I can copy them?

8   Either you can take them or I will, and we can return

9   them to the court file?

10     MR. THOMPSON:  Since I'm the one that subpoenaed

11   them, I'll be happy to take them, copy them, and bring

12   them back.

13     MR. AUGST:  That's fine with me.  We'll stipulate to

14   chain of custody, release them to Defense Counsel.

15     THE COURT:  That's fine.  That's exactly what we'll

16   do.

17     MR. AUGST:  All right.

18     THE COURT:  All right.  Who would like to be heard?

19   I take it you have no affirmative evidence.

20     MR. THOMPSON:  I have no affirmative evidence.

21     MR. AUGST:  We'll submit and reserve.

22     MR. THOMPSON:  Your Honor, a robbery requires proof

23   of -- and this is at issue right now, whether the force

24   and/or fear occurs in relation to the asportation.  It's

25   clearly an issue in this case.

26          There's also a major issue, and I don't think

27   there's been any evidence of -- that the CD that he had

28   in his pocket was the CD that he took from inside the

1   store.  It's in a different pocket.  There was -- the

2   officer testified there was no chance for him to have

3   done certain things.  There certainly couldn't have been

4   a chance for him to switch it from one pocket to

5   another.  He said to the loss prevention officer that he

6   brought a CD in with him.

7           The CD that he had on the outside, in the

8   outside pocket, more likely than not is his.  I don't

9   think it's been proven by at least the substantial --

10  what is the phrase? -- by a strong suspicion that the CD

11  that Mr. Lacy had in his outside pocket is the CD that

12  he had earlier put in his inside pocket.  I think that

13  evidence is clear.

14          Secondly, assuming that's true, and even if

15  it's not true, the fracas that occurred was as a result

16  of that loss prevention officer not listening to this

17  guy telling him, "That's not your CD.  It's mine."

18          There's no asportation going on outside.  If

19  there's no asportation going on outside, these guys can

20  fight until 15 people are involved, and it's not a

21  robbery.  There's got to be force and fear during or

22  close to that asportation, and there's not in this case.

23          The loss prevention officer is the first one

24  who touches anybody, grabs him by the scruff of his

25  neck, and is trying to jerk him inside.  He testified --

26  and we watched the video, and it looks like he's

27  throwing him to the ground.  This was a violent

28  altercation initiated by that loss prevention officer,

1    not initiated by my client, and if there's no

2    asportation of something outside that store, he can

3    defend himself until the cows come home.

4        And I think based on that, there's clearly no

5    strong suspicion of -- either of two or three elements

6    in this case. Namely, that he had their property at the

7    time, that he had taken it from the immediate presence,

8    and that there was any force or fear during any time of

9    the asportation. I think the Court cannot bind him over

10    on a 211 on these facts.

11        We have no evidence that the CD in that pocket

12    was Walmart's CD. None at all. And that's all I have.

13    **MR. AUGST:** Thank you, Your Honor. I'll address

14    several of these arguments.

15        First of all, with regard to whether or not the

16    CD that was in the Defendant's pocket belongs to

17    Walmart, I think there's quite strong circumstantial

18    evidence that it is the CD. The LPO testified he

19    observed the Defendant with his own two eyes pick a CD

20    up from the rack. He says he saw him take keys out of

21    his pocket, open the CD case, take the CD out, put it in

22    his jacket pocket. He said the interior breast pocket.

23        He then sees the Defendant discard the case.

24    He goes over, picks up the case. It's an empty CD case.

25    He says it's a Rascal Flatts empty case. Later on when

26    the CD is recovered, the CD with no case is also a

27    Rascal Flatts CD corresponding with the empty CD case he

28    just found inside.

1          That's extremely strong evidence.  If the

2     Defense wants to go to trial and argue that that's not

3     evidence that this man actually stole this CD, that's an

4     argument for the jury.  But there's clearly strong

5     circumstantial evidence here today that that actually

6     was the CD he observed the Defendant take out of the

7     case and walk out of the store with.

8          With regard to the timing of when the force or

9     fear was used, as long as the force or fear is used at

10    some point during the commission of the crime -- and

11    courts have interpreted that to mean basically before

12    the suspect reaches a place of safety -- that qualifies

13    as a robbery.  You can't steal stuff, in the parking

14    lot, if you're getting chased by a security guard, get

15    into a fight or use force or, in an extreme case, even

16    use a gun to get away.  That still constitutes a

17    robbery.

18          It's a classic *Estes* style robbery.  In this

19    case the officer testified it happened several feet

20    outside the store.  It's clearly still in the commission

21    of the stealing, the theft.  He walks out of the exit.

22    The LPO contacts him.  He's not at a place of safety

23    yet.  He's still trying to get away, and that's when the

24    force or fear is used in this case.

25          And with regard to, I guess, the blame trying

26    to be shifted to the LPO, I mean, that's his job, is to

27    stop people from stealing from the store.  If he sees

28    someone pocketing a CD, picks up the empty case, sees

1   him exit, I mean, it's his job to stop this person, and,

2   if necessary, to use some level of force to detain him

3   so that they can't steal, so that police can be called

4   and can come to the store.

5           So I think it's wrong to try and shift the

6   blame and say that it's his fault that the force or fear

7   was ever used.  He's basically doing his job and doing

8   the right thing by trying to stop this person who he

9   just saw steal from the store.  That doesn't give the

10  Defendant the right then to use force or fear to combat

11  the LPO.

12          So I think there is sufficient cause for a

13  bindover.

14  **THE COURT:**  All right.  Well, I listened carefully

15  to the evidence and as to the first argument of Counsel,

16  it would -- it seemed clear to me, at least for

17  preliminary hearing purposes, the fact that the Rascal

18  Flatts empty case matched the CD of Rascal Flatts in his

19  pocket certainly meets the burden that's necessary for

20  here.

21          As to the robbery itself -- and I just went

22  online, *People v. Pham*, P-h-a-m, 15 Cal.App. 4th 61,

23  clearly shows that the robbery -- to complete the

24  robbery, the asportation need not occur after the force.

25  It's a robbery all the way through.

26          And so the force that's applied in this case,

27  although it was initially begun in an attempt to stop

28  the Defendant, Mr. Lacy, is still force nonetheless, and

1  because it seemed to me that the Walmart officer clearly

2  knew what he was doing, prevented the swings back from

3  hitting him or him from even retrieving that screwdriver

4  that was in his belt.

5      But that's not the important issue.  The

6  important issue is there was enough evidence presented

7  at this preliminary hearing to believe that the crime

8  charged was committed, that the Defendant is guilty

9  thereof, and that the allegations attendant thereto are

10  true and correct.  And I'm therefore ordering the

11  Defendant to be bound over to Superior Court for further

12  proceedings.

13      Do you wish immediate arraignment?

14  **MR. THOMPSON:**  Yes, Your Honor.  We're going to deem

15  the complaint the information, Your Honor.

16  **THE COURT:**  Thank you.

17  **MR. THOMPSON:**  Your Honor, the Defense is in

18  possession of the complaint, now deemed the information.

19  **MR. AUGST:**  Could we actually set an arraignment

20  date?  We may amend the information based on some prior

21  convictions.  So I think that would be a cleaner way to

22  do it, instead of arraigning him and then --

23  **THE COURT:**  That's perfectly fine.  We'll set an

24  arraignment date and also --

25  **MR. THOMPSON:**  Your Honor, could we do it -- the

26  sooner the better -- like sometime next week?

27  **THE CLERK:**  Due course is February the 6th.

28  **MR. THOMPSON:**  The reason I ask is I have a strong

1    suspicion this case is going to settle for something a

2    lot less than a robbery, based on the testimony here

3    today, and the sooner we can do that and get Mr. Lacy on

4    his way, the better.

5         THE COURT:  When would you like the arraignment?

6         MR. THOMPSON:  A week from today.

7         THE COURT:  That will be, what, the -- can we do it

8    on the 31st?  Is that okay with the People?

9         MR. AUGST:  We can do that.

10        THE COURT:  Okay.

11        THE CLERK:  January the 31st, 8:30, Department 5.

12        THE COURT:  And the record should reflect that there

13   was enough evidence induced at this hearing for a

14   probation violation, and probation is revoked, and that

15   hearing will trail this case.

16             And I will turn over to Defense Counsel the

17   subpoenaed records, which he'll copy and provide a copy

18   for the People; correct?

19        MR. THOMPSON:  Yes.  Thank you.

20             And, Your Honor, I think the record should also

21   reflect -- and I may have to address this later on -- I

22   don't have a copy of the SDT I issued to Walmart for the

23   video, but my recollection of the language that I used

24   in that SDT was that I wanted all of the video

25   surveillance, to include all of the interior of the

26   store during the time period that Mr. Lacy was inside

27   and whatever they had from outside.  And that's clearly

28   not what we got today.

1          I just want that put on the record.  I may have
2   to do an OSC or something later.
3       **THE COURT:**  I have no idea about any of that, but
4   you just put it on the record and it's fine.
5       **MR. THOMPSON:**  All right.
6       **THE COURT:**  All right.  Thank you.
7       **MR. AUGST:**  Thank you.
8       **MR. THOMPSON:**  Thank you.
9                      (End of Proceedings)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  STATE OF CALIFORNIA       )
                             )        SS.
2  COUNTY OF SAN DIEGO       )

3

4

5

6

7

8

9

10

11            REPORTER'S CERTIFICATE

12

13        I, CATHY COMFORD, AN OFFICIAL REPORTER OF THE

14  SUPERIOR COURT OF THE STATE OF CALIFORNIA, FOR THE COUNTY

15  OF SAN DIEGO, DO HEREBY CERTIFY THAT THE FOREGOING IS A

16  FULL, TRUE AND CORRECT STATEMENT OF THE TESTIMONY AND/OR

17  PROCEEDINGS HAD IN THE WITHIN-ENTITLED MATTER, AND THAT

18  THE SAME IS A FULL, TRUE AND CORRECT TRANSCRIPTION OF THE

19  SHORTHAND NOTES AS TAKEN BY ME IN SAID MATTER.

20

21        DATED THIS 1ST DAY OF FEBRUARY, 2007.

22

23

24  CATHY COMFORD
25  OFFICIAL REPORTER
    CSR NO. 10889

26

27

28

EXHIBIT "I"

**FILED**

Clerk of the Superior Court

*For Court Use Only*

FEB 2 8 2007

By: J. Shelton, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

PEOPLE vs _Dennis Lacy_ **Defendant**

**PLEA OF GUILTY/NO CONTEST – FELONY**

Court Number: SCN 223021

DA Number: OAY526

I, the defendant in the above-entitled case, in support of my plea of Guilty/No Contest, personally declare as follows:

1. Of those charges now filed against me in this case, I plead __Guilty__ to the following offenses and admit the enhancements, allegations and prior convictions as follows: [DL]

| COUNT | CHARGE *pc* | ENHANCEMENT/ALLEGATION |
|-------|-------------|------------------------|
| 2. CICot.1 | PC 666/484/666 | PC 667(b)-(i), 1170.12 |
|  |  |  |
|  |  |  |
|  |  |  |

PRIORS: (LIST ALLEGATION SECTION, CONVICTION DATE, COUNTY, CASE NUMBER, AND CHARGE)

PC 666 - 4/6/81, SAN DIEGO CRN6731, PC 459
PC 667(b)(i) & PC 1170.12, 4/6/81 SAN DIEGO, CRN6731, PC459/46 residential burglary

2. I have not been induced to enter this plea by any promise or representation of any kind, except: *(State any agreement with the District Attorney.)* Dismiss balance, stip 32 month sentence at 80% _____ [DL]

3. I am entering my plea freely and voluntarily, without fear or threat to me or anyone closely related to me. [DL]

4. I understand that a plea of No Contest is the same as a plea of Guilty for all purposes. [X]

5. I am sober and my judgment is not impaired. I have not consumed any drug, alcohol or narcotic within the past 24 hours. [DL]

### CONSTITUTIONAL RIGHTS

6a. I understand that I have the right to be represented by a lawyer at all stages of the proceedings. I can hire my own lawyer or the Court will appoint a lawyer for me if I cannot afford one. [DL]

**I understand** that as to all charges, allegations and prior convictions filed against me, and as to any facts that may be used to increase my sentence, now or in the future, I also have the **following constitutional rights, which I now give up** to enter my plea of guilty/no contest:

6b. I have the right to a **speedy and public trial by jury. I now give up this right.** [DL]

6c. I have the right to **confront and cross-examine all the witnesses** against me. **I now give up this right.** [DL]

6d. I have the right to **remain silent** (unless I choose to testify on my own behalf). **I now give up this right.** [DL]

6e. I have the right to **present evidence in my behalf** and to have the court subpoena my witnesses at no cost to me. **I now give up this right.** [DL]

| Defendant: DENNIS LACY | CASE NUMBER: CN223021 |
|---|---|

## CONSEQUENCES OF PLEA OF GUILTY OR NO CONTEST

7a. I understand that I may receive this maximum punishment as a result of my plea: ____6____ years in State Prison, $ _10,000_ fine and __4__ years parole (4, 7, 14, life) with return to prison for every parole violation. If I am not sentenced to prison I may receive probation for a period up to 5 years or the maximum prison term, whichever is greater. As conditions of probation I may be given up to a year in jail custody, plus the fine, and any other conditions deemed reasonable by the Court. I understand that if I violate any condition of probation I can be sent to State Prison for the maximum term as stated above.

7b. I understand that I must pay a restitution fine ($200 - $10,000), that I will also be subject to a suspended fine in the same amount, and that I must pay full restitution to all victims.

7c. I understand that my conviction in this case will be a serious/violent felony ("strike") resulting in mandatory denial of probation and substantially increased penalties in any future felony case.

7d. I understand that if I am not a U.S. citizen, this plea of Guilty/No Contest may result in my removal/deportation, exclusion from admission to the U.S. and denial of naturalization. Additionally, if this plea is to an "Aggravated Felony" listed on the back of this form, then I will be deported, excluded from admission to the U.S., and denied naturalization.

7e. I understand that my plea of Guilty or No Contest in this case could result in revocation of my probation or parole in other cases, and consecutive sentences.

7f. My attorney has explained to me that other possible consequences of this plea may be: (Circle applicable consequences.)

(1) Consecutive sentences
(2) Loss of driving privileges
(3) Commitment to Youth Authority
(4) Registration as an arson / sex / narcotic / gang offender
(5) Cannot possess firearms or ammunition
(6) Blood test and saliva sample

(7) Priorable (increased punishment for future offenses)
(8) Prison prior
(9) Mandatory prison
(10) Presumptive prison
(11) Sexually Violent Predator Law
(12) Possible/Mandatory hormone suppression treatment

(13) Reduced conduct credits
a. Violent Felony (No credit or max. 15%)
b. Prior Strike(s) (No credit to max. 20%)
c. Murder on/after 6/3/98 (No credit)
(14) Loss of public assistance
(15) AIDS education program
(16) Other: _____

## OTHER WAIVERS

8. (Appeal Rights) I give up my right to appeal the following: 1) denial of my 1538.5 motion, 2) issues related to strike priors (under PC sections 667(b)-(i) and 1170.12), and 3) any sentence stipulated herein.

9. (Harvey Waiver) The sentencing judge may consider my prior criminal history and the entire factual background of the case, including any unfiled, dismissed or stricken charges or allegations or cases when granting probation, ordering restitution or imposing sentence.

10. (Blakely Waiver) Except where a prison term has been set by stipulation of the parties, I agree that the sentencing judge may determine the existence or non-existence of any aggravating facts which may be used to increase my sentence on any count or allegation above the middle term, either at the initial sentencing or at any future sentencing in the event my probation is revoked.

11. (Arbuckle Waiver) I give up my right to be sentenced by the judge who accepts this plea.

12. (Probation Report) I give up my right to a full probation report before sentencing.

Defendant: DENNIS LACY    CASE NUMBER: CN223021

3. **(Evidence Disposal Waiver)** I give up my interest in all non-biological property/evidence impounded during the investigation of this case except _____ and acknowledge that if I listed any property here, I must also file a claim with the impounding agency within 60 days after pronouncement of judgment or my ability to make a claim will expire.

**PLEA**

14. I now plead Guilty/No Contest and admit the charges, convictions and allegations described in paragraph #1, above. I admit that on the dates charged, I: *(Describe facts as to each charge and allegation)*
took the personal property of another with the intent to permanently deprive the true owner having suffered a prior theft conviction and having served at least one day in custody

15. I declare under penalty of perjury that I have read, understood, and initialed each item above and any attached addendum, and everything on the form and any attached addendum is true and correct.

Dated: 2-28-07    Defendant's Signature _Dennis E. Lacy_

Defendant's Address: _____
                                          Street
_____
          City                State          Zip
Telephone Number: (___)___

Defendant's Right Thumb Print

**ATTORNEY'S STATEMENT**

I, the attorney for the defendant in the above-entitled case, personally read and explained to the defendant the entire contents of this plea form and any addendum thereto. I discussed all charges and possible defenses with the defendant, and the consequences of this plea, including any immigration consequences. I personally observed the defendant fill in and initial each item, or read and initial each item to acknowledge his/her understanding and waivers. I observed the defendant date and sign this form and any addendum. I concur in the defendant's plea and waiver of constitutional rights.

Dated: 2-28-07    David A. Thompson    _signature_
                        (Print Name)    Attorney for Defendant    (Signature)
                                        (Circle one: PD / APD / PCO / RETAINED)

**INTERPRETER'S STATEMENT (If Applicable)**

I, the sworn _____ language interpreter in this proceeding, truly translated for the defendant the entire contents of this form and any attached addendum. The defendant indicated understanding of the contents of this form and any addendum and then initialed and signed the form and any addendum.

Dated: _____    _____    _____
                        (Print Name)    Court Interpreter    (Signature)

**PROSECUTOR'S STATEMENT**

The People of the State of California, plaintiff, by its attorney, the District Attorney for the County of San Diego, concurs with the defendant's plea of Guilty/No Contest as set forth above.

Dated: 2/28/07    Karl Egel    _signature_
                        (Print Name)    Deputy District Attorney    (Signature)

**COURT'S FINDING AND ORDER**

The Court, having questioned the defendant and defendant's attorney concerning the defendant's plea of Guilty/No Contest and admissions of the prior convictions and allegations, if any, finds that: The defendant understands and voluntarily and intelligently waives his/her constitutional rights; the defendant's plea and admissions are freely and voluntarily made; the defendant understands the nature of the charges and the consequences of the plea and admissions; and there is a factual basis for same. The Court accepts the defendant's plea and admissions, and the defendant is convicted thereby.

Dated: 2/28/07    _signature_
                                        Judge of the Superior Court

# EXHIBIT "J"

SCD22021 DA CAY5266I

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

☐ CENTRAL  ☑ NORTH  ☐ EAST  ☐ SOUTH

DATE 2-28-05  AT 9:30  M.  Immediate Service

SENT: HON K. Michael Kirkman  JUDGE PRESIDING DEPARTMENT 5

CLERK J. Ibarra  REPORTER C. Mort  CSR# 12029

REPORTER'S ADDRESS: P.O. BOX 120128, SAN DIEGO, CA 92112-0128

Karl Eppel

THE PEOPLE OF THE STATE OF CALIFORNIA  DEPUTY DISTRICT ATTORNEY

VS.

Carey Denny E.  David Thompson

DEFENDANT  ATTORNEY FOR DEFENDANT (PD / APD / PCC / RETAINED)

VIOLATION OF D PC 484  P.O. _____

ENH(S) PC 666  INTERP. _____  OATH ON FILE / SWN.

PRIOR(S) PC 667(b)-(i)/1170.12/667.5  LANGUAGE _____

☐ DEFENDANT ☑ PRESENT  ☐ NOT PRESENT  ☐ NOT PRODUCED

**PREV**

☐ DEFENDANT ADVISED OF RIGHTS AND ADMITS / DENIES A VIOLATION OF PROBATION _____. ☐ WAIVES HEARING.
PROBATION IS / REMAINS: FORMALLY / SUMMARILY  ☐ REVKD  ☐ REINST  ☐ MODIFIED  ☐ CONT  ☐ ST&C  ☐ TERMD.  ☐ EXT. TO: _____

**JUDGMENT**

☐ COMPLIANCE WITH PC 296 VERIFIED / ORDERED. ☑ WAIVES ARRAIGNMENT. ☐ ARRAIGNED FOR JDGMT. ☐ IMPOSITION / EXECUTION OF SENTENCE IS SUSP.
☑ PROBATION IS ☑ DENIED ☐ GRANTED _____ YEARS (FORMAL/SUMMARY) TO EXPIRE _____.
☐ COMMITMENT TO SHERIFF FOR _____ DAYS.  STAYED _____ / PNDG. SUCC. COMPL. OF PROB.  ☐ PAROLE NOT TO BE GRANTED.
☐ PERFORM _____ HRS / DAYS PSP / VOL. WORK AT NONPROFIT ORG.  SUBMIT PROOF TO PROBATION / COURT BY _____.
☐ 4TH AMENDMENT WAIVER: ☐ IMPOSED. / ☐ REMAINS IN EFFECT. / ☐ DELETED.  ☐ FORMAL PROB. CONVERTS TO SUMM. PROB. _____.
☐ FURTHER CONDITIONS ARE SET FORTH IN PROBATION ORDER.  ☐ WORK FURLOUGH, REPORT: _____
☐ DEFENDANT IS COMMITTED TO THE CALIFORNIA YOUTH AUTHORITY  ☐ PER WI 1737
☑ **DEFENDANT IS COMMITTED TO THE DEPARTMENT OF CORRECTIONS**  ☐ PER PC 1170(d).
☑ FOR ☑ LOWER / MIDDLE / UPPER / INDETERMINATE TERM OF 32  YEARS ☑ MONTHS TO LIFE
ON COUNT 1 CODE & NO. PC 666/484  ☐ PRINCIPAL COUNT. ☑ STIPULATED SENTENCE.
☑ DEFENDANT SENTENCED PER PC 667(b)-(i)/1170.12.  ☑ NOTICE OF FIREARMS PROHIBITION GIVEN PER PC 12021.
☐ **NO VISITATION** PER PC 1202.05. VICTIM IS UNDER 18 YRS. OF AGE. ☐ TO COMPLY WITH NOTICES.
☐ DEFT. ADVISED REGARDING PAROLE / APPEAL RIGHTS.  ☐ **REGISTRATION** PER PC 290 / HS 11590 / PC 457.1 / PC 186.30.
☑ HIV TESTING PER PC 1202.1 ☑ DNA SAMPLING PER PC 296.  ☐ PROTECTIVE ORDER ISSUED.
☐ DEFENDANT TO PAY: FINE OF $_____ PLUS PENALTY ASSESSMENT.  ☐ $20 COURT SECURITY FEE. ☐ PROBATION COSTS.  ☐ BOOKING FEES.
REST. FINES ☑ $ 500 _____ PER PC1202.4(b). ☑ R/W PER PC2085.5 ☑ $ 500 _____ PER PC1202.44 ☑ PC1202.45 SUSP. UNLESS PROB. (PAROLE) REVKD.
☐ PROBATION HAVING BEEN FORMALLY REVOKED, THE PREVIOUS RESTITUTION FINE OF $ _____, SUSPENDED PER PC 1202.44, IS NOW DUE.
☐ RESTITUTION TO VICTIM(S) PER P.O.'s REPORT / REST. FUND PER PC 1202.4(f) OF $ _____ / IN AN AMT. TO BE DETERMINED.  ☐ JOINT & SEVERAL.
☐ COURT-APPOINTED ATTORNEY FEES ORDERED IN THE AMOUNT OF $ _____
☐ INCOME DEDUCTION ORDER OF $ _____ PER PAY PERIOD PER PC 1202.42 STAYED UNLESS DEFT. FAILS TO PAY VICTIM REST.  NOTICE OF RIGHTS PROVIDED.
☐ AT THE COMBINED RATE OF $ _____ PER MONTH TO START 60 DAYS AFTER RELEASE / ON _____
☐ DEFT. TO REPORT TO REVENUE & RECOVERY / COURT COLLECTIONS TO SET UP AN ACCOUNT FORTHWITH / WITHIN 72 HOURS OF RELEASE FROM CUSTODY.
☐ ALL PROPERTY IMPOUNDED, SEIZED, OR HELD IN CUSTODY IN THIS CASE TO BE DISPOSED OF PER POSSESSING AGENCY'S POLICY.

CREDIT FOR TIME SERVED
55  DAYS LOCAL
_____ DAYS STATE INST.
26  DAYS PC4019/2933.1
81  TOTAL DAYS CREDIT

**CUST STAT**

☑ DEFENDANT REMANDED TO CUSTODY OF SHERIFF ☑ WITHOUT BAIL.  ☐ WITH BAIL SET AT $ _____
☐ DEFENDANT TO REMAIN AT LIBERTY  ☐ ON BOND POSTED $ _____.  ☐ ON PROBATION.  ☐ ON DEJ.  ☐ ON OWN / SUPERVISED RECOGNIZANCE.
☐ DEFENDANT ORDERED RELEASED FROM CUSTODY  ☐ ON PROBATION.  ☐ ON OWN / SUPERVISED RECOGNIZANCE.  ☐ ON DEJ.  ☐ THIS CASE ONLY.

**FUT HRGS**

☐ DEFENDANT WAIVES STATUTORY TIME FOR PRONOUNCEMENT OF JUDGMENT.
☐ DEFENDANT REFERRED FOR DIAGNOSTIC EVALUATION.  ☐ PER PC 1203.03.  ☐ PER WI 707.2.
_____ CONTINUED TO / SET FOR _____ AT _____ M. IN DEPT. _____ ON MOTION
OF COURT / DDA / DEFENDANT / PROBATION OFFICER.  REASON: _____
☐ EVIDENTIARY HEARING ON THE PROBATION REVOCATION ALLEGATION TO BE HEARD CONCURRENTLY WITH THE PRELIMINARY HEARING.

**BONDS/WRNTS**

☐ BENCH WARRANT TO ISSUE, BAIL SET AT $ _____.  ☐ SERVICE FORTHWITH.  ☐ ORDERED WITHHELD TO _____.
☐ BENCH WARRANT ISSUED / ORDERED _____ IS RECALLED / RESCINDED.
☐ BAIL IS ☐ EXONERATED.  ☐ FORFEITED.  AMOUNT $ _____.  BOND NO. _____
BOND COMPANY _____  AGENT _____

**MH**

☐ PROCEEDINGS SUSPENDED  ☐ PER **PC 1368**, MENTAL COMPETENCY. (SEE BELOW FOR DATES OF EXAMINATION AND HEARING.)
☐ PER WI 3051, ADDICTION OR DANGER OF ADDICTION.  SERVICE OF PETITION: _____

**HER**

☑ PROBATION TO PREPARE SUPP. REPT. ☑ SUBMIT POST-SENT REPT TO CDC PER PC1203. ☑ REPT. TO REG. OF VOTERS.  ☐ DMV ABSTRACT. B.A.C. _____
☐ CONCURRENT WITH / CONSECUTIVE TO: _____

K. Michael Kirkman

JUDGE OF THE SUPERIOR COURT

SDSC CRM-2B(Rev. 5-05)

CRIMINAL MINUTES - PRONOUNCEMENT OF JUDGEMENT

ABSTRACT OF JUDGMENT – PRISON COMMITMENT – DETERMINATE
SINGLE, CONCURRENT, OR FULL-TERM CONSECUTIVE COUNT FORM
*[Not to be used for multiple count convictions or for 1/3 consecutive sentences]*

CR-290.1

SUPERIOR COURT OF CALIFORNIA, COUNTY OF: **SAN DIEGO**

PEOPLE OF THE STATE OF CALIFORNIA vs.
DEFENDANT: **DENNIS EVERETT LACY**    DOB: **05-30-60**

AKA:

CII NO.: **05304408**

BOOKING NO.: **07701014**    ☐ NOT PRESENT

CASE NUMBER
**SCN223021**

F I L E D
Clerk of the Superior Court

MAR 9 – 2007

BY: D. COUSINS

COMMITMENT TO STATE PRISON
ABSTRACT OF JUDGMENT    ☐ AMENDED ABSTRACT

| DATE OF HEARING 02-28-07 | DEPT. NO. 5 | JUDGE K. MICHAEL KIRKMAN |
|---|---|---|
| CLERK J. SHELTON | REPORTER L. PRIEST | PROBATION NO. OR PROBATION OFFICER ☒ IMMEDIATE SENTENCING |
| COUNSEL FOR PEOPLE K. EPPEL | | COUNSEL FOR DEFENDANT D. THOMPSON ☒ APPTD. |

1. Defendant was convicted of the commission of the following felony:

| COUNT | CODE | SECTION NUMBER | CRIME | YEAR CRIME COMMITTED | DATE OF CONVICTION (MO./DATE/YEAR) | CONVICTED BY JURY | COURT | PLEA | TERM (L, M, U) | TIME IMPOSED YRS. | MOS. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | PC | 666-484 | PETTY THEFT WITH PRIOR | 2007 | 02-28-07 | | | X | L | 2 | 8 |

2. ENHANCEMENTS charged and found to be true TIED TO SPECIFIC COUNTS (mainly in the PC 12022 series). List each count enhancement horizontally. Enter time imposed for each or "S" stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| COUNT | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | TOTAL |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

3. ENHANCEMENTS charged and found to be true FOR PRIOR CONVICTIONS OR PRISON TERMS (mainly in the PC 667 series). List all enhancements horizontally. Enter time imposed for each or "S" for stayed. DO NOT LIST ANY STRICKEN ENHANCEMENT(S).

| ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | ENHANCEMENT | TIME IMPOSED OR "S" FOR STAYED | TOTAL |
|---|---|---|---|---|---|---|
| | | | | | | |

4. ☒ Deft. sentenced per: ☒ PC 667(b)-(i) or PC 1170.12 (two strikes) ☐ PC 1170(a)(3). Pre-confinement credits equal or exceed time imposed. (Paper Commitment.) Deft. ordered to report to local Parole Office upon release.

5. FINANCIAL OBLIGATIONS (plus any applicable penalty assessments): ☐ Court Security Fee of $ _____ per PC 1465.8.

Restitution Fine(s): $ **500** per PC 1202.4(b) forthwith per PC 2085.5; $ **500** per PC 1202.45 suspended unless parole is revoked.
$ _____ per PC 1202.44 is now due, probation having been revoked.

Restitution per PC 1202.4(f): ☐ $ _____ / ☐ Amount to be determined    to ☐ victim(s)*    ☐ Restitution Fund
☐ *Victim name(s), if known, and amount breakdown in item 8 below.    ☐ *Victim name(s) in probation officer's report.

Fine(s): $ _____ per PC 1202.5, $ _____ per VC 23550 or _____ days ☐ county jail ☐ prison in lieu of fine ☐ concurrent ☐ consecutive
☐ Includes: ☐ $50 Lab Fee per HS 11372.5(a)    ☐ $ _____ Drug Program Fee per HS 11372.7(a) for each qualifying offense.

6. TESTING: a. ☐ Compliance with PC 296 verified b. ☒ DNA per PC 296 c. ☐ AIDS per PC 1202.1 d. ☐ other *(specify):* _____

7. IMMEDIATE SENTENCE: ☒ Probation to prepare and submit a post-sentence report to CDCR per PC 1203c. Deft's Race/Nat'l Origin **White**

8. Other orders *(specify):*

9. | TOTAL TIME IMPOSED EXCLUDING COUNTY JAIL TERM: | 2 | 8 |
|---|---|---|

10. ☐ This sentence is to run concurrent with *(specify):*

11. Execution of sentence imposed: a. ☒ at initial sentencing hearing. b. ☐ at resentencing per decision on appeal. c. ☐ after revocation of probation. d. ☐ at resentencing per recall of commitment. (PC 1170(d).) e. ☐ other *(specify):*

12.

| DATE SENTENCE PRONOUNCED 02-28-07 | CREDIT FOR TIME SPENT IN CUSTODY 81 | TOTAL DAYS INCLUDING: | ACTUAL LOCAL TIME 55 | LOCAL CONDUCT CREDITS 26 | ☒ 4019 ☐ 2933.1 | TIME SERVED IN STATE INSTITUTION: | DMH | CDCR | CRC |
|---|---|---|---|---|---|---|---|---|---|

13. The defendant is remanded to the custody of the sheriff ☒ forthwith ☐ after 48 hours excluding Saturdays, Sundays, and holidays.
To be delivered to ☒ the reception center designated by the director of the California Department of Corrections and Rehabilitation.
☐ Other *(specify):*

CLERK OF THE COURT: I hereby certify the foregoing to be a correct abstract of the judgment made in this action.

| DEPUTY'S SIGNATURE Donna Cousins | DATE 03-09-07 |
|---|---|

This form is prescribed under PC 1213.5 to satisfy the requirements of PC 1213 for determinate sentences. Attachments may be used but must be referred to in this document.

Form Adopted for Mandatory Use
Judicial Council of California
CR–290.1 (Rev. January 1, 2007)

ABSTRACT OF JUDGMENT – PRISON COMMITMENT – DETERMINATE
SINGLE, CONCURRENT, OR FULL-TERM CONSECUTIVE COUNT FORM

Penal Code,
§§ 1170,1213, 1213.5

01  Dennis Everett Lacy    F-64225
    Mule Creek State Prison
02  4001 Highway 104
    P.O. Box 409000    M1A-04up
03  Ione, California  95640
          IN PRO SE



FILED

JUN 1 8 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                        DEPUTY

04

05          IN THE DISTRICT COURT OF THE UNITED STATES

06          IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

07

08

09  DENNIS EVERETT LACY,
              DEFENDANT / PETITIONER,

10                                          '08 CV 1083 W BLM
                  vs                    CIVIL NUMBER:
11                                      (TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

12  PEOPLE OF THE STATE OF CALIFORNIA,
              PLAINTIFF / RESPONDENT,
13  JAMES TILTON,                       STATEMENT OF FACTS AND ARGUMENTS and
        SECRETARY OF CORRECTIONS,       MEMORANDUM OF POINTS AND AUTHORITIES
14  CALIFORNIA DEPARTMENT OF            IN SUPPORT OF PETITION FOR WRIT OF
        CORRECTIONS & REHABILITATION,       HABEAS CORPUS; REQUEST FOR
15  THE ATTORNEY GENERAL OF THE            APPOINTMENT OF COUNSEL;
        STATE OF CALIFORNIA,              REQUEST FOR EXPEDITED HEARING
16                        RESPONDENT,

17

18

19

20

21

22

23

24

25                                          PETITIONER PROCEEDING

26                                          IN PRO SE

27

28

1

# T A B L E     O F     C O N T E N T S

2                                                                      PAGE  #

3

4   TABLE OF AUTHORITIES................................................    iv

5   INTRODUCTION AND OVERVIEW..........................................    01

6   ISSUES PRESENTED FOR REVIEW........................................    02

7   STATEMENT OF THE CASE..............................................    06

8   STATEMENT OF THE FACTS.............................................    11

9   NECESSITY FOR REVIEW...............................................    34

10

11             ## ARGUMENTS   AND   POINTS   OF   AUTHORITIES

12  A. HABEAS CORPUS IS THE CORRECT PROCEDURE TO PRESENT
           EVIDENCE DISCOVERED........................................    35
13  B. REQUEST FOR APPOINTMENT OF COUNSEL and EXPEDITED HEARING........    60

14  VERIFICATION......................................................    61

15  CONCLUSION........................................................    62

16

17                      # E X H I B I T S

18  [ -A- ]    Wal-Mart Stores, Inc. Loss Prevention Apprehension
                Report (WMO-30) dated 01/04/2007; Submitted by
19              Warren A. Woodberry...................................

20  [ -B- ]    Wal-Mart Stores, Inc. Receipt generated 01/04/2007
                @ 22:12:45 hours; Submitted by Warren A. Woodberry.....
21

22  [ -C- ]    Oceanside Police Department- Officer's Report Narrative
                (Case #07000341) dated 01/05/2007; Submitted by
                Oceanside Police Officer J. Romano....................
23

24  [ -D- ]    Declaration and Determination (Probable Cause for
                Warrantless Arrest) dated 01/04/2007; Submitted by
25              Oceanside Police Officer J. Romano....................

26  [ -E- ]    San Diego Regional Arrest/Juvenile Contact Report
                dated 01/05/2007; Submitted by Oceanside Police
27              Officer J. Romano.....................................

28

1    [ -F- ]    San Diego County Sheriff's Department Booking Intake/
                  Personal Property Inventory (Case #07000341) dated
2              01/05/2007; Submitted by Oceanside Police Officer J.
                  Romano.........................................

3

4    [ -G- ]    Superior Court of California, County of San Diego,
                  North County Division Felony Complaint dated 01/09/2007

5    ] -H- ]    Superior Court of California, County of San Diego,
                  North County Jurdicial District Reporter's Transcripts
6              of Preliminary Hearing (Case #SCN223021) dated Tuesday,
                  January 23, 2007...................................

7

8    [ -I- ]    Superior Court of California, County of San Diego,
                  Plea of Guilty/No Contest - Felony Document (Case #SCN
                  223021) dated February 28, 2007.....................

9

10   [ -J- ]    Superior Court of California - County of San Diego,
                  Criminal Minutes - Promouncement of Judgment (Case
                  #SCN223021) dated 02/28/2007; Superior Court of
11             California - County of San Diegom Abstract of Judgment-
                  Prison Commitment- Determinate Single, Concurrent, or
12             Full-Term Consecutive Count Form (Case #SCN223021)
                  filed 03/09/2007..................................

13  //

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

1

T A B L E    O F    A U T H O R I T I E S

2   PC§118a    False Evidence as to tesimony as perjury; subsequent
                contrary testimony

3

    PC§127     Subornation of Perjury; definition; punishment
4

    PC§211     Robbery; definition
5

    PC§212     FEAR; defined
6

    PC§871     Dismissal of Complaint; discharge of defendant;
7                Endorsement on depositions

8   PC§1473    Persons authorized to prosecute writ; false evidence

9   PC§1487    Discharge of Person in custody by virtue of process;
                grounds
10

C A S E S :
11

People v Estes 194 Cal.Rptr 909; 147 Cal.App.3d 23 (Cal.App. 1 Dist.
12            1983

13  People v Pham 15 Cal.App.4th 61

14   D U E   P R O C E S S

15  Hughes v Johnson 191 F.3d 607 (5th Cir. 1999)

16  In Re Clark (1993) 5 Cal.4th 750, 781; 21 Cal.Rptr.2d 509; 855 P.2d 729

17  In Re Waltreus (1965) 62 Cal.2d 218, 225; 42 Cal.Rptr. 9; 397 P.2d 1001

18  In Re Winchester 53 Cal.2nd a pp. 531-532; 2 Cal.Rptr. 296; 348 P.2d 904

19  Phillips v. Woodford 267 F.3d 966 (9th Circ. 2001)

20  Wilson v Lawrence County 260 F.3d 946 (8th Circ. 2001)

21  Schaff v Snyder 190 F.3d 513 (7th Circ. 1999)

22  US v Edwards 242 F.3d 928 (10th Circ. 2001)

23  US v Gastelum-Almeida 298 F.3d 1167 (9th Circ. 2002)

24  US v Haese 162 F.3d 359 (5th Circ. 1998)

25  US v Maynard 236 F.3d 601 (10th Circ. 2000)

26   B R A D Y    I S S U E S

27  Brady v Maryland 373 US 83; 10 LEd.2d 215; 83 SCt.1194 (1963)

28  Burton v Dormire 295 F.3d 839 (8th Circ. 2002)

1    Johnson v Gibson 169 F.3d 839 (10th Circ. 1999)

2    McCambridge v Hall 266 F.3d 12 (1st Circ. 2001)

3    Riley v Taylor 237 F.3d 3000 (3rd Circ. 2001)

4    <u>E V I D E N C E</u>

5    Gary v Klauser 282 F.3d 633 (9th Circ. 2002)

6    In Re Brown (1998) 17 Cal.4th 873, 879

7    In Re Hall (1981) 30 Cal.3d 408, 433

8    In Re Harris (1993) 5 Cal.4th 81, 824

9    In Re Pratt (1999) 69 Cal.4th 1294, 1313-1314

10    In Re Sassounian (1995) 9 Cal.4th 535-546

11    In Re Weber (1974) 11 Cal.3d 703, 704

12    US v Bautista 252 F.3d 141 (2nd Circ. 2001)

13    US v Elam 269 F.3d 877 (7th Circ. 2001)

14    US v Goodson 165 F.3d 610 (8th Circ. 1999)

15    US v Lorefice 192 F.3d 647, 651-652 (7th Circ. 1999)

16    US v Mulderig 120 F.3d 354 (5th Circ. 1997)

17    <u>I N E F F E C T I V E   A S S I S T A N C E   O F   C O U N S E L</u>

18    Brown v Johnson 224 F.3d 461 (5th Circ. 2000)

19    In Re Neely (1993) 6 Cal.4th 901

20    Lockhart v Terhune 250 F.3d 1223 (9th Circ. 2001)

21    People v Frierson (1979) 25 Cal.3d 142

22    People v Pope 23 Cal.3d @ pp 421-426; 152 Cal.Rptr. 732; 590 P.2d 859

23    People v Wherton (1991) 53 Cal.3d 522; 280 Cal.Rptr. 631; 809 P.2d 290

24    Silva v Woodford 279 F.3d 825 (9th Circ. 2002)

25    US v Garth 188 F.3d 99 (3rd Circ. 1999)

26    Washington Legal Foundation v Legal Foundation of Washington
27       271 F.3d 835 (9th Circ. 2001)

28    Williams v Taylor US LEd.2d; 120 SCt. 1495 (2000)

1    N E W   T R I A L

2    Biami v US 144 F.3d 1096 (7th Circ. 1998)

3    Cline v Wal-Mart Stores, Inc. 144 F.3d 294 (4th Circ. 1998)

4    Latiolais v Whitley 93 F.3d 205 (5th Circ. 1996)

5    US v Gonzalez-Gonzalez 258 F.3d 16 (1st Circ. 2001)

6    Us v Hobson 825 F.2d 364 (11th Circ. 1987)

7    US v Haimowitz 725 F.2d 1561 (11th Circ. 1984)

8    US v McCarthy 271 F.3d 387 (2nd Circ. 2001)

9    US v Vaziri 164 F.3d (10th Circ. 1999)

10    P L E A S

11    US v Salgado-Ocampo 159 F.3d 322 (7th Circ. 1998)

12    O T H E R

13    In Re Wright (1978) 144 Cal.Rptr. 535;78 Cal.App.3d 788 (Cal.App.4th Dist.
        1978))

14    Justice vs US 6 F.3d 1474 (11th Circ. 1993)

15    People v Creeks 170 Cal.368

16    People v Mungia (1991) 286 Cal.Rptr. 394; 234 Cal.App.3d 1703;
        (Cal.App. 4th Dist. 1991))

17    Strickland v Washington (1984) 466 U.S. 668, 687-688; 104 SCt. 2052, 2064;
        80 LEd.2d 674

18    US v Vallo 238 F.3d 1242 (10th Circ. 2001)

19    US v White 222 F.3d 363 (7th Circ. 2000)

20    //

21    //

22    //

23    //

24    //

25    //

26    //

27    //

28    //

01 | Dennis Everett Lacy    F-64225
  | Mule Creek State Prison
02 | 4001 Highway 104
  | P.O. Box 409000    M1A-04up
03 | Ione, California  95640
  |         IN PRO SE
04 |
05 |              IN THE DISTRICT COURT OF THE UNITED STATES
06 |           IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA
07 |
08 |
09 | DENNIS EVERETT LACY,
  |              DEFENDANT / PETITIONER,
10 |
  |              Vs                      CIVIL NUMBER:_____
11 |                                     (TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)
12 | PEOPLE OF THE STATE OF CALIFORNIA,
  |              PLAINTIFF / RESPONDENT,
13 | JAMES TILTON,                       STATEMENT OF FACTS AND ARGUMENTS and
  |    SECRETARY OF CORRECTIONS,        MEMORANDUM OF POINTS AND AUTHORITIES
14 | CALIFORNIA DEPARTMENT OF           IN SUPPORT OF PETITION FOR WRIT OF
  |    CORRECTIONS & REHABILITATION,        HABEAS CORPUS; REQUEST FOR
15 | THE ATTORNEY GENERAL OF THE           APPOINTMENT OF COUNSEL;
  |    STATE OF CALIFORNIA,              REQUEST FOR EXPEDITED HEARING
16 |              RESPONDENT,
17 |
18 |
19 |              INTRODUCTION AND OVERVIEW
20 |        TO THE HONORABLE JUSTICES OF THE DISTRICT COURT OF THE UNITED STATES, IN
21 | AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA; COMES NOW, DENNIS EVERETT LACY,
22 | the Petitioner in the above-entitled Cause of Action, and moves this Honorable Court for a rendering of the
23 | attached information within the Petition for Writ of Habeas Corpus and submits Statement(s) and Facts and
24 | Arguments and Memorandum of Points and Authorities in Support of the Petition for Writ of Habeas Corpus in
25 | reference to said Petitioner. Petitioner also establishes within the attached information "GOOD CAUSE" to
26 | consider granting the Eexpedited Hearing on the facts herein based on the length of confinement in which this
27 | Petitioner has been in custody, the credibility of the "facts", "documents", and related evidence presented and
28 | challenged with regards to the foundation of the matters described and addressed herein.

1      I S S U E S    P R E S E N T E D    F O R    R E V I E W

2              Petitioner appears before this Court and prays that this Court

3      will review the attached Writ of Habeas Corpus and all relevant documentation

4      submitted, in an effort to distinguish the wrongs committed against this

5      Petitioner in violation of the due process guarantees of both the California

6      Constitution and the United States Constitution.

7              This Petitioner contends that no evidence was presented in order

8      to substantiate a bind-over from the Municipal Court of San Diego County,

9      into the Superior Court for the State of California, County of San Diego,

10     for the violation of Penal Code Section §211, a Robbery. Petitioner contends

11     that the two (02) critical elements of the robbery allegation were NEVER

12     established, and based upon these factors, the bind-over to the Superior

13     Court for robbery was unfounded and in violation of this Petitioner's Due

14     Process guarantees.

15             The witness, WARRREN A. WOODBERRY, alleged on the evening of

16     01/04/2007, in his declaration to the Oceanside Police Officer  (J. Romano),

17     that this Petitioner had attempted to strike him in his face on two (02)

18     separate occassion during a confrontation outside of a Wal-Mart Stores, Inc.

19     facility located within the city of Oceanside, California. The witness

20     initially stated that this Petitioner initiated the confrontation and later

21     declared within testimony at the Preliminary Hearing, that he himself had

22     initiated the altercation based on his mere "belief" that this Petitoner'

23     had lunged to his right after being confronted, in an attempt to flee. The

24     witness later stated within his testimony before the Preliminary Hearing,

25     that this Petitioenr HAD NOT attempted to stike him in his face, as earlier

26     alleged in order to have this Petitioner arrested for the violation of the

27     §211 Robbery, and that at no time did the witness, Warren A. Woodberry

28     establish that he was in fear of his safety against this Petitioner, NOR

-02-

1   did Warren A. Woodberry testify that this Petitioenr had used any fashion of

2   force against the witness on the evening of 01/04/2007, other than in what

3   can be perceived as this Petitioner attempting to defend himself against what

4   this Petitioner believed was an assault against his person by Warren A.

5   Woodberry.

6          The testimony of Warren A. Woodberry during the Preliminary

7   Hearing of 01/23/2007 was in conflict with the testimony of 01/04/2007,

8   and in conflict of the statement and information given to Oceanside Police

9   Officer J. Romano as declared within the Police Report(s) submitted against

10   this Petitioner with regards to the allegations claimed by Warren A.

11   Woodberry.

12          The witness was subpoenaed to bring a surveillance video

13   recorded on 01/04/2007 at the described Wal-Mart Stores, Inc. business. The

14   witness, Warren A. Woodberry failed to produce that surveillance video as

15   described, and deprived this Petitioner of a critical piece of evidence

16   needed in order to prove beyond all reasonable doubt, that this Petitioner

17   HAD NOT in fact committed a theft of a CD prior to exiting the Wal-Mart

18   Stores, Inc. facility on the evening of 01/04/2007, as alleged by the

19   witness, Warren A. Woodberry.

20          The appointed counsel for this Petitioner failed to adequately

21   address the evidence submitted, and/or the witnesses failure to produce

22   the surveillance video as required by way of motions presented, and as

23   such, deprived this Petitioner of adequate counsel and practice what this

24   Petitioner would consider as Ineffective Assistance of Counsel throughout

25   the time that counsel was appointed.

26          The witness, Warren A. Woodberry himself, established testimony

27   that placed his testimony in jeopardy and establish the potential to be

28   considered as lacking in credibility. In the Preliminary Hearing was

1    Oceanside Police Officer J. Romano, designated as the Investigative Officer

2    by the Prosecution. At no time, did this Petitioner's appointed-counsel

3    request that Oceanside Police Officer J. Romano be called to testify at the

4    Preliminary Hearing, in order to impeach the conflicting testimony of the

5    witness, Warren A. Woodberry, as should have been designated. Appointed

6    counsel was aware that the testimony was in contradiction to the original

7    statement and information declared on the evening of 01/04/2007, yet did

8    NOTHING to establish the conflictions on the record.

9            Therefore, this Petitioner requests that this Court review the

10   documentation submitted herein, and establish that based on the testimony

11   of the witness, Warren A, Woodberry, during testimony at the Preliminary

12   Hearing of 01/23/2007, in conflict to the statement and information initially

13   submitted on 01/04/2007 to the Oceanside Police Officer  J. Romano, did in

14   fact the evidence exist in order to establish a bind-over to the Superior

15   Court for violation of Penal Code Section §211, a robbery.

16           The Petitione requests this Court render a decision in this

17   Petitioner's favor establishing that the appointed counsel for this Petition

18   er did in fact deprive this Petitioner of the Due Process guarantees in NOT

19   calling the Investigating Oficer [who was present], J. Romano, to the

20   stand during the Preliminary Hearing held 01/23/2007, in order to use his

21   testimony to impeach the conflicting testimony of the witness, Warren A.

22   Woodberry' and Warren A. Woodberry's allegations which established the

23   ultimate arrest of the Petitioner on 01/04/2007 for the violation of Penal

24   Code Section §211, a Robbery.

25           This Petitioner requests this Court render a decision in this

26   Petitioner's favor establishing that Petitioner's appointed counsel deprived

27   this Petitioner's Due Process guarantees by NOT submitting relevant motions

28   as prescibed, in response to the witness, Warren A. Woodberry's intentional

1   failure to produce the surveillance video recorded on 01/04/2007 at the Wal-

2   Mart Stores, Inc. facility described, AS SUBPOENAED. Failure to submit the

3   appropriate motions with respects to this matter denied this Petitioner the

4   opportunity to present critical evidence that may have established a

5   prrof of innocense in this Petitioner's behalf.

6           The Petitioner requests this Court to render a decision in this

7   Petitioner's favor establishing the fact that based upon appointed counsel's

8   direct failure to address the failure to produce the subpoenaed surveillance

9   video from the evening of 01/04/2007, and the incident alleged, that this

10  Petitioner's decision to stipulate to the Plea Agreement presented, was in

11  fact under the guise of disloyalty from the appointed counsel and this

12  Petitioner was under the belief that apointed counsel was not adequately

13  and aggressively seeking a resolution in this Petitioner's favor throughout

14  counsel's representation. Therefore, this Petitioner did in fact receive

15  Ineffective Assistance of Counsel with regards to the representation

16  received by appointed counsel at the Preliminary Hearing, and his failure to

17  submit the appropriate motions by the Motions cut-off date prescribed.

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

1        S T A T E M E N T    O F    T H E    C A S E

2

3              On January 4, 2007, Petitioner was approached outside of the

4        Wal-Mart Stores, Inc. facility located at 3405 Marron Way in the city of

5        Oceanside, California 92054, by the Loss Prevention/Asset Protection Agent,

6        WARREN A. WOODBERRY. At the time Warren A. Woodberry approached the Petition-

7        er, Warren A. Woodberry inquired if this Petitioner had exited the facility

8        described with any merchandise that he had not paid for. The Petitioner

9        attempted to inform Warren A. Woodberry that he had not, yet was informed

10       that Warren A. Woodberry had observed this Petitioner take a CD from the

11       facility described. Warren A. Woodberry informed this Petitioner that this

12       Petitioner had concealed the CD in question in his "INTERIOR" left breast

13       jacket pocket. The Petitioner proceeded to remove a CD from his "EXTERIOR"

14       left breast jacket pocket, and informed Warren A. Woodberry that the CD

15       produced was the Petitioner's and that the Petitioner had entered the facili-

16       ty with the CD already on his person. Warren A. Woodberry then proceeded

17       to assault this Petitioner and force this Petitioner back into the facility.

18             Oceanside Police were subsequently called and at the time,

19       Warren A. Woodberry informed the Oceanside Police Officer, J. Romano, that

20       the Petitioner had become irate and attempted to assault Warren A. Woodberry,

21       becoming physically combative [as described by Warren A. Woodberry within

22       the Oceanside Police Department Officer's Narrative Report, Exhibit "C"].

23       Warren A. Woodberry alleged that this Petitioner when approached, attempted

24       to hit Woodberry in the face with a closed right fist. Woodberry was able

25       to avoid the punch and managed to grab hold of this Petitioner's arms. This

26       Petitioner managed to free his right arm, and AGAIN raised a closed fist

27       towards Warren A. Woodberry's face, attempting to strike Warren A. Woodberry.

28       Based on the statement and information provided by Warren A. Woodberry to

1  Oceanside Police Officer J. Romano, this Petitioner was arrested and placed

2  in custody for violation of Penal Code Section §211, a Robbery.

3                During the testimony of Warren A. Woodberry at the Preliminary

4  Hearing scheduled for 01/23/2007, Warren A. Woodberry contradicted his

5  initial statements and information whih he had given to the Oceanside Police

6  Officer, J. Romano, on the evening of 01/04/2007, and declared that this

7  Petitioner had not only NOT attempted to strike him in his face on the two

8  (02) occasions previously alleged, but that at no time during the struggle

9  and/or confrontation between Warren A. Woodberry and this Petitioner, did

10  this Petitioner EVER attempt to strike Warren A. Woodberry in any fashion

11  that would be considered as assaultive and/or combative.

12                On the evening of 01/04/2007, Warren A. Woodberry had initially

13  made a declaration to Oceanside Police Officer J. Romano, that Warren A.

14  Woodberry had observed this Petitioner "WHILE VIEWING THE INITIAL THEFT ON

15  SURVEILLANCE VIDEO". During the testimony presented by Warren A. Woodberry

16  at the Preliminary Hearing on 01/23/2007, Warren A. Woodberry stated that

17  he did not in fact state this information to Oceanside Police Officer J.

18  Romano, but that Warren A. Woodberry had in fact observed the alleged theft

19  "personally".

20                On the evening of 01/04/2007, Oceanside Police Officer J. Romano

21  requested that Warren A. Woodberry replay the surveillance video that had

22  been recorded throughout the Wal-Mart Stores, Inc. facility described, yet

23  Warren A. Woodberry failed to replay the surveillance video captured. Warren

24  A. Woodberry was instructed to contact the Oceanside Police Department on

25  01/05/2007 and secure the surveillance video, presetning it to the Oceanside

26  Police Department on the following day. Warren A. Woodberry failed to

27  present the surveillance video captured on the evening of 01/04/2007 as

28  instructed. That specific video was NEVER seen again.

1       The surveillance video recorded/captured was subsequently sub-

2 poenaed by this Petitioner in order to establish this Petitioner's position

3 that no "theft" had in fact taken place within the Wal-Mart Stores, Inc.

4 facility described by this Petitioner on 01/04/2007. WARREN A. WOODBERRY

5 subsequently failed to produce the surveillance video recorded/captured on

6 01/04/2007 as subpoenaed, and merely testified at the Preliminary Hearing

7 on 01/23/2007 that he "did not have the video" when questioned in regards to

8 the surveillance videos whereabouts. Although the issue regarding a future

9 Order to Show Cause specifically addressing the intentional failure to produce

10 the surveillance video recorded/captured on the evening of 01/04/2007 WAS

11 TALKED ABOUT in this Petitioner's closing remarks at the Preliminary Hearing

12 on 01/23/2007 [See Exhibit "H", Pgs. 43-44 ], the actual Order to Show

13 Cause was "NEVER" constructed, produced, filed, nor addressed PRIOR to the

14 Motions cut-ff date scheduled. Therefore, the critical importance of the

15 surveillance video recorded/captured on the evening of 01/04/2007 was allowed

16 to die an unnatural death, depriving this Petitioner an extremely crucial

17 piece of evidence to establish this Petitioner's claim of innocence.

18       The arresting Oceanside Police Officer J. ROMANO, was present on

19 01/23/2007 at the Preliminary Hearing, designated as the Investigative

20 Officer by the prosecuting attorney, yet WAS NEVER called to the stand in

21 order to obtain testimony from him by either the prosecution nor this Peti-

22 tioner's appointed-counsel, again depriving this Petitioner of the available

23 opportunity to impeach the testimony presented by WARREN A. WOODBERRY prior,

24 in comparison to the statements and information which he had initially

25 given to Oceanside Police Officers on the evening of 01/04/2007, which did

26 in fact lead to the subsequent arrest of this Petitioner on 01/04/2007 for

27 the violation of Penal Code Section §211, the Robbery.

28       Within the closing statements of Petitioner's appointed-counsel

1   on 01/23/2007, it is apparent that counsel was "shopping a deal" for this

2   Petitioner, which this Petitioner had never advised appointed counsel to

3   attempt. In fact, initially this Petitioner was offered an opportunity to

4   stipulate to a Plea Agreement in which the District Attorney's office would

5   allow this Petitioner to enter a plea of "guilty" to robbery in the second

6   degree, and receive a term of imprisonment in the California Department of

7   Corrections and Rehabilitation of 3 years at 50%. This Petitioner refused

8   the offer and advised the appointed counsel that as there was no robbery,

9   and ultimately no "theft" committed by this Petitioner, that this Petitioner

10  would not accept any offer of "guilt" in exchange for a term of imprisonment.

11  It was not until during the readiness conference stage of this Petitioner's

12  proceedings that this Petitioner's faith in appointed counsel had been

13  completely distinguished, as appointed counsel had failed to present the

14  Order to Show Cause Motion against WARREN A. WOODBERRY's intentional failure

15  to produce the surveillance video recorded/captured on 01/04/2007 as

16  subpoenaed previously at the 01/23/2007 Preliminary Hearing, but that when

17  appointed counsel was talked to on the afternoon of 02/28/2007, counsel

18  advised this Petitioner that he would declare "ready" for trial at that time,

19  although this Petitioner was aware that appointed counsel had spoken to "NO"

20  witnesses, had failed to secure forensic testing on the evidence submitted

21  by WARREN A. WOODBERRY, as well as once advised that the District Attorney

22  had decided that had this Petitioner proceeded to trial, an amendment to the

23  original complaint would again be presented, asking the Court's to recognize

24  the case as a "3-strikes" case, in which this Petitioner would be facing a

25  potential 25 year-to-life term if found guilty of not only the initial

26  accusation of Penal Code Section §211, the Robbery, but that the District

27  Attorney would request that a 2nd Degree Burglary charge as well as a Petty

28  Theft with a Prior charge also be amended to the original complaint. When

1  this Petitioner asked the appointed counsel if he had "EVER" proceeded with

2  a "3-strikes" case, appointed counsel advised this Petitioner that he had not

3  done so. With this response, this Petitioner felt intimidated and believed

4  that there was in no way possible any chance that the appointed counsel

5  presently assigned to defend this Petitioner would put any more effort into

6  this Petitioenr's defense that had already been exhibited. Therefore, this

7  Petitioner believed whole heartedly that to accept the plea agreement of

8  the District Attorney to enter a plea of "guilty" to the violation of Penal

9  Code Section §484 with a prior offense under Penal Code §666, would be the

10  best choice at that time, with full intent to appeal the issues once the

11  opoortunity was presented. Therefore, on 2/28/2007, this Petitioner accepted

12  the plea agreement offered by the District Attorney, and since that time, has

13  been attempting to have the errors of the appointed counsel and the perjured

14  testimony regarding the statements and information of WARREN A. WOODBERRY

15  examined for the fabrications, embellishments and outright lies that they

16  have been established to be through not only the initial statements and

17  information given to the arresting Oceanside Police Officers on the evening

18  of 01/04/2007, which initiated the arrest for the violation of Penal Code

19  Section §211, the Robbery, but was subsequently contradictory testified to

20  by WARREN A. WOODBERRY himself at the Preliminary Hearing of 01/23/2007,

21  under oath.

22  //

23  //

24  //

25  //

26  //

27  //

28  //

1               S T A T E M E N T      O F      T H E      F A C T S

2

3           There is a subtle differance between "truth" and "fact". "FACT" is ob-

4    jectively real. "TRUTH" must conform to "fact". If one cannot find and distin-

5    guish the authenticity of the "facts", one can never establish the"truth". This

6    petitioner is out to present the truth. The facts have been manipulated, fabri-

7    cated, embellished and generally neglected by the complaintant and the prosecu-

8    tion, with inclusion of this petitioner's court-appointed counsel, who continu-

9    ously failed to perform as he was required, exhibited blatant incompetence with

10   regards to his attempts to establish and present a defense in this petitioner's

11   behalf, and essentially established ineffective assitance of counsel, denying

12   this petitioner the right(s) to expect the allegations against this petitioner

13   be defnded in an aggressive and adequate manner within the boundaries of the

14   law. The facts and the truths with regards to this matter presently before this

15   Court for review will show results that are incongruous and will establish argu-

16   able fairness when compared to the theoretical state of equal justice.

17   A. STATE PROCEEDING CHARGES OF JANUARY th, 2007:

18       (1) Wal-Mart Stores, Inc. Loss Prevention Apprehension Report (WMO-30)
             dated 01/04/2007; submitted by WARREN A. WOODBERRY [Exhibit "A"]
19

20         This document was initially submitted by WARREN A. WOODBERRY to the

21   Oceanside Police Officers initially responding for the call for assistance on

22   01/04/2007 at the Wal-Mart Stores, Inc. facility located at 3405 Marron Road

23   in the city of Oceanside, California 92054, a call initially made by WARREN

24   A. WOODBERRY with regards to a "shoplifting" incident which had occurred on

25   the evening of 01/04/2007, the suspect being this petitioner, DENNIS EVERETT

26   LACY. Page one (1) clearly states that the Oceanside Police Officer to

27   respond was C. WILSON. This fact is also cooberated by the document attached

28   Declaration and Determination (Probable Cause for Warrantless Arrest)

-11-

1  document [Exhibit "D"] submitted by Officer JUSTIN ROMANO, page 5 of 8,

2  which shows additional witnesses and/or other people associated with the

3  crime. Oceanside Police Officer C. WILSON is listed appropriately. It

4  should be noted for further reference that Assistant Manager MICHAEL STEWART

5  is "NOT" listed as an additional witness on this document, therefore estab-

6  lishing the inference that the name of MICHAEL STEWART was only added at a

7  later point in time by WARREN A. WOODBERRY in an attempt to assist him in

8  his alleged claim(s) against this petitioner. At no time does any documen-

9  tation submitted by Oceanside Police Officer JUSTIN ROMANO establish MICHAEL

10  STEWART as a witness declared by WARREN A. WOODBERRY, nor did MICHAEL

11  STEWART himself voluntarily approach any of the Oceanside Police Officers

12  responding to the initial call for assistance and declare himself as a

13  potential witness with regards to any aspect of the incident which took

14  place on the evening of 01/04/2007 at the Wal-Mart Stores, Inc. facility

15  described. Testimony within the Preliminary Hearing transcripts of the

16  testimony of WARREN A. WOODBERRY under oath on the afternoon of 01/23/2007,

17  [Exhibit "H"] page 25, line(s) 2 thru 28; page 26, line(s) 1 thru 28; and

18  page 27, line(s) 1 thru 15 all distinguish the fact(s) that MICHAEL STEWART

19  was somewhere within the facility, yet did not witness the incident as was

20  previously stated by WARREN A. WOODBERRY. WARREN A. WOODBERRY attempts to

21  claim that MICHAEL STEWART was in the AP room when the Oceanside Police

22  Officers arrived, yet there is no evidence to establish this as a fact. No

23  Oceanside Police Officers responding that evening submitted any documenta-

24  tion with regards to MICHAEL STEWART's pressence, therefore, it can be

25  logically inferred that this statement was in fact a false statement by

26  WARREN A. WOODBERRY and should this Court obtain the document that was

27  ultimately submitted by WARREN A. WOODBERRY in MICHAEL STEWART's behalf,

28  this Court will establish that the facts as stated within that document

1  itself do not depict information with regards to this matter that coincide

2  with any other evidence presented previously. Therefore, this document in

3  itself infers that the information was only discussed at a later time

4  between WARREN A. WOODBERRY and MICHAEL STEWART, and that MICHAEL STEWART

5  attempted to generate a statement of facts in order to support the claims

6  and allegations made by WARREN A. WOODBERRY against this petitioner, and

7  the subsequent misconduct and assaultive behavior with excessive force,

8  which WARREN A. WOODBERRY used against this petitoner on the evening of 01/

9  04/2007. The actions of MICHAEL STEWART and WARREN A. WOODBERRY are

10  questionable and jeopardize the credability of both parties with regards

11  to the statement(s) they make, the evidence submitted in order to support

12  those statements and the allegations made against this petitioner as real.

13       The handwritten statement of WARREN A. WOODBERRY within "Exhibit A"

14  claim that WARREN A. WOODBERRY observed a white male individual in the

15  Electronics Department, select a CD and begin to act suspiciously by looking

16  around. This statement is in contradiction to the statement that WARREN A.

17  WOODBERRY gave to the arresting Oceanside Police Officer at a later time,

18  [Exhibit "D"] whereas WARREN A. WOODBERRY informed Officer JUSTIN ROMANO

19  that he had witnessed the observation while he was watching the surveillance

20  video, a statement WARREN A. WOODBERRY also contradicted and denied during

21  the Preliminary Hearing in which WARREN A. WOODBERRY testified under oath

22  [Exhibit "H"], on page 21, line(s) 22 thru 25 that he "DID NOT" recall

23  telling Officer JUSTIN ROMANO that he had observed this petitioner while

24  he was watching the surveillance cameras.

25       WARREN A. WOODBERRY in his handwritten statement claims that once

26  he approached this petitioner and asked if there were any items on his

27  person that this petitioner had not paid for, this petitioner became irate.

28  At that time, WARREN A. WOODBERRY claims that this petitioner had to be

1   restrained. At no time during this handwritten statement does WARREN A.

2   WOODBERRY claim "WHY" this petitioner had to be physically restrained, yet

3   within Exhibit "D", Oceanside Police Officer JUSTIN ROMANO declares under

4   penalty of perjury that WARREN A. WOODBERRY advised him during the statement

5   obtained that evening that this petitioner became physically combative as

6   WARREN A. WOODBERRY was attempting to escort this petitioner back into the

7   facility, at which time this petitioner "tried to strike WOODBERRY in his

8   face with a closed right fist" on two (2) separate occassions. This allega-

9   tion was contradicted and recanted by WARREN A. WOODBERRY throughout the

10  Preliminary Hearing conducted on 01/23/2007 under oath [Exhibit"H"], in

11  which WARREN A. WOODBERRY stated on multiple occassions that this petitioner

12  did not in fact attempt to physically assault WARREN A. WOODBERRY, did not

13  attempt to strike, kick, punch and/or threaten WARREN A. WOODBERRY during

14  the incident of the evening of 01/04/2007, BUT that WARREN A. WOODBERRY had

15  himself initiated the altercation with this petitioner by grabbing this

16  petitioner's clothing as he "BELIEVED" this petitioner had "lunged" to his

17  right in an attempt to flee. WARREN A. WOODBERRY then claims within the

18  handwritten statement submitted to Oceanside Police Officer C. WILSON, that

19  MICHAEL STEWART had in fact witnessed the incident. This fact is false and

20  was subsequently proved as such within the testimony under oath obtained

21  by WARREN A. WOODBERRY as he testified within the confines of the Prelimi-

22  nary Hearing which occurred on 01/23/2007.

23          It should be noted that Oceanside Police Officer JUSTIN ROMANO was

24  not the initial responding officer to the scene that evening with regards

25  to the incident of 01/04/2007. Officer C. WILSON and T. RINGROSE were in

26  fact the initial Oceanside Police Officers to respond to the assistance call

27  and Oceanside Police Officer JUSTIN ROMANO arrived at a later time. WARREN

28  A. WOODBERRY had already given his initial statement to Oceanside Police

1  Officer C. WILSON and was not satisfied that Officer C. WILSON was in the

2  process of issuing this petitioner a written citation to appear at a later

3  date, and as such, embellished on his original statement, fabricating

4  additional information which WARREN A. WOODBERRY knew to be false, and

5  submitted that fabicated statement to Oceanside Police Officer JUSTIN

6  ROMANO, claiming the attempt(s) by this petitioner to strike WARREN A.

7  WOODBERRY in his face, therefore establishing the intent to use force and/

8  or fear by this petitioner against WARREN A. WOODBERRY, creating the

9  elements necessary to have this petitioner arrested for violation of Penal

10  Code §211, a Robbery, a criminal act that WARREN A. WOODBERRY was fully

11  aware this petitioner had not instigated. Evidence within the Exhibits

12  presented establish that this petitioner did not attempt to use force and/

13  or fear against WARREN A. WOODBERRY at any time throughout the incident

14  of 01/04/2007, testimony to this fact obtained throughout the Preliminary

15  Hearing itself of 01/23/2007, through direct and re-direct testimony

16  obtained directly from WARREN A. WOODBERRY and in direct contradiction to

17  statements he had previously declared to Oceanside Police Officer JUSTIN

18  ROMANO when WARREN A. WOODBERRY initiated the arrest against this petitioner

19  which resulted in this petitioner's subsequent incarcerated and commitment

20  to the State Prison.

21       During the entirety of the handwritten Statement of Facts [Exhibit

22  "A"], the exclusion of "FACTS" later presented are apparent. Excluded are

23  the allegation(s):

24       1)  Petitioner discarded CD Casing on shelf;

25       2)  Witness WOODBERRY retrieved CD Casing from shelf, and examined
26           it;

27       3)  Petitioner initiated "physically combative" behavior towards
             witness WOODBERRY attempting to strike WOODBERRY in his face
28           with a closed fist on two (2) separate occassions;

-15-

4) Petitioner(s) claim that CD in petitioner's possession was carried into the facility and was in fact the property of this petitioner prior and throughout this altercation between WARREN A. WOODBERRY and this petitioner;

5) Surveillance video had been recorded in reference to the entire incident;

6) WOODBERRY had used another CD which he himself had retrieved from the Electronics Department in order to generate the re-ceipt [Exhibit "B"] generated at 22:12:45 hours, AFTER THE FACILITY HAD BEEN CLOSED. As no plastic wrapping ("skin") had been identified as also being retrieved from the shelf area, nor had it been identified as discarded and/or in this peti-tioner's possession at the time of detainment, it is a question as to "where the plastic wrapping ("skin") from the outside of the CD Casing was and why was it necessary to produce ANOTHER CD in order to generate a receipt "AFTER THE FACT".

(2) OceansidePolice Department - Officer's Report Narrative (Case #07000341) dated 01/05/2007; submitted by Oceanside Police Officer JUSTIN ROMANO [Exhibit "C"];
(3) Declaration and Determination (Probable Cause for Warrantless Arrest) dated 01/04/2007; submitted by Oceanside Police Officer JUSTIN ROMANO [Exhibit "D"]

These two (2) documents were generated by way of statements and information obtained through the direct interview with WARREN A. WOODBERRY, in which Oceanside Police Officer JUSTIN ROMANO attested to under penalty of perjury, which he believed as was interpretted to him by WARREAN A. WOODBERRY with respects to the facts of the incident of 01/04/2007 to be true and correct, therefore establishing the Probable Cause elements required in order to place this petitioner under arrest for the violation of Penal Code §211, the Robbery.

Exhibit "C" states in regards to Oceanside Police Officer JUSTIN ROMANO's Observations and Actions that upon arriving to the Wal-Mart facil-ity , he was contacted by the Asset Protection Associate WARREN A. WOOD-BERRY. It should be noted that Oceanside Police Officer JUSTIN ROMANO did in fact arrived at approximately 2200 hours, a full estimated ten (10)

1   minutes following the arrival of Oceanside Police Officers C. WILSON and

2   T. RINGROSE, who are listed as arriving at 2150 hours [exhibit "A"] by

3   WARREN A. WOODBERRY. It should be noted that the two (2) Oceanside Police

4   Officers who initially responded to the call from WARREN A. WOODBERRY for

5   assistance, were located in the Asset Protection Office with this petitioner

6   as WARREN A. WOODBERRY was outside the office area alone, for reasons

7   specifically unknown.

8        Oceanside Police Officer states that WOODBERRY had informed him

9   that he had this petitioner "DETAINED IN THE LOSS PREVENTION ROOM", there-

10  fore establishing this petitioner claim that WOODBERRY was outside of the

11  office area for unknown reasons. It was during this time this petitioner

12  contends that Oceanside Police Officer C. WILSON was in the process of

13  issuing a written citation for this petitioner to appear at a later time,

14  and that WOODBERRY had become upset at the intent to cite and release by

15  Oceanside Police Officer C. WILSON, therefore, WOODBERRY fabricated and

16  embellished his previous statement, adding false information in order to

17  have this petitioner falsely arrested for the alleged violation of Penal

18  Code §211, the Robbery.

19       WOODBERRY stated to Oceanside Police Officer JUSTIN ROMANO, that

20  WOODBERRY had observed this petitioner take a CD off a shelf, open the CD

21  case, take the disc out of the case, and place the disc into this peti-

22  tioner's "left breast jacket pocket". This petitioner then exited the store

23  without paying for the CD. AS WOODBERRY CONFRONTED THIS PETITIONER, THIS

24  PETITIONER BECAME IRATE AND ATTEMPTED TO ASSAULT WOODBERRY.

25       Oceanside Police Officer JUSTIN ROMANO states that WOODBERRY had

26  provided him with a written statement DETAILING the incidentinvolving this

27  petitioner, and WOODBERRY's information and a verbal statement necessary

28  for the report were also obtained. Oceanside Police Officer JUSTIN ROMANO

1  attempted to have WOODBERRY play back the surveillance video that captured

2  the incident that evening, but states that WOODBERRY was unable to play

3  back the surveillance video as requested. Oceanside Police Officer JUSTIN

4  ROMANO provided WOODBERRY with a case number at that time and instructed

5  WOODBERRY to contact the Oceanside Police Department once the surveillance

6  video was accessible. WOODBERRY failed to comply with the instructions as

7  ordered by Oceanside Police Officer JUSTIN ROMANO and never produced the

8  surveillance video captured on the evening of 01/04/2007 to either the

9  Oceanside Police Department and/or the Court as subpoenaed by the defense.

10  The STATEMENTS section of Exhibit "C" refers to the information as

11  it was received by WOODBERRY to Oceanside Police Officer JUSTIN ROMANO on

12  the evening of 01/04/2007 as follows:

13  "...WOODBERRY stated on 01/04/2007 at approximately 2125 hours, he
observed LACY in the Electronics Department take a Rascal Flats CD

14  off the shelf and begin to look around to see if anyone was watching
him, waiting for the aisle to clear.

15

16  WOODBERRY followed LACY to the Automotive Department where he ob-
served LACY remove a set of keys from his right side pants pocket,
and use the keys to remove the CD packaging, open the CD and place

17  the CD into his left breast jacket pocket.

18  LACY continued on to the Hardware Department where he picked up
three (3) cans of spray paint and proceeded to the check out regis-

19  ter. LACY purchased the three (3) cans of spray paint and a can of
cinnamon rolls, but DID NOT PAY for the CD.

20

21  Once LACY exited the store, WOODBERRY confronted LACY about the CD,
asking LACY to bring the CD back into the store. LACY stated he

22  was not going back into the store and as WOODBERRY approached LACY,
LACY BECAME IRATE AND PHYSICALLY COMBATIVE, ATTEMPTING TO HIT

23  WOODBERRY IN THE FACE WITH A CLOSED RIGHT FIST. WOODBERRY was able
to avoid the punch and grab ahold of LACY's arms. LACY pulled his

24  arm free and again raised his right arm up in a fist towards WOOD-
BERRY's face and ATTEMPTED TO STRIKE WOODBERRY AGAIN.

25  LACY missed WOODBERRY and WOODBERRY got a hold of LACY and pulled
LACY towards him. As WOODBERRY was escorting LACY back into the

26  store, LACY and WOODBERRY tripped over each other and fell to the
ground. WOODBERRY was able to regained control of LACY and detain

27  him in the Loss Prevention Room..."

28

-18-

1       The STATEMENTS of Exhibit "C" and Exhibit "D" refer to the infor-

2   mation as it was received by WOODBERRY to Ocenaside Police Officer JUSTIN

3   ROMANO on the evening of 01/04/2007. The information and/or statement(s)

4   are somewhat confusing in nature, this petitioner directing this Court to

5   address specific attention to the information within Exhibit "D" which

6   states in part:

> "...WOODBERRY informed Oceanside Police Officer that he was WATCHING
> THE SURVEILLANCE CAMERAS and observed LACY in the Electronics De-
> partment and pick up a CD off of the shelf. LACY then began looking
> around waiting for the aisle to clear. WOODBERRY followed LACY
> to the Automotive Department where LACY took out a set of keys from
> his pocket and used the keys to open the CD packaging, took the CD
> out of the case, and placed the CD into the left breast pocket of
> his jacket. LACY went to the check out register and purchased three
> cans of spray paid and a can of cinnamon rolls. LACY did not pay
> for the CD.
>
> LACY exited the store and was approached by WOODBERRY. WOODBERRY
> asked LACY if he had any items on his person that he forgot to
> purchase. LACY BECAME IRATE WITH WOODBERRY. AS WOODBERRY BEGAN TO
> ESCORT LACY BACK INTO THE STORE, LACY BECAME PHYSICALLY COMBATIVE
> WITH WOODBERRY. Lacy tried to strike WOODBERRY in his face with
> his right closed fist. WOODBERRY was able to avoid LACY's punch
> and was able to get a hold of LACY's arms. LACY was able to pull
> his right arm free and raised his right arm up in a closed fist and
> tried to strike WOODBERRY in his face. LACY missed and WOODBERRY
> pulled LACY towards him. LACY and WOODBERRY tripped over each
> other and fell to the ground. WOODBERRY was able to gain control of
> LACY and detained him in the Loss Prevention Room".

20      If the information within the Exhibit "D" is true and correct as

21  that initially obtained from WOODBERRY by Oceanside Police Officer JUSTIN

22  ROMANO with regards to the incident as it occurred on the evening of

23  01/04/2007, then  WOODBERRY's version of the incident at the Preliminary

24  Hearing conducted on 01/23/2007 [Exhibit "H"] and the testimony which

25  WOODBERRY subsequently testified to under oath at that hearing, was in fact

26  perjured. This petitoner claims that all along, the actions of WOODBERRY

27  were considered as assaultive, excessive and borderline unlawful. Although

28  this petitioner may have become irate at WOODBERRY for being accused of

1   "theft", this petitioner never exibited physically combative behavior

2   towards WOODBERRY, nor did this petitioner ever attempt to physically

3   assault WOODBERRY in any form and/or fashion. This petitioner was attempt-

4   ing to establish the fact that the CD in this petitioner's front EXTERIOR

5   left breast pocket was in fact this petitioner's and in the possession of

6   this petitioner when he initially entered the facility earlier that evening.

7   This petitioner had a right to become irate as the information that he was

8   attempting to disclose to WOODBERRY was being neglected and unheard. WOOD-

9   BERRY advised Oceanside Police Officer JUSTIN ROMANO that it wasn't until

10   WOODBERRY was attempting to escort this petitioner back into the facility,

11   that the petitioner became physically assaultive. Yet within the testimony

12   of the Preliminary Hearing on 01/23/2007, WOODBERRY testified under oath

13   that not only did this petitioner NOT attempt to physically assault him as

14   WOODBERRY had previously declared, but that WOODBERRY's behavior and use

15   of excessively violent force against this petitioner was based on the

16   "belief" on WOODBERRY's part that this petitioner had "lunged" to the right

17   in what WOODBERRY believed was an attempt to flee. It is apparent and clear

18   that at no time did this petitioner EVER ATTEMPT TO STRIKE WOODBERRY IN HIS

19   FACE WITH A CLOSED RIGHT FIST, as WOODBERRY has stated occurred when he

20   first was interviewed by Oceanside Police Officer JUSTIN ROMANO on the

21   evening of 01/04/2007. The description of the event within Exhibits "C"

22   and "D" are detailed and documented with significant attention being paid

23   to the facts as they were received by Oceanside Police Officer JUSTIN

24   ROMANO by WOODBERRY on the evening of 01/04/2007. If the information with

25   regards to Exhibits "C" and "D" are to be believed, then WOODBERRY perjured

26   himself in his testimony of 01/23/2007 under oath with regards to the

27   Preliminary Hearing conducted on that date. If the testimony of WOODBERRY

28   at the Preliminary Hearing of 01/23/2007 is to be believed, then in fact

1   WOODBERRY's statement on 01/04/2007 to Oceanside Police Officer JUSTIN

2   ROMANO was in fact perjured and the arrest of this petitioner on the

3   allegations to violating Penal Code §211, Robbery, were in fact unsubstan-

4   tiated and unwarranted. The issues in conflict with regards to the state-

5   ments, information and allegations of WARREN A. WOODBERRY are important

6   issues relevant to the subsequent bind-over matter of 01/23/2007 and this

7   petitioner's subsequent incarceration in the California Department of

8   Corrections and Rehabilitation for the term of imprisonment which this

9   petitioner was subsequently sentenced to serve. The intentions of WOODBERRY

10  in giving one statement to Oceanside Police Officer C. WILSON at one point

11  and then subsequently fabricating and embellishing on that statement to

12  Oceanside Police Officer JUSTIN ROMANO at a later point are suspicious and

13  deserving of consideration with regards to the outcome of what WOODBERRY

14  set in motion. It was the responsibility and obligation of Oceanside Police

15  Officer JUSTIN ROMANO to secure the ·evidence which was the nucleus of the

16  matter before this Court at the time Oceanside Police Officer JUSTIN ROMANO

17  believed that Probable Cause existed in order to arrest this petitioner at

18  that time for the violation of Penal Code §211, the Robbery. It is unclear

19  to this petitioner why Oceanside Police Officer JUSTIN ROMANO would enter

20  this petitioner's keys into evidence at the Oceanside Police Department

21  pertaining to this matter, but fail to secure the Compact Disc in question,

22  the Compact Disc casing and or the surveillance video captured that evening

23  with regards to the incident which was alleged to have taken place by

24  WOODBERRY. It was inappropriate for WOODBERRY to retain possession of the

25  most critical pieces of evidece with regards to guilt and/or innocence,

26  and it is beyond this petitioner's belief that the submittal of the items

27  as evidence WITHOUT appropriate "CHAIN OF CUSTODY" documentation with re-

28  gards to the origin and authenticity of the items submitted as evidence

-21-

1  by WOODBERRY was (1) acceptable to the Court, and (2) not addressed with

2  regards to importance by this petitioner's appointed counsel at any point

3  when the opportunity was available. These matters and issues are those

4  which this petitioner now lays before this Court in order to address. There

5  are many significant issues with regards to this matter that were excluded

6  with regards to this petitioner's claim of innocence and ultimately not

7  addressed as they should have been had appointed counsel been truly out to

8  represent this petitioner to the best of his ability. Testimony of WOODBERRY

9  completely contradicted the original statement(s) and information which

10  he declared to Oceanside Police Officer JUSTIN ROMANO on the evening of

11  01/04/2007 in order to establish the arrest of this petitioner that evening

12  for the allegation of Robbery as set forth in Penal Code §211.

13      (4) Superior Court of California, County of San Diego, North County
            Division Felony Complaint dated 01/09/2007 [Exhibit "G"]
14

15          This document was generated by the San Diego County District Attor-

16  ney's Office, dated 01/09/2007 and presented before the Court, alleging the

17  sole violation of Penal Code §211, established as follows:

18          "The undersigned, certifying upon information and belief, complains
            that in the County of San Diego, State of California, the Defendant(s)
19          did commit the following crime(s):

20          COUNT 1 - ROBBERY

21          On or about January 4, 2007, DENNIS EVERETT LACY did unlawfully and
            by "MEANS OF FORCE AND FEAR" take personal proerty from the person,
22          possession and immediate presence of WARREN WOODBERRY, in violation
            of PENAL CODE SECTION §211.
23

24          Within the testimony of the Preliminary Hearing conducted on 01/23/

25  2007,the prosecuting attorney, ROBERT AUGST, was conscious of the informa-

26  tion, statement(s) and/or declaration(s) received previous in order to

27  establish the criminal element(s) of the allegations against this peti-

28  tioner for the violation of Penal Code §211, Robbery. As the Preliminary

--22--

1   Hearing progressed, the prosecutor on multiple occassions attempted to

2   extract testimony from the witness, WARREN A. WOODBERRY, that at some point

3   during the physical portion of the incident of 01/04/2007, this petitioner

4   displayed the element(s) of force and/or physical violence towards WOOD-

5   BERRY, establishing the required element(s) of fear, in order to justify

6   that the essential element(s) of FORCE and/or FEAR were present and required

7   to sufficiently create the judgment factors that a bind-over to the Superior

8   Court for the violation as charged of the Penal Code §211, Robbery. This

9   petitioner submits   eight (8) direct occassions by the prosecutor in which

10   the witness, WARREN A. WOODBERRY, was questioned with regards to any force

11   and/or violence used by this petitioner towards WOODBERRY, and on all

12   eight direct questions, the responses of the witness, WARREN A. WOODBERRY

13   were to the benefit of this petitioner. Defense counsel inquired an addi-

14   tional five (5) times, questioning the witness, WARREN A. WOODBERRY

15   regarding any force and/or fear used by this petitoner towards WOODBERRY

16   during the incident on 01/04/2007, including the direct questioning

17   inquiring if this petitioner had ever attempted to strike WOODBERRY in his

18   face with a closed right fist, and the responses to the additional five

19   inquiries were also to the benefit of this petitioner, including a direct

20   responses extracted from WOODBERRY that this petitioner had NOT attempted

21   to strike WOODBERRY in his face with a closed right fist, as had been

22   previously declared to Oceanside Police Officer JUSTIN ROMANO on the evening

23   of 01/04/2007.Within the testimony of WOODBERRY during the Preliminary

24   Hearing, testifying under oath on 01/23/2007, it was "NEVER" established

25   that this petitioner had violated any of the elements indicated and

26   required within Exhibit "G", which would have substantiated a preponderance

27   of guilt in order to assert that this petitioner had violated Penal Code

28   §211, and committed the act of Robbery against the witness, WARREN A.

-23-

1   WOODBERRY. Therefore, it was never established that a bind-over to be tried

2   within the Superior Court was justified under the violation of Penal Code

3   §211, Robbery.

4   **B. PRELIMINARY HEARING TESTIMONY OF JANUARY 23, 2007:**

5       (1) Superior Court of California, County of San Diego, North County
            Judicial District Reporter's Transcripts of Preliminary Hearing

6           (Case #SCN223021) dated Tuesday, January 23, 2007 [Exhibit "H"]

7           This transcript was generated based on the testimony of the Prelimi-

8   nary Hearing conducted on 01/23/2007 with regards to this petitioner DENNIS

9   EVERETT LACY, in order to establish evidence existed in order for this

10  petitioner to appear with the Superior Court with respects to violation of

11  Penal Code §211, a Robbery.

12          If read thoroughly and in its entirety in comparison to the Wal-Mart

13  Stores, Inc. Loss Prevention Apprehension Report dated 01/04/2007 and

14  submitted by WARREN A. WOODBERRY [Exhibit "A"], the Oceanside Police De-

15  partment - Officer's Report Narrative (Case #07000341) dated 01/05/2007

16  [Exhibit "C"] and the Declaration and Determination (Probable Cause for

17  Warrantless Arrest) dated 01/04/2007 [Exhibit "D"] documents submitted by

18  Oceanside Police Officer JUSTIN ROMANO with regards to the incident as

19  it was reported, described and subsequently declared by WARREN A. WOODBERRY

20  on 01/04/2007, this Court will clearly note that there are continuous

21  embellishments to information, statement(s), declaration(s) previously

22  made by WARREN A. WOODBERRY, in additional to multiple points of testimony

23  where information "NEVER" established in the past, became to light. As this

24  Court reviews the testimony of WARREN A. WOODBERRY at the Preliminary

25  Hearing of 01/23/2007, at which time WARREN A. WOODBERRY was under oath, the

26  Court will establish that the testimony of WARREN A. WOODBERRY recants and

27  contradicts the information, statement(s) and declaration(s) which WARREN

28  A. WOODBERRY claims to have taken placed on the evening of 01/04/2007.

1    Specific factors with regards to WARREN A. WOODBERRY's testimony on

2    01/23/2007, are those related to the position/location of the pocket in

3    which this petitioner had attempted to conceal the CD which WARREN A. WOOD-

4    BERRY alleges this petitioner attempted to steal from the Wal-Mart Stores,

5    Inc. facility. WARREN A. WOODBERRY states that he in fact observed this

6    petitioner place the concealed CD in this petitioner's "LEFT INTERIOR

7    BREAST JACKET POCKET". WOODBERRY is quite distinct as to the location of

8    concealment, states throughout his testimony that he followed this peti-

9    tioner throughout the facility, having this petitioner under observation

10    100% of the time, nevr granting this petitioner an opportunity to change

11    the location of the CD WOODBERRY claims he observed this petitioner steal,

12    and yet WOODBERRY himself testifies that this petitioner, once approached

13    outside of the facility, produced the CD from this petitioner's "LEFT

14    EXTERIOR BREAST JACKET POCKET" and proceed to claim that the CD in this

15    petitioner's possession at that time was in fact this petitioner's property,

16    and was in this petitioner's possession when this petitioner initially

17    entered the facility.

18    Also noteworthy is the fact that WOODBERRY claims to have observed

19    this petitioner 100% of the time as this petitioner moved throughout the

20    facility, claiming the observation was "LIVE OBSERVATION" and not that by

21    viewing this petitioner on surveillance video camera as previously described

22    and declared to Oceanside Police Officer JUSTIN ROMANO on 01/04/2007. WOOD-

23    BERRY claims to have observed this petitioner at one point in the Automo-

24    tive section, open the CD casing with his keys, extract the CD from the

25    casing, conceal the CD on petitioner's person, and discard the CD casing

26    on the shelf area. WOODBERRY claims to have observed this , and yet testi-

27    fies at one point that at no time did WOODBERRY ever lose visual contact of

28    this petitioner, "not even around an endcap of one of the display shelves",

-25-

1   to which WOODBERRY testified "No, sir".[Exhibit "H", Page 22, Lines 5-9].

2   Yet WOODBERRY testified earlier [Exhibit "H", Page 5, Lines 26-28 and Page 6,

3   Lines 1-9] that in order to obtain the CD casing which WOODBERRY claims to

4   have had in his possession when WOODBERRY approached this petitioner outside

5   of the facility, WOODBERRY "went around the aisle and picked it up." WOOD-

6   BERRY continues to testify that at that time, he stopped, retrieved the

7   CD casing, inspected the CD casing, noticed the CD casing was empty, the

8   ENTIRE TIME KEEPING 100% VISUAL SURVEILLANCE on this petitioner as this

9   petitioner continued to travel throughout the facility. It should also be

10  noted by this Court, that if the CD casing WOODBERRY claims to have in  his

11  possession outside of the facility when WOODBERRY approached this petition-

12  er was in fact obtained from within the facility prior to the altercation

13  with this petitioner, which was described at one point as "violent", then

14  attention should be granted to the CD casing which WOODBERRY attempted to

15  submit to the Court as evidence, claiming it as the one WOODBERRY retrieved

16  prior to the altercation, because during the altercation itself, according

17  to WOODBERRY's own testimony, WOODBERRY would have had to drop the CD casing

18  in order to physically restrain this petitioner in the manner WOODBERRY

19  describes. Yet the CD casing that WOODBERRY attempted to submit to the

20  Court as an original CD casing which WOODBERRY had retrieved from the shelf

21  area once discarded by this petitioner, was in pristine fashion, void of

22  chips, cracks and/or breakage. This COULD NOT have occurred if the CD casing

23  had in fact been dropped forcably during the time frame of the altercation

24  with this petitioner. Any reasonable human being who owns CD's knows full

25  well, that if you drop a CD casing on to a cement surface, the CD casing

26  will undergo damage (i.e. chips, cracks, scratches, breakage, etc). This is

27  not the case with the CD casing submitted by WOODBERRY, causing great

28  suspicion that the CD casing evidence was tampered with and/or manufactured

-26-

1  by WOODBERRY in order to substantiate his allegations against this petition-

2  er with regards to the "theft" portion of the incident which would have

3  initiated cause for WOODBERRY to assault this petitioner with excessive

4  force as WOODBERRRY did. It has always been this petitioner's claim that

5  the CD in this petitioner's possession was the property of this petitioner,

6  and was in the possession of this petitioner, in his exterior left breast

7  jacket pocket, prior to entering the facility on the evening of 01/04/2007.

8  It is the belief of this petitioner that WOODBERRY was in fact watching the

9  surveillance video cameras from an undisclosed area, when WOODBERRY observed

10 the compact disc in this petitioner's pocket and assumed that this peti-

11 tioner had taken the CD from the facility, a rush to judgment against this

12 petitioner. When approached outside of the facility by WOODBERRY, this

13 petitioner attempted to advise WOODBERRY that the CD in this petitioner's

14 possession was in fact this petitioner's property and that the CD casing

15 with regards to that specific CD was in this petitioner's vehicle, which

16 was in fact parked in the Wal-Mart Stores, Inc. parking facility, DIRECTLY

17 TO THE RIGHT OF THE AREA IN WHICH WOODBERRY APPROACHED THIS PETITIONER [See

18 Exhibit "F", San Diego County Sheriff's Department Booking Intake/ Per-

19 sonal Property Inventory (Case #07000341) dated 01/05/2007; submitted by

20 Oceanside Police Officer JUSTIN ROMANO, under ARREST INFORMATION, Vehicle

21 Location:] where it clearly states according to Oceanside Police Officer

22 JUSTIN ROMANO That this petitioner's vehicle was LEFT AT THE SCENE. The

23 petitioner's vehicle existed. And at one point, appointed counsel and

24 investigators retrieved a CD casing from that vehicle corresponding to the

25 CD which this petitioner had in his possession when entering and exiting

26 the Wal-Mart Stores, Inc. facility and being approached by WOODBERRY,

27 alleging that this petitioner had committed "theft" with regards to the CD

28 in his possession. When WOODBERRY approached this petitioner and inquired

-27-

1  with regards to the CD in this petitioner's possession, this petitioner did

2  advise WOODBERRY that the CD in this petitioner's possession was this peti-

3  tioner's property and was in this petitioner's possession when this peti-

4  tioner etered the facility. WOODBERRY continued to state that this petition-

5  had stolen the CD from the store and wanted this petitioner to return to

6  the store. As this petitioner did not believe that he had stolen any items

7  from the Wal-Mart Stores, Inc. facility in question, this petitioner did

8  not believe he was "REQUIRED" to return to the store, attempted to advise

9  WOODBERRY of this, and attempted to have WOODBERRY follow this petitioner

10  to his vehicle in order to obtain the CD casing for the CD in this petition-

11  er's possession, at which time WOODBERRY initiated the assaultive behavior

12  against this petitioner, using excessive force and restraining this

13  petitioner against his will. Throughout the altercation, this petitioner

14  attempted to advise WOODBERRY that the CD was in fact this petitioner's,

15  information WOODBERRY states this petitioner was in fact verbally stating,

16  yet not understood by WOODBERRY as WOODBERRY was caught up in the act of

17  restraining this petitioner, and in his rush to judgment, did not WANT to

18  be proved wrong. At no time during the altercation with WOODBERRY did this

19  petitioner attempt to cause WOODBERRY any physical harm. This petitioner

20  only attempted to use the reasonable actions that any human being would use

21  in attempting to stop another from assaulting them against their will.

22  WOODBERRY himself testifies within the transcripts of the Preliminary Hearing

23  that this petitioner's action were generally towards the air and actions

24  that establish that this petitioner was under the belief that this petition-

25  er was being assault for no cause and was attempting to cease the assault

26  initiated by WOODBERRY.

27          Within Exhibit "H", Page 10, Lines 1-8, WOODBERRY states that this

28  petitioner did not strike WOODBERRY with any of this petitioner's swinging

--28--

1  elbows, nor did any of this petitioner's swinging elbows appear to be at-

2  tempted blows towards WOODBERRY. Page 11, Lines 2-4, WOODBERRY testifies

3  that the petitioner did not at any point, actually strike WOODBERRY with

4  either a punch, kick or elbow. Pages 12-13, Line26-28 and 1-3, WOODBERRY

5  testifies that this petitioner did not strike WOODBERRY with any blows to

6  WOODBERRY's body at any point during the whole incident. Page 13, Lines

7  24-24, WOODBERRY testifies that this petitioner was not threatening WOOD-

8  BERRY with physical harm or anything like that. Page 18, Line 0-14, WOODBERRY

9  testifies that in the Asset Protection Office, this petitioner did not at

10  any point, make any type of gestures of physical gestures towards WOODBERRY.

11  Page 18-19, Lines 25-28 and 1-5, WOODBERRY states that during the course

12  of the entire incident, none of this petitioner's arm swings or arm flails,

13  as WOODBERRY himself had described them, appeared to be aimed directly at

14  WOODBERRY and/or his person. None of this petitioner's kicks and/or leg

15  flailings were directed towards WOODBERRY and/or WOODBERRY's body.

16      Within the testimony under Cross-Examination by defense counsel,

17  testimony was extracted to establish that additional information that this

18  petitioner HAD NOT participated in the altercation with any attempt to

19  cause physical harm and/or bodily injury to WOODBERRY and that petitioner's

20  actions were defensive in nature and intended to protect this petitioner

21  from injury and NOT with the intent to be construed as offensive by WOOD-

22  BERRY.

23      Defense counsel extracted within the testimony of WARREN A. WOOD-

24  BERRY during Cross-Examination at the Preliminary Hearing conducted on

25  01/23/2007 that [Exhibit "H"] Page 30, 27-28, WOODBERRY testified that when

26  this petitioner produced the CD from petitioner's left EXTERIOR breast

27  jacket pocket, this petitioner NEVER tried to swing on WOODBERRY outside on

28  the sidewalk area where WOODBERRY first approached this petitioner. Page 31,

1  Lines 1-3, WOODBERRY testified that this petitioner NEVER tried to swing

2  this petitioner's fist at WOODBERRY's face. Page 31-32, Lines 26-28 and

3  Lines 1-3, WOODBERRY testified that when this petitioner's jacket and

4  sweatshirt eventually came off based on the amount of force WOODBERRY was

5  using against this petitioner, up until that point, this petitioner HAD NOT

6  tried to take a swing at WOODBERRY. Throughout the altercation, this peti-

7  tioner was continuing to say "It's my CD...It's my CD." Page 34, Line 18-20,

8  WOODBERRY testifies that prior to WOODBERRY grabbing this petitioner's

9  shirt, this petitioner HAD NOT swung at WOODBERRY. Page 35, Lines 2-4,

10 WOODBERRY testified that there was no physical force applied by this

11 petitioner prior to WOODBERRY grabbing this petitioner's shirt.

12 **C. FAILURE TO PRODUCE SURVEILLANCE VIDEO AS SUBPOENAED:**

13      Within the Preliminary Transcripts generated on 01/23/2007 based on

14 the testimony of WARREN A. WOODBERRY against this petitioner in direct

15 relation to the allegation(s) this petitioner violated Penal Code §211,

16 in that this petitioner commited the act of Robbery against WARREN A.

17 WOODBERRY on the evening of 01/04/2007, WOODBERRY was issued a Subpoena

18 Duces Tecum with direct regards and requesting that WOODBERRY produce the

19 surveillance video captured by surveillance cameras within the Wal-Mart

20 Stores, Inc. facility on 01/04/2007, to include all of the interior of

21 the store during the time period that this petitioner was inside the

22 facility and whatever surveillance video was available from the outside

23 area. Exhibit "H", Page 43, Lines 27-28 clearly state that defense counsel

24 was aware that the surveillance video requested was not what WOODBERRY

25 produced and submitted on 01/23/2007.

26      With regards to direct Cross-Examination addressing the issue of the

27 surveillance video subpoenaed, Page 32-33, Lines 14-28 and 1-7, defense

28 counsel inquired as to the video that WOODBERRY attempted to play back on

--30--

1  the evening of 01/04/2007, which WOODBERRY failed to perform. WOODBERRY

2  testified that he could not perform the play back function as the video

3  recorder itself was an old CC TV video recorder, and if one stopped the

4  recording portion, it would stop recording all the shots throughout the

5  facility. It should be noted that Oceanside Police Officer JUSTIN ROMANO

6  arrived at the scene at approximately 2200 hours as previously established.

7  Following Oceanside Police Officer JUSTIN ROMANO's interview of WOODBERRY,

8  Officer ROMANO requested that WOODBERRY play back the video captured of

9  the incident that SHOULD have been available for viewing at that time. Ex-

10  hibit "B" shows a Wal-Mart Stores, Inc. receipt generated by WOODBERRY on

11  the evening of 01/04/2007 at approximately 22:12:45 hours, twelve minutes

12  AFTER the facility had closed. There was no breach of security with regards

13  to WOODBERRY rewinding the captured video of that evening for Oceanside

14  Police Officer JUSTIN ROMANO due to the recorder potentially stopping any

15  further recording, as the facility was CLOSED and there was no one except

16  employees, Oceanside Police Officers and this petitioner within the facility

17  at that time. For Oceanside Police Officer JUSTIN ROMANO to leave the

18  scene where an allegation of a violation to Penal Code §211, a Robbery had

19  occureed, leaving behind a surveillance video which may have established

20  guilt and/or innocence of the petitioner, was outrageous and neglectful on

21  its face.

22        During the testimony of WOODBERRY on 01/23/2007 [Exhibit "H", Lines

23  26-28], defense counsel inquired with regards to the availablility of shots

24  throughout the store in which this petitioner may have been captured. WOOD-

25  BERRY's response was indignant and contemptuous as he exclaimed [Exhibit "H",

26  Page 33, Lines 1-7] "Probably" as a response. WOODBERRY, in his position as

27  an Asset Protection Officer, was well aware how the video surveillance

28  recorder functioned, and the response was an attempt to make WOODBERRY look

1   as if he was somewhat non-intelligent to the facts with which defense coun-

2   sel was inquiring. Defense counsel inquired of WOODBERRY as to defenses

3   previous subpoena with regards to the surveillance video this petitioner

4   believed possessed evidence to establish this petitioner's innocence of a

5   "theft" as alleged by WOODBERRY, WOODBERRY was aware that a subpoena had in

6   fact been presented to him requesting the surveillance video, and WOODBERRY

7   simply responded "I don't have them." When asked why he did not bring the

8   surveillance video with him that afternoon, WOODBERRY responds was callous

9   and insinuated that WOODBERRY had in fact reviewed the surveillance video

10  at a later date and discovered evidence that was in fact beneficial to this

11  petitioner, and instead of producing the evidence and issuing an apology

12  for WOODBERRY's misconduct against this petitioner, it was more productive

13  for WOODBERRY to show contempt for the instructions of the subpoena and

14  clearly not bring the evidence subpoenaed as instructed. It should be

15  noted that Oceanside Police Officer JUSTIN ROMANO on the evening of 01/04/

16  2007, instructed WOODBERRY when WOODBERRY failed to replay the video as

17  requested, that WOODBERRY was to contact the Oceanside Police Department

18  when the surveillance video was accessible, instructions WOODBERRY con-

19  sciously and intentionally failed to regard.

20      The surveillance video subpoenaed by this petitioner was a critical

21  piece of evidence which this petitioner was aware contained evidence of this

22  petitioner (1) entering the Wal-Mart Stores, Inc. facility with the CD in

23  this petitioner's left exterior breast jacket pocket; (2) establishing

24  this petitioner traveling throughout the store WITHOUT WOODBERRY pursuing

25  this petitioner; (3) this petitioner not commiting the act of "theft" as

26  alleged by WOODBERRY; and WOODBERRY's perpensity to fabricate statement(s)

27  and information within WOODBERRY's initial declaration of facts to Ocean-

28  side Police Officer JUSTIN ROAMANO.

1    **D. INEFFECTIVE ASSISTANCE OF COURT APPOINTED COUNSEL:**

2          It is apparrent by virtue of the documentation presented and that

3    unavailable, to establish that at some point, defense counsel strictly

4    gave-up and gave-in, denying this petitioner the right to aggressive and

5    adequate counsel throughout the proceedings this petitioner faced. Within

6    the transcripts of the Preliminary Hearing itself [Exhibit "H"], Pages

7    42-43, Lines 28 and 1-4, the comments disclosed by defense counsel towards

8    the judge, in the pressence of this petitioner, led this petitioner to

9    believe beyond a reasonable doubt, that defense counsel was in the process

10   of "shopping a deal" and not in preparing and establishing an aggressive

11   and adequate defense in this petitioner's favor. Defense cousel states:

12           "...The reason I ask is I have a strong suspicion this case is
             going to settle for something a lot less than a robbery, based on
13           the testimony here today, and the SOONER WE CAN DO THAT AND GET
             MR. LACY ON HIS WAY, THE BETTER."
14

15   The reference to getting this petitioner on his way was inappropriate and

16   merely advised this petitioner that there was no possible way that the

17   evidence available was going to be brought forth and that defense counsel

18   merely wished to get on with his next case.

19          Defense counsel stated that he would in fact do an Order to Show

20   Cause "AT A LATER TIME" with respects to the witness WARREN A. WOODBERRY's

21   failure to produce and submit the surveillance video as subpoenaed, but this

22   never occurred. As a matter of fact, it was the defense counsel's responsi-

23   bility to establish, create, generate and submit the appropriate Motions

24   on February 15, 2007, the designated Motions cut-off date. Defense counsel

25   failed to submit "ANY" motions with regards to any of this issues presented

26   within the Preliminary Hearing, nor did the defense counsel up to that

27   point interview potential witness, fingerprint relevant evidence submitted,

28   nor obtain a defense for this petitioner, in violation of his duties.

1

## N E C E S S I T Y   F O R   R E V I E W

2      A grant of review and resolution of these issues by this Court

3  are necessary to secure uniformity of decision and to settle an important

4  question of law pursuant to Rule §29(a)(1), of the California Rules of

5  Court.

6  //

7  //

8  //

9  //

10  //

11  //

12  //

13  //

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

## ARGUMENTS AND POINTS OF AUTHORITIES

### A. HABEAS CORPUS IS THE CORRECT PROCEDURE TO PRESENT EVIDENCE DISCOVERED

Penal Code §1473 PERSONS AUTHORIZED TO PROSECUTE WRIT; FALSE EVIDENCE states:

(a) every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a Writ of Habeas Corpus to inquire into the Cause of such imprisonment or restrain;

(b) a Writ of Habeas Corpus may be prosecuted for, but not limited to, the following reasons:

(1) False evidence that is substantially material or probative on the issue of guilt or punishment was introduced against a person at ANY hearing or trial relating to his incarceration; or

(2) False physical evidence believed by a person to be factual, probative or material on the issue of guilt, which was known by the person at the time of entering a plea of guilty, which was a material factor directly related to the plea of guilty by the person.

(c) any allegation that the prosecution knew OR SHOULD HAVE KNOWN of the false nature of the evidence referred to in subdivision (b) is immaterial to the prosecution of a Writ of Habeas Corpus brought pursuant to subdivision (b);

(d) nothing in this section shall be construed as limiting the grounds for which a Writ of Habeas Corpus may be prosecuted or as precluding the use of any other remedies.

Penal Code §1487 DISCHARGE OF PERSON IN CUSTODY BY VIRTUE OF PROCESS; GROUNDS states:

GROUNDS OF DISCHARGE IN CERTAIN CASES. If it appears on the return of the Writ of Habeas Corpus that the prisoner is in custody by virtue of process from any Court of the State, or Judge, or Officer thereof, such prisoner may be discharged in any of the following cases, subject to the restrictions of the last section:

1. When the jurisdiction of such Court or Officer has been exceeded;

2. When the imprisonment was at first lawful, yet by some act, omission, or event which has taken place afterwards, the party has become entitled to the discharge;

3. When the process, is defective in some manner of substance required by law, rendering such process VOID;

4. When the process, though proper in form, has been issued in a case not allowed by law;

5. When the person having the custody of the prisoner is not the person allowed by law to detain him;

6. Where the process is not authorized by any order, judgment, or decree of any Court, nor by any provision of law;

7. Where a party has been committed on a criminal charge without reasonable or probable cause

Penal Code §211 ROBBERY. Definition

Robbery Defined: Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, AND against his will, ACCOMPLISHED BY MEANS OF FEAR OR FORCE.

Penal Code §212 FEAR Defined

The fear mentioned in Penal Code Section §211 may be either:

(1) The fear of an unlawful injury to the person robbed, or of any relative of his or member of his family; or

(2) The fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of the robbery.

This petitioner's requests within this Writ of Habeas Corpus contained in this notice , is submitted in part as a Petition for Writ of Error Coram Nobis, for all record of the Municipal Court and Superior Court proceeding which led to this petitioner's sentencing, a subsequent request to augment the record, and a Motion addressing this Court seek the records of the original Preliminary Hearing that may not be contained in this Petition for Writ of Habeas Corpus, in order to ascertain that the proceedings were properly carried out as prescribed by law.

Penal Code Section §871. DISMISSAL OF COMPLAINT; DISCHARGE OF DEFEN-DANT; ENDORSEMENT ON DISPOSITION appropriately states:

If, after hearing the proofs, it appears either that no public offense has been committed or that there is not sufficient cause to believe the defendant guilty of the public offense, the magistrate shall order the complaint dismissed and the defendant to be discharged, by an endorsement on the dispositions and statement, signed by the magistrate, to the following effect: "There being no sufficient cause to believe the within named...guilty of the offense within

1    mentioned, I order that the complaint be dismissed and that he or
2    she shall be discharged."

3    Throughout this country, surveillance cameras have become a part of
4    the terrain and the surveillance video recorded from these cameras have
5    sucessfully established both guilt and innocence with regards to thousands
6    of cases before the Courts. The victims of crimes submit surveillance video
7    in order to cooberate the allegations against those we designate as defen-
8    dants through viewing those surveillance videos and witnessing the elements
9    of criminal conduct as they unfold. Defendants alleged to have committed
10   a criminal act have just as much a right to access to those surveillance
11   videos as those that accuse, in attempts at using those same videos in an
12   attempt to prove innocence with regards to the allegations made against
13   them. Surveillance video can only be viewed in the light as it unfolds
14   either presenting critical evidence as to guilt or innocence. There is no
15   doubt this petitioner was denied the most critical evidence available to
16   prove his innocence to the allegations of the Asset Protection Officer,
17   WARREN A. WOODBERRY. WOODBERRY and the Wal-Mart Stores, Inc. themselves
18   had a responsibility to not only the Courts, not only to this petitioner,
19   but also with respects to their own credibility in order to protect and
20   preserve the integrity of the surveillance video captured at the Wal-Mart
21   Stores, Inc. facility on the evening of 01/04/2007, as that specific
22   surveillance video itself was beyond contradiction, reproach and/or doubt,
23   and in itself was an extremely critical piece of evidence with regards to
24   the matter at hand before these Courts, possessing great beneficial value
25   beyond contention. WOODBERRY and the statement(s), declaration(s), infor-
26   mation and/or testimony he delivered during  the Preliminary Hearing on
27   01/23/2007, established doubt with respects to himself on his own, establish-
28   his credibility was jeopardized with his own words and conduct. There has

-37-

1  no consistency with regards to WOODBERRY's statement(s), declaration(s),

2  information and/or testimony, except that his version(s) of the facts and

3  what WOODBERRY alleges as the truth, consistently changed and are added

4  upon in order to suit his own personal gains, at whatever time it is avail-

5  able to change his words. There has been no established consistence with

6  regards to what actually occurred on 01/04/2007 and the only relevant

7  evidence that would have certainly been considered as consistent was the

8  surveillance video captured that evening by the cameras throughout the

9  facility, and that surveillance video was conveniently erased and/or

10 destroyed by the Asset Protection Officer, WARREN A. WOODBERRY prior to

11 his subpoena to produce and submit those surveillance videos for examina-

12 tion by the defense and the Court. As such, the entirety of the prosecutions

13 case was jeopardized and this petitioner has presented substantial evidence

14 that merits this Court review and sincere consideration for Reversal with

15 regards to the findings of the Preliminary Hearing on 01/23/2007 and the

16 failure of the judgment to dismiss based on inefficient credible evidence

17 of the violation of Penal Code §211, a Robbery. It is clear and apparent

18 that defense counsel appointed to represent this petitioner displayed a

19 lack of competence and presented ineffective assistance of counsel to this

20 petitioner's claim of innocence as the evidence existed but failed to be

21 addressed, argued and/or produced. Should this matter be reversed in the

22 interest of justice, the miscarriage of justice presently being endured by

23 this petitioner will be granted the opportunity by virtue of the reversal,

24 to re-establish and litigate the innocence this petitioner is certain exists

25 in his behalf. The weight of the evidence is clear, the preponderance of the

26 evidence in this petitioner's favor merits consideration and recognition.

27 It is this Courts obligation and responsibility to correct injustice and

28 create a forum whereas justice can be fairly established, viewed, reached

1   out for and obtained, based on fact, on truth and the value of the evidence
2   presented in order to establish both. The intent of the Asset Protection
3   Officer, WARREN A. WOODBERRY, as he consciously and deliberately failed to
4   produce the surveillance video subpoenaed by the petitioner and the defense,
5   is suspect. And once the Asset Protection Officer, WARREN A. WOODBERRY's
6   intentions are in jeopardy, does the statement(s), declaration(s), infor-
7   mation and testimony obtained through him have believable credibility. This
8   is an issue this Court has theobligation and responsibility at this time
9   to review and respond to as it searches to grant this petitioner the due
10  process guarantees this petitioner is entitled to receive through the
11  judicial system this petitioner now stands before.

12      People v Mungia (1991) 286 Cal.Rptr. 394; 234 Cal.App.3d 1703; (Cal.
13  App. 4 Dist. 1991)) states in part:

14      "...although the victim need not explicitly testify that he or she
15      was afraid in order to show the use of fear to facilitate taking for
        purpose of robbery conviction, there MUST be evidence from which it
16      can be inferred that the victim was in fact afraid and that such
        fear allowed the crime to be accomplished."

17      If the prosecutions evidence was believed, it would not support
18  an offense less than robbery. This petitioner's conduct was either a robbery
19  committed by the use of force and/or fear in resisting attempts to regain
20  the property or in attempting to remove the property from the owners imme-
21  diate presence or it was simply an assault or battery!! If the petitioner
22  was forced to abandon the property before using force, then of course he
23  COULD be guilty of theft, but NOT OF AN ESTES TYPE ROBBERY. Indeed, in the
24  situation where property is taken without the use of force or the threat
25  thereof and thereafter, such force or threat is employed to prevent the
26  owner from recovering the property or to facilitate an escape, the offense
27  committed simply COULD NOT HAVE BEEN AN ATTEMPTED ROBBERY.
28      The governing law is aptly set forth whereas "INTENT" on the defen-

1   dant, a state of mind which negative accident, inadvertence, or innocense,

2   is relevant in a criminal prosecution. Evidence of intent to commit the

3   crime charged is admissible although in proving it, the commission of

4   another crime by the accused is revealed.

5        The petitioner believed that he was the owner of the property in

6   question and alleged by the Asset Protection Officer, WARREN A. WOODBERRY,

7   to have been taken from the Wal-Mart Stores, Inc. facility described herein.

8   This petitioner NEVER used physical force as stated within the testimony of

9   the Asset Protection Officer himself within the Preliminary Hearing con-

10  ducted on 01/23/2007, in which the Asset Protection Officer, WARREN A.

11  WOODBERRY himself testified under oath that this petitioner NEVER attempted

12  to cause him physical harm and/or bodily injury. Therefore, it can be in-

13  ferred that this petitioners actions were in fact those of a reasonable

14  and normal human being attempting to defend himself against the assaultive

15  behavior of another, that being the assaultive behavior of the Asset Pro-

16  tection Officer against this petitioner.

17       At no time has it ever been proven beyond a reasonable doubt or

18  a sufficient interpretation, that the CD in this petitioner's possession

19  upon exiting the Wal-Mart Stores, Inc. facility on 01/04/2007, was not in

20  fact the property of this petitioner and was in fact taken from the facility

21  as alleged by the Asset Protection Officer, WOODBERRY. This petitioner

22  stated on multiple occassions throughout the violent physical assault and

23  use of excessive force that was being used upon this petitioner by WOODBERRY,

24  that the CD was this petitioner's. WOODBERRY CLAIMS to have had a CD casing

25  in his possession when he approached this petitioner outside of the facility,

26  in order to present evidence before the Court at the Preliminary Hearing

27  of 01/23/2007, that there was evidence to establish a "theft" had in fact

28  taken placed as WOODBERRY alleged. This petitioner himself claimed the

1  CD in his possession was his property, that he had entered the facility

2  earlier that evening with the CD in his possession, and had the casing for

3  that specific CD in his vehicle, which WAS parked in the facility parking

4  lot.

5          The petitioner was identified within the testimony of WOODBERRY at

6  the Preliminary Hearing on 01/23/2007, as having a bag of merchandise

7  purchased from the Wal-Mart Stores, Inc. facility in the petitioner's

8  LEFT hand, and then subsequently identified as having produced the CD in

9  this petitioner's possession from his left EXTERIOR breast jacket pocket,

10 therefore establishing the fact that it would have been impossible for

11 this petitioner to have attempted to strike WOODBERRY in his face with a

12 closed right fist, as that hand held possession of the CD. Unless the CD

13 in question magically disappeared once this petitioner was accosted by

14 WOODBERRY, then WOODBERRY's testimony with regards to this issue can be

15 inferred as untrue and fabricated in order to establish false guilt upon

16 this petitioner for the use of force and/or fear. Within the scope of a

17 reasonable interpretation of the facts as they had been testified to and

18 previously declared within the statement(s) and information of WOODBERRY

19 regarding 01/04/2007, the petitioner COULD NOT have had the compact disc

20 in his immediate possession and/or on his person at the time of the

21 alleged struggle with WOODBERRY and the evidence can conclude that there

22 was NO USE OF FORCE AND/OR FEAR used by this petitioner towards WOODBERRY

23 if the property WOODBERRY alleges was taken from the facility had been

24 discarded prior to the altercation, which was in fact initiated by WOODBERRY

25 against this petitioner under the "BELIEF" that this petitioner had lunged

5  to his right, in what WOODBERRY perceived as an attempt to flee. Testimony

27 completely contrary and contradictory to the initial statement(s), infor-

28 mation, declaration(s) disclosed to Oceanside Police Officer JUSTIN ROMANO

1   on the evening of 01/04/2007.

2       The negligent presentation of false prosecution evidence is a basis
3   for Habeas Corpus relief, but only if it results in a denial of a fair
4   trial. This is clearly the established fact with respects to the matters
5   presently before this Court.

6       To warrant Habeas Corpus relief on the grounds that newly discovered
7   evidence must be such as to undermine the entire structure of the case on
8   which the prosecution WAS BASED and must point unerringly to the petitioners
9   innocence and must be conclusive, as it is not sufficient that new evidence
10  conflict with that presented at the hearing and would have presented a more
11  difficult question for the trier of fact concomitantly, the new evidence
12  must be credible and convincing.

13      Prior to the 1975 amendment, the rule was that to obtain Habeas
14  Corpus relief on ground(s) of perjured testimony, the petitioner was re-
15  quired to establish a preponderance of the evidence that the perjured
16  testimony was adduced at his hearing and/or trial, and such was known to a
17  representative of the State and that the perjured testimony MAY HAVE
18  affected the outcome of the hearing and/or trial. Requirement under the law
19  as it existed prior to 1975's amendment to habeas statute governing relief
20  based on the claim of false evidence that the petitioner show the false
21  evidence may have affected the outcome of the hearing and/or trial was not
22  eliminated or changed and is still required for relief under the amended
23  statute. To obtain Habeas Corpus relief on the ground(s) of false evidence,
24  it IS NOT REQUIRED that perjury be proved. In the appropriate circumstances,
25  false testimony bearing on the credibility of a key prosecutions witness
26  may warrant Habeas Corpus relief. In testing the false evidence for sub-
27  stantial materiality, a Habeas Corpus Court NEED NOT look to what other
28  evidence of untainted nature MIGHT be available to argue in support of

1   the conviction. On the contrary, in assessing whether the false testimony
2   was of such significance that it may have affected the outcome of the hear-
3   ing and/or trial, it is not necessary to consider all of the evidence and
4   circumstances. In re WRIGHT (1978), 144 Cal.Rptr 535; 78 Cal.App.3d 788 (Cal.
5   App 4th Dist. 1978)).

6        Within the reasoning of a reasonably normal individual, the entire
7   surveillance video retained the probability to establish that WOODBERRY's
8   version of the events as they transpired on the evening of 01/04/2007, were
9   false, fabricated and embellished. Therefore, it would have been of great
10  evidential value and credible proof beyond reproach with regards to WOOD-
11  BERRY's allegation had it been produced as subpoenaed and appropriately
12  submitted. Failure to produce and submit the entire surveillance video as
13  subpoenaed "WAS NOT" in WOODBERRY's interest and/or benefit. Just because
14  the evidential value WAS NOT beneficial to the prosecution "DID NOT"
15  exclude this petitioner from extending his due process rights and guarantees,
16  nor did the lack of evidential value to WOODBERRY's benefit grant WOODBERRY
17  the authority to deprive this petitioner of his due process guarantee(s)
18  to present evidence in his behalf that may have established this petitioners
19  innocence as invoked.

20        Justice v. US (1993) 6 F3d 1474 states in part:

21        "...dismissal with prejudice is a sanction of last proper when there
22        is a clear record of delay or "willful contempt."

23  This petitioner believes that the transcripts of the Preliminary Hearing
24  of 01/23/2007 [Exhibit "H"] and the testimony under oath of WOODBERRY
25  clearly establish the requirements that a clear record exists and shows
26  the witness WOODBERRY, intentionally attempted to delay this petitioners
27  defense and that the delay was intentionally conceived with a conscious
28  and willful contempt towards the instructions of the Court and therefore,

1  this petitioner respectfully requests the consideration of this Court is
2  exercising a dismissal under the citing herein established.
3      There was an extremely relevant security issue with regards to the
4  procedures and policies of the Wal-Mart Stores, Inc. addressing the evidence
5  WOODBERRY submitted to the prosecution. NO "Chain of Custody" protocol and/
6  or procedure documentation was in place, no physical supervision of the
7  evidence was establish as to its origin and/or authenticity with how it
8  factually pertained to the incident of 01/04/2007. The security procedures
9  in the Wal-Mart Stores, Inc. should be considered as a "SHAM" and evidence
10  produced in such a fashion from any other source would be considered as
11  suspicious and questionable, with sincere consideration that such evidence
12  would be suppressed and/or excluded in its entirety if petitioned as such,
13  addressed appropriately and argued before the Court. There was no form or
14  fashion of verification by law enforcement with regards to the evidence
15  produced and submitted by WOODBERRY and to the direct relationship regarding
16  the matter it represents.
17      The elements of "force" and/or "fear" did not exist nor were displayed
18  by this petitioner towards WOODBERRY. In fact, it was WOODBERRY who initi-
19  ated physical contact under a "belief" that this petitioner had appeared
20  to "lunge" in an attempt to flee from the scene. Belief is NOT certainty,
21  therefore the actions of WOODBERRY can be inferred as without justification
22  and a rush to judgment based on the heat of the moment. The statements
23  of WOODBERRY are continuously contradicted, fabricated and embellished by
24  his own words and actions on a multiple amount of occassions. WOODBERRY
25  even attempted to obtain the assistance of the Assistant Manager MICHAEL
26  STEWART, at one point, in order to attempt to establish more credibility
27  with regards to WOODBERRY's statement(s), declaration(s), information and
28  subsequent testimony. Yet those claims were asserted as untruthful and

1  infer that a conspiracy between WOODBERRY and MICHAEL STEWART was undertaken,

2  and essentially uncovered as false. The documents of MICHAEL STEWART

3  produced and submitted by WOODBERRY before the Court, claimed the incident

4  regarded a "DVD and other items", a fact clearly not in concert with any

5  other evidence, statement, declarations, information and/or testimony

6  presented in this matter. If the actions of WOODBERRY and MICHAEL STEWART

7  were in fact illegal and prejudicial on their face, then WOODBERRY and

8  MICHAEL STEWART themselves may have in concert violated sections of the

9  Penal Code in order to prosecute this petitioner. Such as:

10     118a. FALSE AFFADAVIT AS TO TESTIMONY AS PERJURY; SUBSEQUENT CONTRARY
           TESTIMONY

11

12     Any person who, in an affidavit taken before any person authorized
       to administer oaths, swears, affirms, declares, deposes, or certifies
       that he will testify, declare, depose or certify before any compe-

13     tent tribunal, officer, or person, in any case then pending or
       thereafter to be instituted, in any particular manner, or to any

14     particular fact, and in such affidavit willfully and contrary to
       such oath states, as true any material matter which he knows to be

15     false, is guilty of perjury. In any prosecution under this section,
       the subsequent testimony of such person, in any action involving

16     the matters in such affidavit contained, shall be prima facie
       evidence that the matters in such affadavit were false;

17

18     127. SUBORNATION OF PERJURY; DEFINITION; PUNISHMENT

19     SUBORNATION OF PERJURY. Every person who willfully procures another
       person to commit perjury is guilty of subornation of perjury, and

20     is punishable in the same manner as he would be if personally guilty
       of the perjury so procured.

21

22  The Municipal Court judge addressed People v. Pham (1993) 15 Cal.App.4th

23  61; 18 Cal.Rptr.2d 636 as relevant to this matter. This case involves a

24  defendant who took property without force but fought after dropping the

25  property, and that the defendant was not entitled to an instruction to

6   the   lesser included offense of attempted robbery. It was established

27  herein that if the defendant had abandoned the property PRIOR to struggling

28  with his victims, the defendant would have been guilty of theft, rather

-45-

1    than attempted robbery. The citing was in fact irrelevant to the case

2    before this Court as elements of theft had been proved, with regards to who

3    the property in question actually belonged to, and if the property was in

4    fact this petitioner's as this petitioner has invoked throughout, and in

5    the possession of this petitioner prior to entering the facility. If these

6    facts were proved, there was no asportation in this matter. And even if

7    the issue of asportation was relevant, the fact that no physical force

8    was used by this petitioner towards WOODBERRY negates the elements required

9    in order to establish a Superior Court bind-over for the violation of Penal

10   Code §211, a Robbery.

11         A person may not be deprived of life, liberty or proerty without

12   due process of law OR denied equal protection of the laws. As such, this

13   Court has the authority in order to grant and/or procure this defendants

14   release on the grounds that the record of the Preliminary Hearing examina-

15   tion discloses NO evidence of the commission of Robbery in violation to

16   Penal Code §211. Or that probable cause to believe that the petitioner is

17   guilty of that or any other public offense.

18         Where the evidence adduced at the Preliminary Hearing examination

19   fails to show the commission of the offense with which the accused person

20   is charged, or there is no evidence to indicate that he is guilty of that

21   charge or any offense necessarily included therein, the magistrate is

22   without authority to bind him over for trial in Superior Court, and Habeas

23   Corpus is the proper remedy to procedure the discharge of the person who

24   under such circumstances, is unlawfully restrained of his libery. People v

25   Creeks, 170 Cal 368.

26         WOODBERRY himself placed his credibility as a witness in jeopardy

27   through his own words and actions as previously stated. It is obvious

28   WOODBERRY has the perpensity to state false information in order to attempt

1   to establish justification for the conduct WOODBERRY used against this

2   petitioner. At either of two (2) critical stages of this matter before

3   this Court, the information, statement(s), declaration(s), and/or testimony

4   of WOODBERRY denied this petitioner of due process of which this petitioner

5   was entitled to obtain throughout the judicial process. It also shows that

6   WOODBERRY's disrespect for the judicial process as WOODBERRY displays "NO"

7   hesitation in his attempts to manipulate, twist, fabricate and embellish

8   the truth and the facts relating to 01/04/2007 to either Oceanside Police

9   Officer JUSTIN ROMANO and/or as WOODBERRY testified under oath at the

10  Preliminary Hearing of 01/23/2007. There is obvious evidence to impeach the

11  testimony of WOODBERRY as presented before the Court and should have been

12  addressed appropriately by this petitioner's appointed defense counsel

13  prior. The State and the prosecution were aware of the impeachable testi-

14  mony extracted from WOODBERRY. The complaint with regards to the allegations

15  this petitioner had allegedly violated Penal Code §211, a Robbery, were

16  based on the information, statement(s) and declaration(s) as they were

17  submitted by Oceanside Police Officer JUSTIN ROMANO based on the informa-

18  tion, statement(s) and declaration(s) Oceanside Police Officer JUSTIN

19  ROMANO obtained directly from WOODBERRY on the evening of 01/04/2007,

20  with regards to the incident which had taken place that evening.

21      The petition for Writ of Habeas Corpus should be GRANTED pursuant

22  to Penal Code Section §1473, with consideration to dismiss as set forth

23  under Penal Code Section §1487, because the evidence demonstrates that  the

24  petitioner was convicted due to the false testimony of witness WOODBERRY,

25  and the willful and intentional failure to disclose exculpatory evidence

26  (i.e. surveillance video captured 01/04/2007), as well as the ineffective

27  assistance of counsel. The intent of the witness WOODBERRY, the prosecutor

28  and this petitioner's appointed counsel with regards to the guaranteed due

1  process this petitioner was constitutionally entitled to received was reck-

2  less, revolting and offensive.

3      The failure to produce the surveillance video as subpoenaed strongly

4  undercuts the credibility of the witness WOODBERRY against this petitioner.

5  The right of Habeas Corpus based on newly discovered evidence is guaranteed

6  by the California Constitution at Article I, Section 11. ( In re Harris

7  (1993) 5 Cal.4th 81, 824). Penal Code Section §1473, subsection (b)(1) also

8  permits the filing of a Habeas Corpus petition to vacate a criminal convic-

9  tion where the conviction has been based on false evidence (Harris, supra

10  at 824; In re Pratt (1999) 69 Cal.4th 1294, 1313-1314). The prosecution

11  need not know the evidence presented at the petitioner's Preliminary Hearing

12  was false in order for relief to be granted under Penal Code Section §1473.

13  (In re Hall (1981) 30 Cal.4th 408, 423). All that is required is that the

14  evidence presented at the petitioner's Preliminary Hearing was false as

15  shown by evidence that was either outside the record and had not been

16  produced, or which was subsequently "produced and developed in the years

17  following" the petitioner's trial. (In re Pratt, supra, 69 Cal.4th at pg.

18  1316-1317 - emphasis added). In addition, to merit Habeas Corpus relief on

19  the ground of false evidence, the petitioner must show that any false

20  evidence introduced against him was potentially material or probative (In

21  re Sassounian (1995) 9 Cal.4th 535-546). Information recorded on the sur-

22  veillance video was never revealed to the State Court, depriving this

23  petitioner of the opportunity to a fair hearing as well as an opportunity

24  to litigate pre-trial motions in order to prepare for a "fair trial."

25      Case law has discussed the differance between the strength of evi-

26  dence that must be produced under Penal Code Section §1473, where the claim

27  is based upon a claim of actual innocence, as opposed to where the petition

28  alleges the conviction is based upon false evidence. (In re Weber (1974) 11

1  Cal.3d 703, 704; In re Hall (1981) 30 Cal.3d 408, 433). In order for a

2  Habeas Corpus petition to be granted upon newly discovered evidence that

3  proves the petitioner's innocense, the newly discovered evidence must be

4  (1) conclusive and (2) erringly point to actual innocence. (In re Weber,

5  supra at pg. 724). A petitioner that requests a new trial based upon the

6  use of false evidence at the petitioner's hearing or trial, however, need

7  not meet such an exacting standard. (In re Hall, supra, at pg. 423). There,

8  the Supreme Court discussed the standard articulated under Weber, and found

9  the petitioner did not have to meet a "virtually impossible burden of

10  proving there is no conceivable basis on which the prosecution might have

11  succeeded." Instead, the petitioner must show that the use of false evi-

12  dence was on a "material and probative issue." (Id, at 423). In this in-

13  stance, the force initiated by WOODBERRY when he himself testified under

14  oath he initiated because be "believed" this petitioner had lunged, in an

15  attempt to flee, when WOODBERRY's initial statement to arriving Oceanside

16  Police Officer JUSTIN ROMANO, was that the force was initiated by WOODBERRY

17  because this petitioner had attempted to strike WOODBERRY in his face on

18  two separate occassions with a closed right fist.

19      Penal Code Section §1473, set forth a number of grounds upon which

20  a party may seek Habeas Corpus relief. Amoung them is a showing that "false

21  evidence of guilt or punishment was introduced against a person AT ANY

22  HEARING or trial relating to his incarceration." As a general proposition,

23  it is held that the failure to disclose evidence or the production of

24  evidence merits Habeas Corpus relief when two conditions are shown: (1) that

25  the concealed evidence is "favorable" to the defendant. In this regard,

26  evidence is deemed "favorable" if it EITHER helps the defendant OR hurts

27  the prosecution, as by impeaching one if its witnesses. (In re Sassounian

28  (1995) 9 Cal.4th 525, 544); (2) secondly, the evidence must be "material"

1  to the case, in that there is a "reasonable" probability that had (it) been

2  disclosed to the defense, the results ...would have been differant. (In re

3  Sassounian, supra, at 514). This standard of "reasonable probability" is

4  met when the showing is sufficient to undermine the Courts confidence in

5  the legitimacy of the outcome. More specifically, where false evidence is

6  the basis for requested relief, a proper showing is made where it is

7  demonstrated that "had (the false evidence) not been introduced, the results

8  would have been differant." (Sassounian, supra at 546; In re Pratt (1999)

9  69 Cal.App.4th 1294, 1313).

10     A second fundamental principle is applicable herein, where it is

11  stated that a defendant's due process rights are violated under Brady v.

12  Maryland (1963) 373 U.S. 83, where the prosecution conceals evidence that

13  is "favorable" to the defendant, under the standard set forth in Sassounian,

14  supra, Pratt, supra at 1312. In the case of suppression of favorable evi-

15  dence, it matters not that the suppression was willful or in "bad-faith",

16  and it matters not that the specific evidence at issue was requested by

17  the defense (Pratt, supra at 1313, citing In re Brown (1998) 17 Cal.4th 873,

18  879). And, the prosecution is responsible for failure to produce exculpatory

19  information under the control of the witness and/or police even though the

20  prosecution was not aware the evidence existed. See e.g., United States v.

21  Lorefice (7th Cir. 1999) 192 F.3d 647, 651-652.

22     In reliance upon the foregoing principles, this petitioner submits

23  that the Preliminary Hearing bind-over and/or convictions obtained there-

24  after on all counts of the information in Case Number SCN223021, were

25  tainted by false evidence/testimony and the willful and intentional conceal-

26  ment of favorable evidence beneficial to this petitioner, in the prosecu-

27  tion of this matter.

28     The fact(s) presented to the State Court were intentionally

1    **and** materially false based on omissions and distortions of the witness,

2    WARREN A. WOODBERRY.

3         This petitioner contends that petitioner was denied effective assis-

4    tance of counsel on the January 4, 2007 allegations, because appointed

5    counsel failed to file any Motions to Suppress and/or Order to Show Cause

6    addressing the witnesses willful and/or intentional failure to produce the

7    surveillance video as subpoenaed by the defense and order by the Court.

8         As set out in this petition, counsel should have filed a Motion to

9    Suppress on the incident of January 4, 2007, based on the witness WOODBERRY's

10   willful and intentional failure to produce exculpatory evidence. At the

11   least, counsel should have addressed the failure in a **Motion** of Order to

12   Show Cause. In any event, counsel should have filed appropriately and did

13   in fact fail to file ANY motion with regards to any issues relating to this

14   matter.

15        Petitioner had a right under California and United States Constitu-

16   tion(s) to effective assistance of counsel, here appointed and/or retained,

17   pre-trial and at trial. See e.g., **People v. Frierson (1979) 25 Cal.3d 142**.

18        In order to render effective assistance of counsel, a criminal

19   defense attorney "MUST" carefully research and investigate possible grounds

20   for seeking the "suppression of incriminating evidence and file appropri-

21   ate motion. (**In re Neely (1993) 6 Cal.4th 901**). Petitioner's appointed

22   counsel failed in his duties as such.

23        Habeas Corpus has become a proper remedy in this state to collater-

24   ally attack a judgment of conviction which has been obtained in violation

25   of fundamental constitutional rights. The denial of a fair and impartial

26   hearing amounts to a denial of due process of law and is a miscarriage of

27   justice within the meaning of that designated phrase as used in Section

28   $4\frac{1}{2}$, Article VI, of the Constitution of this State. This petitioner must

1   show that the defect so fatally infected the regularity of the hearing and

2   that the subsequent conviction was considerably a violation of the funda-

3   mental aspects of fairness and resulted in a miscarriage of justice. (In

4   re Winchester, supra, 53 Cal.2nd at pp. 531-532; 2 Cal.Rptr 296; 348 P.2d

5   904). When a criminal defendant believes an error was made in his hearing

6   or trial that justifies a reversal of his conviction, the Legislature

7   intends that he should appeal to gain relief. The Waltreus rule, although

8   a judicial creation, is consistent with this legislative intent. The right

9   to file a Petition for Writ of Habeas Corpus is guaranteed by the State

10   Constitution, (Cal. Const., Article I §11), and regulated by statute (1473

11   et. seq). (In re Waltreus (1965) 62 Cal.2d 218, 225; 42 Cal.Rptr. 9; 397

12   P.2d 1001 [hereafter Waltreus][same]; 6 Wilkin & Epstein, Cal. Criminal Law

13   (2nd ed. 1989) Extraordinary Writs, §3346, pg. 4150). On seeking relief on

14   Habeas Corpus, petitioner need only file a Petition for Writ of Habeas

15   alleging facts which, if true, would entitle the petitioner to relief. (In

16   re Clark (1993) 5 Cal.4th 750, 781; 21 Cal.Rptr.2d 509; 855 P. 2d 729

17   [hereafter Clark]; See also §1474 [applicant need only allege he is illegally

18   restrained of his liberty, and state "in what the illegality allegedly

19   consists"].) Such factual allegations should also be supported by "[reason-

20   ably available] documentary evidence and/or affidavits."

21       The judicially created Waltreus rule, and the similarly created

22   exceptions to the rule, are simply manifestations of the Court's resolve to

23   balance the State's weighty interest in the finality of judgments in crimi-

24   nal cases with the individual's right - also significant - to a fair trial

25   under both the State and Federal Constitutions. In this matter, the inten-

26   tional deprivation of the subpoenaed surveillance video shows "the defect

27   so fatally infected the regularity of the hearing and subsequent conviction

28   as to violate the fundamental aspects of fairness and resulted in a miscar-

1  riage of justice." This issue should have been motioned and addressed by

2  petitioner's appointed counsel yet counsel failed to defend this petitioner

3  with regards to the due process denied. The inability of criminal defendants

4  to gain vindication of their constitutional claims in the Appellate Courts,

5  especially those claims affecting the ultimate fairness of their trials,

6  justify an exception to the Waltreus rule for claims of "fundamental"

7  constitutional error. Implicitly, the Courts have found that balancing the

8  need for such review with the State's need for finality of judgments, the

9  individual's need was the greater one. The right to effective counsel was

10 defined in terms of the due process clause of the Federal Constitution. In

11 order for a litigant to obtain relief for ineffective assitance of counsel,

12 "it must appear that the counsel's lack of diligence or competence reduced

13 the hearing to a farce or a sham." (<u>People v. Pope, supra, 23 Cal.3d at pg.</u>

14 <u>421-426; 152 Cal.Rptr. 732; 590 P.2d 859 [hereafter Pope]. In re Harris,</u>

15 <u>Cal.Rptr.2d 373 (Cal. 1993)</u>.

16      The "farce or sham" standard gave way to the modern view, based on

17 the Sixth Amendment, that in order to gain relief for ineffective assistance

18 of counsel, a competent attorney, acting as diligent advocates [and that]

19 counsel's acts or omissions resulted in the withdrawl of a potentially

20 meritorious defense." Appointed counsel's failure to submit and address the

21 failure to provide the subpoenaed surveillance video within an Order to Show

22 Cause falls directly within these boundaries without argument. This modern

23 standard is now well established in both the State and in the Federal

24 Courts. The law was summarized in <u>People v. Wherton (1991) 53 Cal.3d 522;</u>

25 <u>280 Cal.Rptr. 631; 809 P.2d 290</u>: "A criminal defendant is guaranteed the

26 right to the assistance of counsel by both the State and Federal Constitu-

27 tions. Construed in light of its purpose, the right entitles the defendant

28 not to some bare assistance, but rather to effective assistance. This

1 petitioner's counsel displayed his ineffectiveness as counsel's performance

2 was "deficient" because his representation fell below an objective standard

3 of reasonableness....under prevailing professional norms. Therefore, this

4 petitioner can establish prejudice flowing from counsel's performance or

5 lack thereof. Counsel's failure shows prejudice as there is a "reasonable

6 probability that, but for counsel's unprofessional error(s), the result

7 of the proceeding would have been differant." A reasonable probability is

8 a probability sufficient to undermine confidence in the outcome. (**Strickland**

9 **v. Washington (1984) 466 U.S. 668, 687-688; 104 S.Ct. 2052, 2064; 80 L.Ed.2d**

10 **674**). The United States Supreme Courts have explained that the second prong

11 of the Strickland test is not solely one of outcome determination. Instead,

12 the question is "whether counsel's deficient performance renders the result

13 of the hearing unreliable or the proceeding fundamentally unfair." Cases

14 have been reversed where the record showed a defendant's hearing and/or

15 trial counsel had not adequately investigated evidence, thereby depriving

16 the defedant of his Sixth Amendment right to counsel. This petitioner's

17 counsel and his subsequent action(s) denied this petitioner a "fundamental

18 aspect of fairness resulting in a miscarriage of justice". Therefore, this

19 petitioner has established that counsel acted unreasonably in omitting

20 to address the subpoenaed surveillance video and prejudiced this petitioner

21 in the process, and this error amounted to the structural defect in the

22 trial mechanism and therefore is deserving of reversal and/or modification

23 consideration. The states paramount interest in the finality of its criminal

24 judgment(s) demands no less, and this Court possesses subject matter juris-

25 diction in this case matter. The Penal Code contemplates that a Court, when

26 faced with meritorious factors in mitigation, should consider these factors

27 of justice and equity when crafting an appropriate remedy. It is neither

28 "just" nor "equitable" to attempt to salvage a determination of guilt that

1  is devoid of legal significance.

2      The prosecutor within the transcripts of the Preliminary Hearing

3  conducted on 01/23/2007 [Exhibit "H"] Page 39, Lines 15-18 and Page 40,

4  Lines 4-7 declares the "strength of the circumstantial evidence", the CD

5  in this petitioner's possession when exiting the Wal-Mart Stores, Inc. facil-

6  ity on 01/04/2007, when approached by WOODBERRY, was the property of the

7  Wal-Mart Stores, Inc. facility. If the CD itself is the "circumstantial"

8  evidence in reference, it is equally "circumstantial" the CD "WAS" the

9  property of the petitioner as claimed. WOODBERRY stated he observed the

10  petitioner conceal a CD in the LEFT INTERIOR BREAST POCKET of this petition-

11  er's jacket. After testifying WOODBERRY had 100% visual observation of the

12  petitioner throughout the store, when WOODBERRY approached the petitioner

13  and inquired about the CD, this petitioner produced a CD from this petition-

14  er's EXTERIOR POCKET and "NO" CD was discovered in this petitioner's INTERIOR

15  POCKET OF THE JACKET. As there was no testimony WOODBERRY observed the peti-

16  tioner exchange locations of the CD WOODBERRY alleges this petitioner con-

17  cealed in the "INTERIOR" pocket, the inference can be made that the CD in

18  this petitioner's "EXTERIOR" pocket "WAS NOT" the CD WOODBERRY alleges he

19  observed this petitioner conceal. This issue is relevant under U.S. v Mul-

20  derig 120 F.3d 354 (5th Cir 1997) which states in part:

21          "...the conviction in a "circumstantial evidence case WILL BE
        reversed if evidence points equally to a theory of innocence and
22          guilt."

23      Two empty CD cases subsequently existed for one CD. WOODBERRY alleges

24  the CD was Wal-Mart Stores, Inc. property. The petitioner claims the CD was

25  this petitioner's property and was in this petitioner's possession when the

26  petitioner entered the facility earlier.

27      The prosecutor claims the incident of 01/04/2007 is considerable to

28  an ESTES style robbery (People v. Estes 194 Cal.Rptr. 909; 147 Cal.App.3d

1    23 (Cal.App. 1 Dist. 1983). Without the surveillance video captured on 01/

2    04/2007 and based on the consistent contradictions and recantations with

3    regards to the statements , declaration(s), information and testimony of

4    WOODBERRY, no definitive "theft" can credibly be verified to have taken

5    place. Without the proving with regards to the essential element of "theft",

6    the matter before this Court is suspicious in nature and outside the scope

7    in relation to ESTES. If the three (3) elements of Penal Code Section §211,

8    Robbery ARE NOT PRESENT, (1) theft; (2) force; and (3) fear, then the

9    sufficient evidence "DID NOT" exist and therefore, the bind-over to Superior

10    Court was in error.

11        This petitioner is requesting that this Court review the totality of

12    the prosecution which occurred with regards to this matter and the value of

13    the evidence as a whole which was "produced", as well as that which was

14    suspiciously "excluded", intentionally and consciously denied this petitioner

15    by the prosecutions witness, WOODBERRY, and the reasons "WHY" the surveil-

16    lance video of 01/04/2007 was NOT produced, although it had been subpoenaed

17    by this petitioners defense. Was the intentional denial to produce the

18    surveillance video of 01/04/2007 contemptuous and with the willful intent

19    to deny this petitioner critical evidence beneficial to this petitioners

20    claim of innocence as this petitioner claimed existed throughout this matter

21    and was based on evidence that existed within the surveillance video itself.

22    Under Justice v. U.S. 6 F.3d 1474 (11th Cir 1993), this petitioner had a

23    constitutional right to petition the Court for a dismissal with prejudice as

24    a sanction of last proper based on the clear record of delay or the "willful

25    contempt" established by the prosecutions witness, Mr. WOODBERRY, based on

26    the failure to produce the entire surveillance video of 01/04/2007 with

27    regards to this petitioner. WOODBERRY testified under oath the "HE HAD"

28    viewed the surveillance video of the incident of 01/04/2007. WOODBERRY

1   viewed the surveillance video, yet did NOT produce that video as subpoenaed

2   by this petitioner. It is apparent by the failure to create and submit the

3   appropriate petition(s) and/or motions by this petitioners appointed counsel,

4   that appointed counsel lacked the effort to aggressively prepare as adequate

5   defense for this petitioner. An accumulation of errors were committed against

6   this petitioner and presented grounds for a new trial if addressed meritor--

7   iously (Latiolais v. Whitley 93 F.3d 205 (5th ir. 1996). The bind-over from

8   the Municipal Court to the Superior Court based solely on the testimony the

9   prosecutions witness (WOODBERRY) presented on 01/23/2007 in comparison

10  to the initial statement(s) WOODBERRY submitted on 01/04/2007 to the arrest-

11  ing officer in order to initiate the arrest of this petitioner for violation

12  of Penal Code §211 (Robbery), was in error. There was a clear weight of

13  evidence which was false and subsequently resulted in the miscarriage of

14  justice against this petitioner. This petitioner has presented substantial

15  evidence to establish an Oredr for an Evidentiary Hearing if so ordered by

16  this Court with regards to the evidence, statement(s) and testimony presented

17  in order to obtain the conviction against this petitioner. The petitioner

18  has presented and raised meritorious claims involving issues of fact. The

19  testimony of the prosecutions witness (WOODBERRY), was perjured, fabricated

20  and embellished without a doubt in comparison to the statement(s) of fact(s)

21  WOODBERRY initially stated to the arresting officer on 01/04/2007 regarding

22  the incident. The perjured testimony could have in fact presented a "reason-

23  able" likelihood and affected the judgment of the jury. The evidential value

24  of the testimony itself was powerful enough to impeach the credibility of

25  WOODBERRY and although undisclosed, could have constituted grounds for a

26  new hearing. This defendant believes the actions of the prosecutor was

27  vindictive and intended to deprive this petitioner of a fair trial which was

28  constitutionally prohibited. The prosecutor violated this petitioners due

1  process when she attempted to seek additional charges at trial solely to

2  punish this petitioner for attempting to exercise his constitutional and/or

3  statutory right to proceed to trial under the violation of Penal Code §211,

4  the Robbery. The prosecution was aware of the false evidence presented by the

5  witness (WOODBERRY) and allowed that false evidence to go uncorrected. This

6  petitioners appointed counsel deprived this petitioner of effective repre-

7  sentation when counsel himself was aware of the false evidence/testimony and

8  failed to address the issue(s) in petitions and/or motions before the Court.

9  The prosecution in fact obtained a criminal conviction against this peti-

10 tioner with use of the Plea Agreement in violation of <u>Thompson v. Calderon</u>

11 <u>109 F.3d 1358 (9th Cir. 1996)</u>. The petitioner had a right to present evidence

12 to establish that evidence presented before the Court was false. This peti-

13 tioner's appointed counsel failed to address the issue(s) at any point and

14 deprived this petitioner of the opportunity to show the prosecution knowing-

15 ly elicted and/or failed to correct the materially false statement(s) from

16 its witness (WOODBERRY) based on the testimony presented on 01/23/2007 in

17 comparison to the statement(s) of 01/04/2007. The prosecutor in fact vio-

18 lated this petitioners due process right <u>(U.S. v. Haese 162 F.3d 359 (5th</u>

19 <u>Cir 1998); Schaff v. Snyder 190 F.3d 513 (7th Cir 1999)</u>. The evidence of

20 the perjured testimony was concealed and was in fact FAVORABLE to this peti-

21 tioner and material to this petitioners guilt or punishment and also violated

22 this petitioners due process <u>(Hughes v. Johnson 191 F.3d 607 (5th Cir. 1999)</u>.

23      The prosecutor has a special responsibility to ensure the integrity

24 of the criminal judicial process by living up to the code of professional

25 ethics and fair play at all times <u>(U.S. v. White 222 F.3d 363 (7th Cir. 2000)</u>

26 The prosecutor violated that responsibility. The violation should have been

27 addressed by this petitioners appointed counsel, yet was not. This petition-

28 ers appointed counsel failed to investigate all the issues regarding a sound

1  defense in this petitioners behalf. Appointed counsel failed to present any
2  investigative evidence in this petitioners behalf at sentencing and consti-
3  tuted ineffective assitance of counsel. This petitioners Sixth Amendment
4  right to counsel included the right to be represented by an attorney with
5  individual loyalty, which this petitioner DID NOT receive from appointed
6  counsel. At the preliminary hearing conducted 01/23/2007, appointed counsel
7  should have called the arresting officer, Oceanside Police Officer JUSTIN
8  ROMANO in order to impeach the testimony of WOODBERRY based on the multiple
9  contradictions, fabrications and/or embellishments in the testimony of 01/23/
10  2007 in comparison to the information submitted on 01/04/2007, which initi-
11  ated this petitioners arrest for the violation of Penal Code §211, the
12  alleged Robbery. As such, during Preliminary Hearing under oath 01/23/2007,
13  Officer JUSTIN ROMANO did in fact obtain information contradicting the
14  initial statement(s) of WOODBERRY on 01/04/2007, and that information,
15  would have not only impeached WOODBERRY's credibility, but the information
16  had the potential to destroy the arresting officers probable cause to arrest
17  this petitioner on 01/04/2007 for the violation of Penal Code §211, (Robbery)
18  and therefore, would have constituted the arrest as ILLEGAL (U.S. v. Edwards
19  242 F.3d 928 (10th Cir. 2002).

20      The entirety of the issue(s) fact(s), statement(s) and/or testimony
21  presented within this matter are complex and establish sufficient cause for
22  the Review and Petition for Writ of Habeas Corpus requested by this peti-
23  tioner and the merits of this petitioners evidence establishes a miscarriage
24  of justice that should be reviewed by this Court and properly remedied.

25      With regards to issuing a denial to this petitioners Writ of Habeas
26  Corpus, this petitioner contends that the Plea Agreement initiated on 02/28/
27  2007 was coerced on its face and legal innocence is a fair and just reason to
28  withdraw a guilty plea (U.S. v. Salgado-Ocampo 159 F.3d 322 (7th Cir. 1998),

1 | and as such, if required, this petitioner so withdraws the prior plea of

2 | guilty obtained on 02/28/2007 and exerts a plea of innocence.

3 | B. REQUEST FOR APPOINTMENT OF COUNSEL and EXPEDITED HEARING

4 |     Petitioners discovered and disclosed evidence establishes that this

5 | conviction was based upon false, fabricated and embellished evidence within

6 | the meaning of Penal Code Section §1473(b)(1) and in violation of the Calif-

7 | ornia and United States Constitution(s). For this reason, petitioner DENNIS

8 | EVERETT LACY, asks this Court set this matter for an Evidentiary Hearing,

9 | in which the testimony of witnesses set forth in the attached transcript(s)

10 | may be presented and the issue(s) regarding the witnesses testimony and/or

11 | willful and/or intentional failure to produce the surveillance video as

12 | subpoenaed may be addressed and subsequently adjudicated. If so granted,

13 | this petitioner requests appointment of counsel because the issues herein

14 | ARE complex and this petitioner is indigent, and, an Expedited Hearing is

15 | requested because of the length of time this petitioner has already been in

16 | custody.

17 |     I, the undersigned, say: I am the petitioner in this action. I declare

18 | under penalty of perjury under the laws of the State of California that the

19 | foregoing allegations and statements are true and correct, except as matters

20 | that are stated on my information and belief, and as to those matters, I

21 | believe them to be true.

22 |     Dated this 12th day of August, 2007 at the Sierra Conservation Center,

23 | located at 5150 O'Byrnes Ferry Road in the city of Jamestown, state of

24 | California 95327.

25 | Dated:  JANUARY 15, 2008          Respectfully Submitted,

26 |

27 |

28 |                       Dennis Everett Lacy
Defendant/Appellant IN PRO PER

1

# V E R I F I C A T I O N

2       I, DENNIS EVERETT LACY say: I am the Petitioner in the above-

3   entitled Cause of Action. I have read the statements herein, and declare

4   under penalty of perjury that upon the information and belief, these

5   statement are true and correct. Exceuted at the Sierra Conservation Center

6   located at 5150 O'Byrnes Ferry Road in the city of Jamestown, California

7   95327.

8

9   DATED:   JANUARY 15, 2008

10                                  Respectfully Submitted,

11

12

13                                  /S/Dennis Everett Lacy
                                    Petitioner IN PRO SE

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

C O N C L U S I O N

1

2          For the foregoing reasons, this Petitioner respectfully requests

3     this Court to GRANT review to bring up to date the guidance needed to insure

4     uniformity of decision making in the lower Courts on issues which are

5     frequently litigated to settle a question so important, that it impacts

6     directly upon the right(s) of a person such as this Petitioner, to Due

7     Process of law under the State and Federal Constitution(s).

8          This petitioner's contention is based on the theory that the

9     "interest of justice", our judicial system has checks and balances in place

10    that will essentially protect the individual from suffering through this

11    "miscarriage of justice" that at times DO take place beased upon the com-

12    plexities of the laws which these Courts are in place to uphold. The facts

13    and the truths with regards to the matter presently before this Court for

14    review establish conclusions that are incongruous and will establish argu-

15    able fairness when compared to the theoretical state of perfect and/or

16    equal justice.

17         The Court of Appeal has declared '...a demonstrated determin-

18    ation deliberately to further self-interest at the expense of society or

19    in derogation of the interests of others 'goes to the heart of honesty

20    and integrity'." Make no mistake - the testimony of Warren A. Woodberry

21    with regards to embellishing and fabricating his version of the facts of

22    the evening of 01/04/2007, was a deliberate, intentional and calculated

23    act and should be viewed and regarded as somewhat of a selfish one.

24         Long ago, this State's highest court said that in our system

25    of justice, "in a very real sense a defendant starts his life afresh when

26    he stands before a jury." Not long after that, it stated, "one may not be

27    convicted of one crime on proof that he "PROBABLY" is guilty because he

28    committed another crime in the past." The testimony of Warren A. Woodberry,

-62-

1    at the Preliminary Hearing of 01/23/2007, or the evidence presented at

2    that time, was enough to contradict that principle. It was erroneous to bind

3    this Petitioner over to the Superior Court on a violation of Penal Code

4    Section §211, a Robbery, based on the probability alone that this Petitioner

5    "MAY" have committed a theft. The essential element  of "force and/or fear"

6    by this Petitioner against Warren A. Woodberry on the evening of 01/04/2007,

7    DID NOT EXIST. The testimony of Warren A. Woodberry under oath at the

8    Preliminary Hearing on 01/23/2007 established this issue as "fact", as

9    "truth". Therefore, if the violation of Penal Code Section §211, the Robbery,

10   DID NOT EXIST, then this Petitioner could only have been made to face charges

11   with regards to theft, and those charges would have been categorized as a

12   violation to Penal Code Section §484, a Petty Theft, which would have been

13   established as a misdemeanor, and potentially recognized as a "wobbler"

14   in which the Judge would have made the determination as to whether the

15   charge itself would have been declared a misdemeanor offense or a felony.

16            With regards to establishing a violation to Penal Code Section

17   §484 with Penal Code Section §666, a Petty Theft with a Prior, it would have

18   been the Court's responsibility to decide if the evidence of the prior act

19   should have been admissible. The Court would have had the responsibility to

20   weigh the elements of prejudice against those of probative value.

21            What are the standards in order to weigh these elements? Lapse

22   of time since the prior act [in this direct case, 1981], is an important

23   measure of how much value the prior act has as proof. If you look at the

24   statutes and cases on this question around the country, you will find that

25   ten (10) years is a standard benchmark with respects to the lapse of time.

26   After ten (10) years, evidence of past criminal behavior is generally

27   thought to be too remote to be admissible.

28            Just as an example, in the Federal Rules of Evidence, ten (10)

1    years is the recognized limit in the case of "convictions" for prior crimes.

2    Crimes proved in Court, not "alleged" bad acts for which the proof is scant

3    or probative.

4            Warren A. Woodberry had a clear motive to embellish and fabricate

5    his testimony at the Preliminary Hearing on 01/23/2007, to make his story

6    better fit the contention of the events which he claims to have occurred on

7    the evening of 01/04/2007, even testifying under oath, recanting the state-

8    ments and information he had previously given to Oceanside Police Officer J.

9    Romano on that evening. Warren A. Woodberry was out to protect his position

10   of employment and avoid the potential civil action against not only himself,

11   but his employers at the Wal-Mart Stores, Inc., which was a potential form

12   of resolution to this matter by this Petitioner. With regards to Warren A.

13   Woodberry's testimony under oath at the Preliminary Hearing on 01/23/2007,

14   in comparison to the statements and information given to Oceanside Police

15   Oficer J. Romano on the evening of 01/04/2007, which initiated the arrest of

16   this Petitioner for the violation of Penal Code Section §211, the Robbery,

17   the Court should have been concerned with Warren A. Woodberry's credability

18   and should have given weight to Warren A. Woodberry's ability to embellish

19   and/or fabricate the facts as they was previously stated. Warren A. Woodberry

20   expected to benefit from embellishing and/or fabricating his testimony at

21   the Preliminary Hearing on 01/23/2007. That goes to the weight of the

22   testimony and Warren A. Woodberry's credability in assessing the probative

23   value of the events of 01/04/2007. The rules of law are meant to insure a

24   fair hearing and a subsequent fair trial. That fact that this Petitioner's

25   appointed counsel FAILED to present evidence and testimony from Oceanside

26   Police Officer J. Romano at the Preliminary Hearing of 01/23/2007, in order

27   to impeach the testimony of Warren A. Woodberry, deprived this Petitioner

28   an opportunity to receive a fair hearing before the Court. The witness,

1   Warren A. Woodberry, participated in the intentional act of telling lies.

2   Warren A. Woodberry lied when he allowed people to make assumptions he

3   himself was aware were in fact incorrect. Warren A. Woodberry also lied in

4   open Court, under oath, by not only with false implication(s) and

5   ommissions of the truth, but by way of direct, outright fabrications contrary

6   to the evidence previously established. The prosecutor allowed the lies to

7   be presented with knowledge they existed, and this Petitioner's appointed

8   counsel failed to adequately impeach the witnesses perpensity to  lie

9   with evidence immediately available at hand. The perpetuation of the witness

10   to testify under oath to fabrications, implications, omissions and embellish-

11   ments, was based intentional on self-interest. For the witness, the self-

12   interest of his attempt to continue his employment position  with the Wal-

13   Mart Stores, Inc. as a Loss Prevention/Asset Protection Officer. And for the

14   prosecution, the self-interest to establish a "guilty" verdict against some-

15   one who had once been convicted of charges in the past and mest certainly

16   have been guilty of the charges as alleged on January 4, 2007. Facts exist

17   and have been presented with merit, to establish that WARREN A. WOODBERRY,

18   did in fact commit perjury, subsequently lieing to both Oceanside Police

19   Officer J. Romano on 01/04/2007 and before the Court a the Preliminary

20   Hearing under oath, on 01/23/2007.One must be granted the opportunity to

21   think about where such an elaborate ability to lie might have come from.

22   Everyone who has experienced lying or one who lies knows that the most

23   convincing lies are usually those based on truth in some way. Because it is

24   easiest to fill a lie with details - and to remember what those details are,

25   in case it is necessary to retell the lie at a later time- if the lie is

26   also a description of something real, with just a few crucial details changed.

27   As with Warren A. Woodberry initial statement(s) and information in compari-

28   son to his testimony under oath on 01/23/2007, one tells as much of the

-65-

1   truth as possible and makes changes when they have to. The prosecution had

2   an obligation to provide evidence establishing this defendant was guilty of

3   violating Penal Code Section §211, the robbery, beyond a preponderance of

4   doubt. The Judge at the Preliminary Hearing of 01/23/2007, had an obligation

5   to listen to the testimony under aoth, in an unbiased fashion, and establish

6   if in fact the criminal act of robbery had been committed by this petitioner

7   against the witness, inclusive of the critical elements of "force" and/or

8   "fear" being used by the petitioner in the commission of the criminal act

9   against the witness. Warren A. Woodberry testified on multiple occassions

10  that this defendant DID NOT in fact use "force" or "fear" against him,

11  therefore, eliminating the lawful bind-over requirements to the Superior

12  Court for further proceedings based on that allegation. At most, evidence MAY

13  have been presented to establish that a "theft" had taken place, but NOT the

14  act of robbery. It was "NEVER" established IF the CD itself had been discard-

15  ed prior to or during the altercation between this petitioenr and the wit-

16  ness. Had the CD in fact been discarded prior to the altercation, then

17  "theft" may have taken place, but definately NOT an act of robbery, especi-

18  allysince the altercation was initiated by the witness based on a "BELIEF"

19  and not upon an act of certainty. If a mere "theft" had in fact occurred,

20  the value of the merchandise was such that the violation would have been

21  recognized as a misdemeanor and therefore, punishable within the municipal

22  court as a "petty theft", a "wobbler" under the description and definitive

23  of the law as set forth, and NOT a criminal act referable to the Superior

24  Court for further prosection. Although the prosecutor and the Judge had an

25  obligation to provide evidence beyond reasonable doubt and protect the

26  right(s) of the people, they also had an obligation to grant the defendant

27  fundamental due process rights in the prosection of the allegations placed

28  against him. The prosecutor and the Preliminary Hearing Judge violated

-66-

1  thise fundamental due process rights in their haste to carry out their mis-

2  carriage of justice, as well as their obligation to protect the rights of

3  Warren A. Woodberry, they also carried an obligation to make certain that an

4  innocent man was not sent to prison for a crime that he did not in fact

5  commit, through thoughtless carelessness. Under oath, during the Preliminary

6  Hearing of 01/23/2007, Warren A. Woodberry intentionally testified falsely

7  to material facts during the hearing that were recantageous and inconsistant

8  to the statement(s) and information he gave when giving his initial state-

9  ment of the facts on the evening of 01/04/2007 to Oceanside Police Officer

10  J. Romano, which initiated the arrest of this petitioner for the violation

11  of Penal Code Section §211, a robbery. As to other facts testified to under

12  oath by Warren A. Woodberry, it was clear the elements of "force" and/or

13  "fear" were not established or presented against this petitioner and there-

14  fore, the bind-over to the Superior Court to answer to the allegations of

15  violating Penal Code Section §211, the robbery, was without just cause and

16  not within the boundaries of the law as it is described. As such, the results

17  of the Preliminary Hearing of 01/23/2007, did in fact violate the due process

18  guarantees of this petitioner and a reversal of the findings are an accept-

19  able and proper remedy at this time.

20        We have a witness who essentially winds up on the team investi-

21  gating the allegation(s) against the petitioner, where Warren A. Woodberry

22  has the opportunity to tamper with evidence, give false testimony and

23  deflect the investigation away from the truth. Based on the incompetence

24  and/or negligence of the Oceanside Police Officer(s) responding to the call

25  for assistance on 01/04/2007 and the actions of the prosecuting attorneys

26  office in the days to follow. Warren A. Woodberry was granted free rein to

27  do as he saw fit with the evidence presented and essentially answered to no

28  one by failing to produce any form of Chain of Custody evidence to establish

-67-

1   the authenticity of the evidence Mr. Woodberry decided he would produce and/

2   or destroy. If the Police Officer(s) and the prosecuting attorney was in

3   fact incompetent or strayed from the accepted methods with regards to the

4   "Chain of Custody" procedures and the protection of critical items of

5   evidence, then they sharesome of the liability for Mr. Woodberry's actions.

6   As for Warren A. Woodberry himself, consideration with regards to the crimi-

7   nal negligence is not outside the realm of possibilities with respects to

8   his actions. Mr. Woodberry had a professional obligation to adhere to a

9   higher than normal standard of care. Another human beings rights to liberty

10  and freedom hinged on Warren A. Woodberrys' ability and responsibility to

11  be truthful and to produce the evidence as subpoenaed. If Warren A. Wood-

12  berry abrogates that responsibility, and such abrogation leads to a

13  grievous consequence, then Warren A. Woodberry himself face prosecution

14  and punishment under the laws as they have been set forth. Warren A. Wood-

15  berry should not be under the belief that his position of employment with

16  the Wal-Mart Stores, Inc. facility places him above the laws he himself was

17  employed to uphold. Should Mr. Woodberry have intentionally violated the

18  ethis of his position and the laws which these ethics are established, then

19  it is only justifiable that Warren A. Woodberry's actions should be consider-

20  ed as somewhat actionable from a criminal law perspective. Further, if it

21  appears and can be demonstrated that the actions of Mr. Woodberry had

22  direct intentions and the potential for grieveous consequences against this

23  petitioenr, then we have extentuating circumstances and an even stronger case

24  against Mr. Woodberry with regards to the intent of his actions. In

25  addition, also available for consideration are Mr. Woodberry's actions in

26  acquiring the assistance of Michale Stewart after the fact. If Michael

27  Stewart's documented statement is found to be perjurous against this

28  petitioner, then Michael Stewart himself is guilty of a felony, perjury.

1    If Warren A. Woodberry's actions caused Michael Stewart to commit this

2    felony, then Warren A. Woodberry himself committed a felony act, that being

3    "Criminal Solicitation."

4           If the witnesses testimony goes to help the defense's case in a

5    material way, then under BRADY v. MARYLAND, the prosecutor has the obligation

6    to inform the defense about that testimony and make that witness available to

7    the defense. Oceanside Police Officer J. Romano was material to the defense

8    AFTER the testimony of Warren A. Woodbery was established at the Preliminary

9    Hearing on 01/23/2007, and was critical with regards to what the witness

10    had previously stated and then testified to prior, as well as testimony on

11    01/23/2007 in comparison to the statements and information of 01/04/2007

12    which were given to the Oceanside Police Officer J. Romano, in order to

13    initiate the arrest of this petitioner for the violation of Penal Code Sec-

14    tion §211, the robbery allegation AND the credibility of Warren A. Woodberry's

15    testimony on 01/23/2007. Prosecutors are the guardians of the community. If

16    the prosecutor possesses evidence that could potentially set the defendant

17    free, hiding this information from the defense and the Court was not the way

18    to secure justice nor serve the people. The prosecutor has a responsibility to

19    present the "truth" and the defense has a right not to be sandbagged or

20    deceived by a malicious adherence to a constructed reality; this was not a

21    game of playing with dictionary definitions the way civil disputes sometimes

22    are. This petitoner's freedom was at stake and adhering to the defendant's

23    guaranteed due process rights and constitutional guarantees is essential for

24    the search for justice.

25           The entire cause of action against this petitioner is based upon

26    supposition after supposition, assumption upon assumption, guess upon guess,

27    and belief upon belief.

28           In our system of justice, the defense does not necessarily have

-69-

1    to tell a story. The defense's position is not merely to act out a better

2    drama than the prosecution acts out and/or presents. The defense position

3    is to present factual evidence in order to refute the prosecution's allega-

4    tions in order to identify what is missing in the prosecution's story. The

5    witness, Warren A. Woodberry, intentionally deprived the petitioner a critical

6    opportunity to present such a defense by depriving this petitioner evidence

7    of the surveillance video of 01/04/2007, subpoenaed by this petitioner. No

8    significant forensic fingerprinting was requested or established by the

9    prosecutor and/or this petitioner's appointed counsel, in order to ascertain

10   had this petitioner actually handled the CD case submitted as evidence by

11   Warren A. Woodberry. Had forensic fingerprinting been completed and estab-

12   lished this petitioner's fingerprints DID NOT in fact exist on the CD case

13   submitted, this petitioner would have only established one more important

14   piece of evidence in his favor, continuing to substantiate this petitioner's

15   contention that the witness, Warren A. Woodberry's allegations were without

16   merit.

17              Forgive me for being skeptical, but how can any jury in the world,

18   much less in this direct cause of action, be convinced that any prosecuting

19   attorney from the San Diego County District Attorney's office will honestly

20   tell them the "truth" so that they themselves can come to an unbiased verdict

21   with regards to guilt or innocence. No prosecuting attorney should be permit-

22   ted to twist and/or assist in distorting the "facts". The Courts have

23   essentially taken a back seat and presently allow the District Attorney's

24   office [which is to say the least, truth-deprived], to proceed on the premise

25   of "...whatever I say or do is law, and I am answerable to no one". The more

26   unilateral power the District Attorney's office takes, the more it subverts

27   our Constitution(s) and violates the defendant's right to the due process of

28   law which is a fundamental guarantee. Each intrusion into the dark area

1  beyond the District Attorney's constitutional role sets a precedent that could

2  unbalance our judicial system for decades, if not forever. The District's

3  Attorney's office, far from enforcing the law, has determined that the checks

4  and balances that protect our democratic and judicial system by supporting

5  the testimony of the prosecution's witness, Warren A. Woodberry, even though

6  the prosecutor themselves are consciously aware that his testimony on 01/23/

7  2007 established not only a credibility issue, but that Warren A. Woodberry

8  essentially impeached himself with his original statements and information

9  given on 01/04/2007 against the testimony under oath on 01/23/2007.

10              And what of the Judges elected by the people who condone this

11  subversion of the law perpetuated by the District Attorney's office, and

12  allow these things to continue time after time after time within their

13  courtrooms? The Judges continue to condone the outrageous "miscarriage of

14  justice" by the District Attorney's office towards defendant's without fail.

15  The current conditions of the California Department of Corrections and

16  Rehabilitation with repects to the overcrowding issue,is based on how the

17  District Attorney's office is allowed to continue to manipulate the court-

18  rooms, circumvent the intent of the legal system, and subvert the power that

19  should be that of the Judges who sit upon the bench. The District Attorney

20  continues to perpetuate comtempt for the rules of law, and the Constitutions

21  of both the United States and the State of California, alternately invoking

22  or dismissing them according to the expediency of the moment, all under the

23  watchful eyes of the justices who seem to follow in step, instead of taking

24  the lead as their position was intended. At what point does the Courts regain

25  the appropriate title of "Honorable", or has that description become extinct?

26  It seems the Courts have moved aside, allowing the District Attorney's office

27  to prosecute AND establish judgment as they see fit, violating a defendant's

28  true right to due process over and over again.

1    When innocent people go to prison, guilty people remain free to

2    continue committing crimes. Being tough on crime SHOULD mean convicting the

3    guilty, while protecting the innocent, not simply convicting "someone". Having

4    been previously convicted 25 years prior of one's present arrest for one

5    crime at one point in one's life, DOES NOT constitute being retried,

6    presumed guilty and being extorted into accepting guilt for a crime never

7    committed, under the threat of receiving a life imprisonment term if found

8    guilty by a jury, based on the presentation of false evidence and recanted

9    and contradicted testimony, which this petitioner's appointed counsel failed

10   to adequately address. The witness Warren A. Woodberry, was willing to

11   commit perjury under the District Attorney's guidance. The appointed counsel

12   failed to impeach the Preliminary Hearing testimony of the witness under oath,

13   failed to address the issue of the intentional failure of the witness to

14   produce critical subpoenaed evidence in the surveillance video recorded on

15   01/04/2007, and essentially advised this petitioner in open court, that he,

16   as appointed counsel, was searching for a reduced charge other than robbery,

17   based on evidence retained in the testimony at the Preliminary Hearing on

18   01/23/2007. At some point, wrongful convictions must be taken seriously.

19   Who pays when someone is in fact wrongly convicted or extorted into accepting

20   a plea agreement based on one's belief that appointed counsel is in fact

21   ineffective and not loyal to the defendant himself? Innocent human beings are

22   being imprisoned for crimes that they did not in fact commit, yet have no

23   power or knowledge to properly defend themselves against. No one – not the

24   alleged victims, not the alleged victims family, the community nor law

25   enforcement – benefits when the wrong person is placed behind bars.

26   The actions of the prosecutor's witness, Warren A. Woodberry,

27   as he himself was allowed to manipulate the evidence and the alleged "facts",

28   misrepresent the "truth", create sufficient suspicion with regards to the

1    witnesses intent. These factors, followed by the fact that the witness inten-

2    tionally failed to produce the surveillance video recorded on 01/04/2007 as

3    subpoenaed to do so, establish a "highly unusual behavior" with regards to

4    the truthfulness of the witnesses interpretation of the events of 01/04/2007.

5    The facts that the ability of the witness to embellish, fabricate, recant and

6    misrepresent information and statements, and have these embellishments,

7    fabrications, recantations and misrepresentations used against this defendant

8    are not merely depressing, but a true insult to our system of justice and due

9    process guarantees which this petitionerwas entitled to receive. The prose-

10   cution witness' "perception" of the reality of the evening of 01/04/2007 was

11   described differantly between 01/04/2007 to Oceanside Police Officer J.

12   Romano and the testimony under oath presented on 01/23/2007 at the Preliminary

13   Hearing. The only direct piece of evidence that would not have changed between

14   01/04/2007 and 01/23/2007, was the surveillance video recorded, which was in

15   the possession of the witness at one point, instructed to be produced, and

16   intentionally kept from being submitted to this petitioner by Warren A. Wood-

17   berry on 01/23/2007, in order to establish this petitioner's innocence as

18   continuously claimed. The failure to produce the subpoenaed surveillance

19   video on 01/23/2007 DID IN FACT deprive this petitioner of his constitutional

20   guarantee to present the evidence in this petitioner's behalf that would have

21   established this petitioner's innocence with regards to the allegations

22   against him at that time.

23          Did the intentional failure to produce the surveillance video

24   recorded on 01/04/2007, subpoenaed by this petitioner, violate this petition-

25   er's due process guarantees as presented before this Court? As such, did the

26   elements of "force" and "fear" appear within the evidence and testimony

27   presented on 01/23/2007 at the Preliminary Hearing, establish the sufficient

28   evidence required to bind this petitioner over to the Superior Court for

-73-

1  the violation of Penal Code Section §211, a robbery...OR...is this petitioner

2  entitled to a reversal of the Preliminary Hearing findings and as such,

3  should this petitioner be remanded back to the Municipal Court of the State

4  of California, County of San Diego, for a new Preliminary Hearing? If there

5  is a one percent chance that there was in fact perjured testimony at the

6  Preliminary Hearing, or that the surveillance video recorded on the evening

7  of 01/04/2007 DID in fact contain the innocence of this petitioner, then

8  fairness compels this Court to re-examine this case once again. AND...if

9  these factors are deemed sufficiently important, and this petitioner is grant-

10  ed the fundamental right(s) with respects to the presumption of innocence, in

11  "good faith", this Court would be compelled to grant this petitioner's

12  Petition for Writ of Habeas Corpus and grant this petitioner a new hearing in

13  order to adequately defend himself against the allegations as charged.

14      I, the undersigned, say: I am the Petitioner in this Cause

15  of Action. I declare under penalty of perjury under the laws of the State of

16  California that the foregoing allegations and statements are true and correct,

17  except as matters that are stated on my information and belief, and as to

18  those matters, I believe them to be true.

19      Dated this 15th day of January, 2008 at the Sierra Conservation

20  Center located at 5150 O'Byrnes Ferry Road in the city of Jamestown, Calif-

21  ornia 95327.

22

23  DATED:   January 15, 2008            Respectfully Submitted,

24

25

26                                      Dennis Everett Lacy      F-64225
                                        Petitioner/Defendant IN PRO SE
27                                      Sierra Conservation Center
                                        5150 O'Byrnes Ferry Road    09-08L
28                                      Jamestown, California    95327

-74-

01 Dennis Everett Lacy    F-64225
   Mule Creek State Prison
02 4001 Highway 104
   P.O. Box 409000    M1A-04up
03 Ione, California  95640
        IN PRO SE



FILED

JUN 1 8 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

05              IN THE DISTRICT COURT OF THE UNITED STATES

06              IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

09 DENNIS EVERETT LACY,
                DEFENDANT / PETITIONER,
10
   Vs                                       '08 CV 1083 W BLM
11                                  CIVIL NUMBER: _____
                                    (TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)
12 PEOPLE OF THE STATE OF CALIFORNIA,
                PLAINTIFF / RESPONDENT,
13 JAMES TILTON,
      SECRETARY OF CORRECTIONS,          DECLARATION OF DENNIS EVERETT LACY
14 CALIFORNIA DEPARTMENT OF                 IN SUPPORT OF PETITION FOR
      CORRECTIONS & REHABILITATION,             WRIT OF HABEAS CORPUS
15 THE ATTORNEY GENERAL OF THE
      STATE OF CALIFORNIA,
16                RESPONDENT,

18 I, DENNIS EVERETT LACY, declare as follows:

19     1.  On the evening of January 4th, 2007, I entered the Wal-Mart Stores, Inc. facility located at 3405
           Marron Road in the city of Oceanside, California 92056, with a "Rascal Flatts" compact disc in
20         my left EXTERIOR breast pocket of the jacket I was wearing that evening;

21     2.  Upon exiting the Wal-Mart Stores, Inc. facility described, I had in my possession the compact
           disc previously described in the location previously described, AND only that merchandise
22         which I had subsequently PAID FOR at the register prior to exiting the facility; informed
           WARREN A. WOODBERRY that "I did not" exit the store with merchandise I had not paid for.
23         At this time WARREN A. WOODBERRY "DID NOT" have anything in his hands (no compact
           disc casing, etc.);
24

25     3.  Upon exiting the Wal-Mart Stores, Inc. facility described, I was approached by an individual
           who asked me if I had exited the store with any merchandise which I HAD NOT paid for. This
26         individual was later identified as WARREN A. WOODBERRY, and was at that time employed
           by the Wal-Mart Stores, Inc. company as a Loss Prevention / Asset Protection Officer. I
27         informed WARREN A. WOODBERRY that "I did not" exit the store with merchandise I had not
           paid for. At this time WARREN A. WOODBERRY "DID NOT" have anything in his hands (no
28         compact disc casing, etc.);

4. WARREN A. WOODBERRY asked me about the compact disc that I had in my left EXTERIOR jacket pocket, and advised me that he had observed me conceal the compact disc in my pocket in the store. I extracted the compact disc from my left EXTERIOR jacket pocket and attempted to show it to WARREN A. WOODBERRY for inspection, advising WARREN A. WOODBERRY that the compact disc was my personal property, had been in my possession when I had originally entered the store, and was in fact previously used (scratched and in used condition);

5. WARREN A. WOODBERRY again advised me that he had observed me conceal the compact disc within the store, and asked me to return to the store with him as I had committed "theft". I attempted to again inform WARREN A. WOODBERRY that the compact disc was in fact mine;

6. WARREN A. WOODBERRY testified under oath at the Preliminary Hearing conducted on 01/23/2008 that he specifically observed this Petitioner conceal the compact disc he referred to, in the INTERIOR left pocket of Petitioner's jacket. WOODBERRY testified that he had visual observation of this Petitioner 100% of the time I was in the facility, therefore, there was no opportunity to have taken the compact disc from the INTERIOR pocket and deposit it in the EXTERIOR pocket without WOODBERRY's observation;

7. WARREN A. WOODBERRY "grabbed" me and began to assault me outside of the Wal-Mart Stores, Inc. facility described on the evening of 01/04/2007, for what I contend was without cause and without being provoked by me;

8. At NO POINT, on 01/04/2007, during the incident outside of the Wal-Mart Stores, Inc. described, did I ever attempt to strike, kick, punch or physically assault WARREN A. WOODBERRY in any fashion, at any point in time;

9. Court Appointed Counsel, DAVID A. THOMPSON did retrieve from my vehicle, an empty compact disc casing belonging to the compact disc in my possession when exiting the Wal-Mart Stores, Inc. facility described on the evening of 01/04/2007, under the supervision of other witnesses. The compact disc casing was subsequently given to the District Attorney's office as part of "discovery";

10. I informed Court Appointed Counsel – DAVID A. THOMPSON, that the surveillance video captured and recorded on the evening of 01/04/2007 within the Wal-Mart Stores, Inc. facility described, would establish credible evidence if produced, that I did not in fact exit the Wal-Mart Stores, Inc. facility on the evening of 01/04/2007 with merchandise that I had not in fact, paid for;

11. I informed Court Appointed Counsel – DAVID A. THOMPSON, that the testimony of WARREN A. WOODBERRY at the Preliminary Hearing on 01/23/2007, was contradictory and inconsistent with the statements and information which WARREN A. WOODBERRY had presented to Oceanside Police Officer JUSTIN ROMANO (#1284) on the evening of 01/04/2007, which initiated the arrest of this Petitioner for the alleged violation of Penal Code Section §211, a Robbery;

12. WARREN A. WOODBERRY submitted a document at the Preliminary Hearing which WOODBERRY alleged was given to him by MICHAEL STEWART. This document allegedly described what MICHAEL STEWART had observed with regards to the incident outside of the Wal-Mart Stores, Inc. facility described on the evening of 01/04/2007. A recently discovered Declaration of MICHAEL STEWART dated February 29th, 2008, submitted with regards to civil litigation presently in the Superior Court of California, San Diego County's North County Division, Case Name LACY vs WOODBERRY/STEWART/WAL-MART STORES, INC., Case Number 37-2007-00079792-CU-CR-NC, specifically declares that MICHAEL STEWART "did not" in fact give any individual, nor any entity, any document with regards to the incident outside

01  of the Wal-Mart Stores, Inc. facility on 01/04/2008 {See Exhibit "H"}. Therefore, it can be
    inferred that the document WARREN A. WOODBERRY submitted to the Court on 01/23/2007
02  was in fact fraudulent and suspicious in nature;

03  13.  Statements within the Sentencing Transcripts of February 28th, 2007, establish that I did not
    believe in the terms of the Plea Agreement established between the District Attorney and
04  Appointed Counsel, DAVID A. THOMPSON. This Petitioner believed that Court Appointed
    Counsel had acted in "bad faith" and did not have this Petitioner's interests in hand;

05

06    I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and
    correct. Executed this 10th day of July, 2008 at the Mule Creek State Prison located at 4001 Highway 104, P.O.
07  Box 409000 in the city of Ione, California 95640.

08

09  DATED: June 15th, 2008                          Respectfully Submitted,

10

11                                      /S/  Dennis Everett Lacy

12                                           Dennis Everett Lacy      F-64225
                                             Petitioner/Defendant IN PRO SE
13                                           Mule Creek State Prison
                                             4001 Highway 104
14                                           P.O. Box 409000          M1A-04up
                                             Ione, California    95640

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

FILED

JUN 1 8 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**DENNIS EVERETT LACY,**
*Defendant / Petitioner IN PRO SE*

Vs.

CASE NUMBER: '08 CV 1083 W BLM

PROOF OF SERVICE BY MAIL

**PEOPLE OF THE STATE OF CALIFORNIA**
*Plaintiff / Respondent,*
**JAMES TILTON – Secretary of Corrections,**
**CALIFORNIA DEPARTMENT OF**
**CORRECTIONS and REHABILITATION,**
**THE ATTORNEY GENERAL OF THE**
**STATE OF CALIFORNIA,**
*Respondent,*

I hereby certify that on _____, 2008, I served a copy of the attached document(s):

**PETITION FOR WRIT OF HABEAS CORPUS // STATEMENT OF FACTS AND ARGUMENTS and MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS; REQUEST FOR APPOINTMENT OF COUNSEL; REQUEST FOR EXPEDITED HEARING // EXHIBITS "A" thru "J" // MOTION AND DECLARATION UNDER PENALTY OF PERJURY IN SUPPORT OF MOTION TO PROCEED IN FORMA PAUPERIS // DECLARATION OF DENNIS EVERETT LACY IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS // PRISON CERTIFICATE // TRUST ACCOUNT WITHDRAWL AUTHORIZATION**

by placing a copy in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the United States Mail at the Mule Creek State Prison, located at Highway 104, P.O. Box 409000 in the city of Ione, California 95640:

1] [XX] Office of the Clerk
United States District Court
Southern District of California
880 Front Street  #4290
San Diego, California  92101-8900

2] [   ] Office of the Attorney General
P.O. Box 944255
Sacramento, California  94244

I declare under penalty of perjury that the foregoing is true and correct.

Dennis Everett Lacy     F-64225
Petitioner IN PRO SE

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

Dennis Everett Lacy

FILING FEE PAID

I/P MOTION FILED

COPIES SENT

DEFENDANTS

People of the State of CA,

**FILED**

JUN 18 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          DEPUTY

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**   Amador
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Dennis Everett Lacy
PO Box 409000
Ione, CA 95640
F-64225

ATTORNEYS (IF KNOWN)

'08 CV 1083 W BLM

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**
(For Diversity Cases Only)

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

## 28 U.S.C. 2254

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☐ Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☒ 530 General | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ Security Act | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding   ☐ 2 Removal from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23   DEMAND $   Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**   JUDGE   Docket Number

DATE   6/18/2008

SIGNATURE OF ATTORNEY OF RECORD

R Muller