01  Dennis Everett Lacy   F-64225
    Mule Creek State Prison
02  4001 Highway 104
    P.O. Box 409000   M1A-04up
03  Ione, California 95640
            **IN PRO SE**
04

NUNC PRO TUNC

JUN 2 7 2008

FILED

2008 JUL -3  AM 10: 21

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

05          **IN THE DISTRICT COURT OF THE UNITED STATES**   *La*_____DEPUTY
                                                    BY_____
06          **IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

07

08

09  DENNIS EVERETT LACY,
                    **DEFENDANT / PETITIONER,**
10
    Vs
11                                          **CIVIL NUMBER:**  **3:08-cv-01083-W-BLM**
                                            (TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)
12  PEOPLE OF THE STATE OF CALIFORNIA,
                    **PLAINTIFF / RESPONDENT,**
13  JAMES TILTON,                                  **ADDENDUM TO**
      SECRETARY OF CORRECTIONS,          **STATEMENT OF FACTS AND ARGUMENTS and**
14  CALIFORNIA DEPARTMENT OF             **MEMORANDUM OF POINTS AND AUTHORITIES**
      CORRECTIONS & REHABILITATION,        **IN SUPPORT OF PETITION FOR WRIT OF**
15  THE ATTORNEY GENERAL OF THE             **HABEAS CORPUS; REQUEST FOR**
      STATE OF CALIFORNIA,                    **APPOINTMENT OF COUNSEL;**
16                  **RESPONDENT,**           **REQUEST FOR EXPEDITED HEARING**

17

18

19

20

21

22

23

24

25                                          **PETITIONER PROCEEDING**

26                                              **IN PRO SE**

27

28

**TABLE OF CONTENTS**

| I. | Introduction and Overview | 1 |
|---|---|---|
| II. | Statement of the Case | 5 |
| III. | Issues Necessitating Review | 9 |
| IV. | Arguments and Memorandum of Points and Authorities | 11 |
| A. | Habeas Corpus is a Proper Vehicle for the Presentation of Petitioner's Claims | 11 |
| B. | Ineffective Assistance of Counsel – Defense Counsel David A. Thompson | 12 |
| C. | Failure to Impeach Warren A. Woodberry of his Prior / Inconsistent Statement of an Issue Pivotal to the Prosecution's Theory of the Case | 14 |
| D. | Failure to Challenge Woodberry's Testimony – No Video Images of Petitioner/ Defendant Within the Wal-Mart Stores, Inc. Facility Interior Were Available When Subpoenaed to Produce | 17 |
| V. | Prosecution Error – Deputy District Attorney R. Augst | 21 |
| VI. | Insufficient Evidence | 23 |
| VII. | Conclusion | 24 |
| VIII. | Request For Appointment of Counsel & Request For Expedited Hearing | 27 |

**ATTACHMENTS**

"A"   Wal-Mart Stores, Inc. Loss Prevention Apprehension Report *TYPED* and dated 01/05/2007; Submitted by WARREN A. WOODBERRY;

"B"   Proof of Service / Declaration of Diligence from San Diego County Sheriff's Department Civil Office declaring process service of described documents in Civil Case Number 37-2007-00079792-CU-CR-NC, was attempted on WARREN A. WOODBERRY on 12/18/2007 @ 12:51 pm. Sheriff's Representative informed WARREN A. WOODBERRY was "no longer an employee" of the Wal-Mart Stores, Inc. facility.

"C"   Proof of Service / Declaration of Diligence / Notice of Action Taken from San Diego County Sheriff's Department Civil Office declaring process service of described documents in Civil Case Number 37-2007-00079792-CU-CR-NC, was attempted on WARREN A. WOODBERRY on 01/09/2008 @ 4:20 pm at the 213 FRYMAN COURT address declared in Oceanside, California 92057 {Refer to Exhibit "E"}. Sheriff's Representative informed by Base Legal Services that WARREN A. WOODBERRY was "unknown to have been in base housing".

"D"   Declaration of MICHAEL STEWART in Support of Special Motion to Strike Plaintiff's Complaint Pursuant to Code of Civil Procedure Section §425.16 [Anti-Slapp Statute] Dated February 29th, 2008; Submitted by ROBERT A. ORTIZ, Esq. {Attorney @ Law} with regards to Civil Complaint {Case Name: LACY vs. WOODBERRY/STEWART/WAL-MART STORES, INC. - Case Number #37-2007-00079792-CU-CR-NC} on behalf of Defendant MICHAEL STEWART;

"E"   United States Marine Corps response dated 05/13/2008 regarding Petitioner's request for an investigation into Warren A. Woodberry and his claim to have resided at the residence located at 213 Fryman Court. Responds states Woodberry "does not reside aboard Camp Pendleton NOR has Woodberry ever occupied those quarters.

01

# CITINGS

02  Berger v United States (1935) 295 U.S. 78
                                                                        21, 23

03  Chapman v California (1967) 386 U.S. 18, 24
                                                                        21

04  Hudson v Louisiana (1981) 450 U.S. 40
                                                                        23

05  In re Hochberg (1970) 2 Cal.3d 870, 875
                                                                        11

06  In re Neely (1993) 6 Cal.4th 901
                                                                        25

07  Merrill v Superior Court (1994) 27 Cal.App.4th 1586, 1594
                                                                        22

08  People v Adamson (1949) 34 C.2d 320, 327, 210 P.2d 12, 16
                                                                        26

09  People v Cox (1936) 18 CA.2d 283; 63 P.2d 849
                                                                        26

10  People v Cox (1991) 53 Cal.3d 618, 656
                                                                        13

11  People v Davis (1973) 31 Cal.App.3d 106
                                                                        21

12  People v Dickens (July 5, 2005) Cal.App.4th ___, D.J. D.A.R. July 6, 2005 @ Pg. 8113
                                                                        24

13  People v Donaldson (2001) 93 Cal.App.4th 916
                                                                        13

14  People v Fosselman (1983) 33 Cal.3d 572
                                                                        12, 21

15  People v Freeman (1994) 8 Cal.4th 450, 513
                                                                        13

16  People v Gilbert (1944) 25 C.2d 422, 154 P.2d 657
                                                                        26

17  People v Hill (1998) 17 Cal.4th 800
                                                                        21, 23

18  People v Hodge (1957) 137 CA.2d 205, 320 P.2d 589
                                                                        26

19  People v Holt (1997) 15 Cal.4th 619, 703
                                                                        13

20  People v Kasim (1997) 56 Cal.App.4th 1360, 1378
                                                                        23

21  People v Kelley (1977) 75 Cal.App.3d 672, 690
                                                                        23

22  People v Johnson (2003) 114 Cal.App.4th 284
                                                                        13

23  People v Lagunas (1984) 8 Cal.4th 1030, 1036
                                                                        13

24  People v Mayorga (1985) 171 Cal.App.3d 929, 940
                                                                        21

25  People v Mungia (1991) 234 Cal.App.3d 1703
                                                                        26

26  People v Pope (1979) 23 Cal.3d 412, 426
                                                                        12

27  People v Rodrigues (1994) 8 Cal.4th 1060, 1126
                                                                        13

28

## CITINGS

People v Ruthford (1975) 14 Cal.3d 399, 405-406     22

People v Varona (1983) 143 Cal.App.3d 566, 570     22

People v Villa (1980) 109 Cal.App.3d 360, 366-367     21

Strickland v Washington (1984) 466 U.S. 668     13

United States v Kojayan (9th Cir. 1993) 8 F.3d 1315     21

## EVIDENCE CODES

Evidence Code Section §780 (c), (g); CALCRIM 318}     16

Evidence Code Section §780 (k)     16

Evidence Code Section §350     19

## PENAL CODE SECTIONS

Penal Code §118(a)     12

Penal Code Section §211 – Robbery     Throughout

Penal Code Section §236 and §237 {CALCRIM 1240, 1242}     19

Penal Code Section §1181     1, 21

Penal Code Section §1181.6     23

Penal Code Section §1473(b)(1)     27

## RULES OF PROFESSIONAL CONDUCT

Rules Prof. Conduct, Rule 5-220     22

01 | Dennis Everett Lacy    F-64225
Mule Creek State Prison
02 | 4001 Highway 104
P.O. Box 409000    M1A-04up
03 | Ione, California  95640
        **IN PRO SE**

04

05 |            **IN THE DISTRICT COURT OF THE UNITED STATES**

06 |          **IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

07

08

09 | DENNIS EVERETT LACY,
                    **DEFENDANT / PETITIONER,**

10 |
Vs                                    CIVIL NUMBER:__**3:08-cv-01083-W-BLM**

11 |                                    (TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

12 | PEOPLE OF THE STATE OF CALIFORNIA,
                    **PLAINTIFF / RESPONDENT,**
13 | JAMES TILTON,                            **ADDENDUM TO**
        SECRETARY OF CORRECTIONS,   **STATEMENT OF FACTS AND ARGUMENTS and**
14 | CALIFORNIA DEPARTMENT OF     **MEMORANDUM OF POINTS AND AUTHORITIES**
        CORRECTIONS & REHABILITATION,   **IN SUPPORT OF PETITION FOR WRIT OF**
15 | THE ATTORNEY GENERAL OF THE        **HABEAS CORPUS; REQUEST FOR**
        STATE OF CALIFORNIA,               **APPOINTMENT OF COUNSEL;**
16 |                    **RESPONDENT,**        **REQUEST FOR EXPEDITED HEARING**

17

18 |                                **I.**

19 |                   <u>**INTRODUCTION AND OVERVIEW**</u>

20 |        TO THE HONORABLE JUSTICES OF THE DISTRICT COURT OF THE UNITED STATES,

21 | IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA; COMES NOW, DENNIS EVERETT

22 | LACY, the Petitioner in the above-entitled Cause of Action, and moves this Honorable Court for a review of

23 | the attached information within the Addendum to the previously filed Petition for Writ of Habeas Corpus and

24 | submits Statement(s) of Facts and Arguments and Memorandum of Points and Authorities in reference to said

25 | Petitioner, based on beneficial evidence, newly discovered after the intial filing of said Petition.

26 |        PLEASE TAKE NOTICE: This Petition for Writ of Habeas Corpus was based on the grounds set

27 | forth in Penal Code Section §1181, particularly addressing: (1) ineffective assistance of appointed counsel; (2)

28 | prosecution error/misconduct; (3) submittal of false/manufactured/fabricated evidence; and (4) insufficient

01   evidence to sufficiently substantiate the required elements of "force" and "fear" necessary to guarantee a

02   finding of "guilty" to the specific violation of Penal Code §211, a Robbery, and the bind-over from Municipal

03   Court to the Superior Court.

04        The Petition for Writ of Habeas Corpus was based upon: (1) the Court's file in this action; (2) the

05   handwritten statement of WARREN A. WOODBERRY dated 01/04/2007 {See Exhibit "A"}; (3) the newly

06   discovered statement submitted by WARREN A. WOODBERRY in his report submitted to the Wal-Mart

07   Stores, Inc. dated 01/05/2007 {See Attachment "A"}; (4) the statements of WARREN A. WOODBERRY

08   within the Police Report submitted by Oceanside Police Officer J. Romano dated 01/05/2007 {See Exhibits "C,

09   "D", and "E"}; (5) the Preliminary Hearing transcripts dated 01/23/2007 {See Exhibit "H"}; (6) the newly

10   discovered Declaration of MICHAEL STEWART dated 02/29/2008 {See Attachment "D"} and submitted as

11   evidence in San Diego Superior Court Case Number 37-2007-00079792-CU-CR-NC by MICHAEL

12   STEWART's attorney of record, ROBERT A. ORTIZ, Esq.; (7) the newly discovered Proof of Service

13   document returned by the San Diego County Sheriff's Department dated 12/18/2007 {See Attachment "B"};

14   (8) the newly discovered Proof of Service document returned by the San Diego County Sheriff's Department

15   dated 01/09/2008 {See Attachment "C"}; (9) the newly discovered United States Marine Corps response dated

16   05/13/2008 regarding investigation into Warren A. Woodberry and his claim to have resided at the residence

17   located at 213 Fryman Court {See Attachment "E"}. Response states that Woodberry "does not reside aboard

18   Camp Pendleton NOR has Woodberry ever occupied those quarters"; and such matters, facts, documents and/or

19   physical evidence, previously submitted and newly discovered, that may be so brought to this Court's attention

20   during any Evidentiary Hearing, if so granted.

21        Newly discovered evidence, that being the Declaration of MICHAEL STEWART dated

22   February 29th, 2008, submitted with regards to Superior Court Case Number #37-2007-00079792-CU-CR-NC

23   {See Attachment "D"}, essentially declaring the documented evidence submitted to the Court at the

24   Preliminary Hearing on 01/23/2007, by the witness WARREN A. WOODBERRY {See Exhibit H"}, as

25   fraudulent in its entirety. If found to be of critical importance as to the intentions of WARREN A.

26   WOODBERRY against this Petitioner, the intentional submission of this fraudulent evidence significantly taints

27   the testimony of WOODBERRY in its whole, diminishes the credibility of the statements, information,

28   testimony and authenticity of the evidence submitted by and compels this Court to reverse the findings of the

01  Court, based on the insufficiency of the evidence, and vacating the Plea Agreement induced by the apparent

02  ineffective assistance of court appointed counsel, as counsel failed to properly investigate the authenticity of the

03  document presented and its origin. Had counsel in fact investigated the document and discovered that

04  MICHAEL STEWART *"had not"* in fact presented the document to WARREN A. WOODBERRY as alleged,

05  then appointed counsel would have had strong evidence to establish that this Petitioner's claim of innocence

06  had weight. Counsel would have had strong evidence to establish WARREN A. WOODBERRY's intentions as

07  and motive towards this Petitioner, whether lawful or criminal.

08        There is a doctrine with regards to the "Doctrine of Clean Hands". It is the responsibility and the

09  obligation of not only the witness himself, WARREN A. WOODBERRY to appear before the Court with

10  "clean hands" prior to testifying in any criminal matter, but it is also the responsibility and obligation of the

11  Prosecuting Attorney and the Appointed Counsel (David A. Thompson) to ascertain that the witness appears

12  before the Court in order to testify, with "clean hands". WARREN A. WOODBERRY did not in fact appear

13  before the Court at the Preliminary Hearing on 01/23/2007 with "clean hands". Previously this

14  Petitioner/Appellant addressed the issue of the credibility of the witness, WARREN A. WOODBERRY. The

15  issues were plentiful and the evidence was substantial to establish that the witness, WARREN A.

16  WOODBERRY did in fact have a credibility issue, which should have been addressed by the Court(s). Now it

17  seems that evidence has been discovered through the submittal of the Declaration of February 29, 2008 from

18  MICHAEL STEWART {See Attachment "D"}, the witness of whom WARREN A. WOODBERRY depended

19  on and stated during the Preliminary Hearing, had supplied a hand written document with regards to the

20  incident of 01/04/2007 {See Exhibit "H"}, that MICHAEL STEWART in fact DID NOT, by his own

21  declaration under the penalty of perjury, submit any document to WARREN A. WOODBERRY in order to

22  submit to the Court at the Preliminary Hearing scheduled for 01/23/2007. Therefore, it is this Court's

23  responsibility and obligation at this time, to reconsider this Petitioner's contention that WARREN A.

24  WOODBERRY did in fact falsify, manufacture and/or fabricate direct evidence before the Court at the

25  Preliminary Hearing of 01/23/2007, that being the document WARREN A. WOODBERRY claimed was

26  written by MICHAEL STEWART and given to WARREN A. WOODBERRY to present before the Court on

27  01/23/2007. This factor in itself has significant undertones with regards to the credibility of WARREN A.

28  WOODBERRY, his testimony and any evidence which WARREN A. WOODBERRY may have presented to

01  the Court in the criminal matter against this Petitioner/Appellant, and as such, creates the evidence to justify

02  this Petitioner/Appellant receive an Evidentiary Hearing with respects to the entirety of WARREN A.

03  WOODBERRY's actions and intentions (prior statements/information; evidence submitted; testimony

04  regarding MICHAEL STEWART as a direct witness to the incident of 01/04/2007; and MICHAEL

05  STEWART's denial of witnessing the events and/or submitting any written document to WARREN A.

06  WOODBERRY to present before the Court at the Preliminary Hearing of 01/23/2007 against this

07  Petitioner/Appellant

08       There is the notion with regards to one's actions and if the actions in and of themselves at some point

09  distinguish one's "CONSCIOUSNESS OF GUILT" in some form and/or fashion. "CONSCIOUSNESS OF

10  GUILT" refers to the actions a person may take which displays that person is "aware" what he/she did was

11  wrong. The inconsistencies and contradictions in WARREN A. WOODBERRRY's original statements and

12  information presented to Oceanside Police Officer JUSTIN ROMANO on the evening of 01/04/2007 are

13  numerous in comparison to the testimony extracted under oath during the Preliminary Hearing conducted on

14  establish his innocence as proclaimed.

15       From the very inception, this Petitioner has contended that the witness' intentions were incorrect and

16  without just cause. Unfortunately, no one listened. And it has taken excessive work on the part of this Petitioner

17  in order to finally secure significant evidence to establish the possibility of this Petitioner's true innocence to

18  the allegations as set forth, and that the witness WARREN A. WOODBERRY has in fact been untruthful in his

19  quest to convict this Petitioner of a crime which he did not in fact commit, in order to avoid himself having to

20  admit, that he was wrong in his actions against this Petitioner.

21       There is an established notion that an individual is innocent until such time as he/she is proved

22  "guilty". Appointed counsel abandoned that notion in establishing an adequate and aggressive defense. The

23  Sixth Amendment guarantees the right to a defendant to call witnesses to promote his innocence. Appointed

24  counsel failed with regards to this right towards this Petitioner. Had counsel called Oceanside Police Officer

25  JUSTIN ROMANO to the stand at the Preliminary Hearing of 01/23/2007, he would have obtained testimony

26  from this Officer that would have been not only beneficial to this Petitioner, but also valuable in the

27  impeachment process of the prosecution's witness, WARREN A. WOODBERRY, his prior statements, the

28  information he presented, the evidence and its origin and authenticity, and the testimony obtained under oath

01 during WOODBERRY's period on the witness stand. Had appointed counsel investigated the origin and

02 authenticity of the document WARREN A. WOODBERRY submitted to the Court as from MICHAEL

03 STEWART, counsel would have established evidence potentially leading to an exclusion of WOODBERRY's

04 testimony in its entirety, therefore, dismissing the allegations against this Petitioner and granting this Petitioner

05 an opportunity to regain his freedom.

06       Therefore, it is within this Courts authority to now right the wrong, grant the Petition for Writ of

07 Habeas Corpus, vacate the Plea Agreement induced, and grant this Petitioner the opportunity to establish the

08 truth with regards to these matters at hand.

09 **II.**

10 **STATEMENT OF THE CASE**

11       On January 4th, 2007, when exiting the Wal-Mart Stores, Inc. facility located in the city of Oceanside,

12 California 92054, this Petitioner was confronted by Loss Prevention /Asset Protection Officer WARREN A.

13 WOODBERRY outside of the facility, and asked if he had exited the store with any merchandise that Petitioner

14 had not paid for. Petitioner responded that he had not. The Petitioner was informed that he had been observed

15 taking a CD from the store and asked if there was a CD on his person. The Petitioner was holding the

16 merchandise Petitioner had just purchased in a bag in Petitioner's left hand, and with his right hand, reached

17 into his jacket pocket and produced a CD from his left "EXTERIOR" jacket pocket, and advised Woodberry

18 that the CD was this Petitioner's property and that the Petitioner had the CD on his person when he entered the

19 store earlier that evening. This Petitioner was attempting to inform Woodberry that the CD casing to the

20 specific CD in this Petitioner's possession, was in this Petitioner's vehicle, which was parked in the parking

21 area. Woodberry continued to claim that the CD had been taken from the store, and this Petitioner continued to

22 state that "the CD was mine." Without physically inspecting the described compact disc, and without warning,

23 nor justification, Woodberry grabbed this Petitioner by his clothing and began to wrestle this Petitioner to the

24 ground, beginning what this Petitioner can only explain as a vicious assault with the use of an extensive amount

25 of force. During the struggle, this Petitioner continued to try to inform Woodberry that the CD was the

26 Petitioner's property, only to have Woodberry continue the assault. Woodberry continued to wrestle the

27 Petitioner back into the facility, and at one point, literally picked the Petitioner up from the ground and

28 slammed him to the floor on Petitioner's stomach. Woodberry then climbed on this Petitioner's back, and

01 continued to assault this Petitioner without remorse. This Petitioner attempted to break free of the assault by

02 Woodberry and tried to defend himself to the best of his ability. AT NO TIME, did this Petitioner EVER

03 attempt to strike Woodberry with any blows, kicks, punches and/or physical contact. This petitioner's only

04 intent was to break free of Woodberry's assault and obtain assistance somehow. At one point, this Petitioner

05 finally went limp, at which time, Woodberry lifted this Petitioner to his feet and subsequently was escorted to

06 an office area where this Petitioner informed Woodberry that his interpretation was incorrect and that this

07 Petitioner would "sue" Woodberry and the store. At that point, Woodberry called the Oceanside Police

08 Department and requested assistance. Oceanside Police Officers C. WILSON and T. RINGROSE arrived at the

09 Wal-Mart Stores, Inc. facility, entered the office area and proceeded to search this Petitioner. During this time,

10 Woodberry was explaining the situation to Oceanside Police Officer C. WILSON, and after completing his

11 description of the incident, it was Oceanside Police Officer C. WILSON's decision to issue a citation to this

12 Petitioner and release him. It was at this time that Woodberry exited the office area and was out of the area for

13 approximately 10 minutes. At that time, Oceanside Police Officer J. ROMANO entered the office area and

14 instructed this Petitioner that he was being placed under arrest for the violation of Penal Code Section §211, a

15 Robbery. This arrest was based on the information within the statement that Oceanside Police Officer J.

16 Romano had solicited from Woodberry outside of the office area. Woodberry instructed Oceanside Police

17 Officer J. Romano that there was surveillance video available of the incident, and Woodberry was instructed by

18 Oceanside Police Officer J. Romano to replay the surveillance video at that time. Woodberry attempted to

19 replay the surveillance video as instructed, but did not succeed. Oceanside Police Officer instructed Woodberry

20 to contact the Oceanside Police Department the following day when the surveillance video was available for

21 viewing and have someone retrieve it as evidence. At that time, Oceanside Police Officer escorted this

22 Petitioner to his patrol vehicle, and subsequently to the Oceanside Police Station for holding until this

23 Petitioner was delivered to the Vista Detention Facility and booked for the allegation as described.

24         Petitioner was ultimately appointed defense counsel via the San Diego County Public Defender's

25 Office [David A. Thompson], and entered an initial plea of "not guilty" to the allegations. Petitioner informed

26 counsel of his position and informed counsel that the surveillance video would in fact exonerate the Petitioner

27 of any "theft" allegations if presented before the Court. The surveillance video was subpoenaed to be viewed at

28 the Preliminary Hearing, which was scheduled for 01/23/2007. Unfortunately, Woodberry failed in not only

01 turning the surveillance video over to the Oceanside Police Department as instructed by Oceanside Police

02 Officer J. Romano on 01/04/2007, but Woodberry also failed to produce the surveillance video as subpoenaed

03 at the Preliminary Hearing on 01/23/2007 as ordered.

04       During testimony at the Preliminary Hearing on 01/23/2007, Woodberry was adamant that he had

05 observed this Petitioner placed the CD Woodberry claimed was taken, in the Petitioner's left *"INTERIOR"*

06 breast pocket of Petitioner's jacket. Woodberry testified he observed this Petitioner 100% of the time as the

07 Petitioner proceeded throughout the store.

08       When confronted outside of the facility and asked about the CD, the Petitioner retrieved a CD (which

09 the Petitioner immediately advised Woodberry was this Petitioner's property and in his possession when he

10 entered the store) from his left *"EXTERIOR"* breast pocket of his jacket.

11       Woodberry advised Oceanside Police Officer JUSTIN ROMANO that this Petitioner became *"irate*

12 *and physically combative – attempting to strike Woodberry in his face with a closed right fist"*, therefore,

13 establishing the elements for Oceanside Police Officer JUSTIN ROMANO to arrest this Petitioner for the

14 violation of Penal Code Section §211, a Robbery.

15       Testimony of Woodberry at the Preliminary Hearing conducted on 01/23/2007, under oath,

16 established the Petitioner was holding a bag of merchandise in Petitioner's left hand when exiting the facility.

17 When the Petitioner produced the CD from his left "EXTERIOR" breast jacket pocket, the CD was produced

18 with the **RIGHT** hand, and extended for Woodberry to inspect. Therefore, it would been IMPOSSIBLE for this

19 Petitioner to make a closed fist with his right hand if the Petitioner had possession of the CD in that designated

20 hand.

21       **IT SHOULD BE NOTED**: It was Woodberry's original claim to Oceanside Police Officer JUSTIN

22 ROMANO on 01/04/2007, that the Petitioner "attempted to strike Woodberry in his face with a closed right

23 fist" Subsequently, during the testimony extracted at the Preliminary Hearing on 01/23/2007, Woodberry

24 abandoned his original allegation that the Petitioner had "attempted to strike Woodberry in his face with a

25 closed right fist", and not only testified the Petitioner HAD NOT attempted to strike Woodberry in his face

26 when confronted outside of the Wal-Mart Stores, Inc. facility described, BUT that Woodberry himself had

27 initiated the physical contact with this petitioner based on Woodberry's *"belief"* that this Petitioner had "lunged

28 to the right in what Woodberry believed was an attempt by this Petitioner to flee."

01        Woodberry claimed on 01/04/2007 to Oceanside Police Officer JUSTIN ROMANO, that surveillance

02   video had been captured of the Petitioner inside the facility with regards to the incident alleged. When

03   requested to replay the surveillance video for Oceanside Police Officer JUSTIN ROMANO on 01/04/2007,

04   Woodberry failed to play back the surveillance video, and was eventually instructed to notify the Oceanside

05   Police Department the following day when the surveillance video was available. The surveillance video was

06   ultimately subpoenaed by the defense prior to the Preliminary Hearing of 01/23/2007. Woodberry failed to not

07   only make the surveillance video available to the Oceanside Police Department as instructed by Oceanside

08   Police Officer JUSTIN ROMANO on 01/04/2007, but Woodberry failed to produce the surveillance video as

09   subpoenaed at the Preliminary Hearing conducted on 01/23/2007. The whereabouts of the surveillance video

10   which once existed, is unknown and has suspiciously never been produced to this date.

11        **IT SHOULD BE NOTED:** Woodberry was subsequently terminated from his employment position as

12   a Loss Prevention/Asset Protection Officer for the Wal-Mart Stores, Inc. entity in 2007, for specific reasons yet

13   unknown to this Petitioner, yet confirmed during discovery within the Superior Court Case Number #37-2007-

14   00079792-CU-CR-NC litigation presently pending entitled LACY vs WOODBERRY/STEWART/WAL-

15   MART STORES, INC. This action in itself should raise suspicion as to WOODBERRY's character issues.

16        **IT SHOULD BE NOTED:** Woodberry claims to have had a CD casing in his hand(s) when

17   confronting the Petitioner outside of the Wal-Mart Stores, Inc. facility described on 01/04/2007. It should be

18   taken into consideration and recognized as suspicious testimony, as Woodberry describes he "grabbed" the

19   Petitioner when Petitioner "lunged to his right" in what Woodberry testified was his "belief" that the Petitioner

20   was attempting to flee. Yet Woodberry fails to address the issue how he successfully accomplished this with the

21   CD casing in his hand(s), nor does Woodberry describe that he dropped any CD casing prior to his physical

22   altercation with this Petitioner.

23        Newly discovered evidence submitted {See Attachment "E"}, establishes that after a thorough

24   investigation as requested by this Petitioner to the United States Marine Corps Base Magistrate regarding

25   WOODBERRY's claim of residence at 213 FRYMAN COURT on the Camp Pendleton Marine Corps Military

26   Base, the Base Magistrate informed this Petitioner that Warren A. Woodberry DID NOT in fact reside at the

27   residence described at 213 Fryman Court as claimed to the Oceanside Police Department, nor had Warren A.

28   Woodberry ever occupied those quarters in the past. Once again, this Petitioner has uncovered and presented

01 │ valuable evidence that should have been discovered by court appointed counsel for the defense as to

02 │ Woodberry's intentional ability to present falsified/fabricated and/or fraudulent statements and/or information

03 │ in his behalf, with regards to this Cause of Actions. This evidence surely should have been discovered by

04 │ appointed counsel in the past and used to impeach Woodberry's ability to tell the truth and been a significant

05 │ issue with respects to Woodberry's credibility as contended by this Petitioner.

06 │ **III.**

07 │ **ISSUES NECESSITATING REVIEW**

08 │    Did Woodberry's intentional submission of manufactured/falsified/fraudulent documentary evidence

09 │ claimed to have from MICHAEL STEWART at the Preliminary Hearing on 01/23/2007, and recently declared

10 │ NOT to have existed by MICHAEL STEWART in his Declaration dated February 29th, 2008, jeopardize the

11 │ credibility of the statements, information, evidential value and testimony presented, in its entirety, against this

12 │ Petitioner/Defendant in this Cause of Action?

13 │    Did the failure to investigate the authenticity and origin of the document presented by Warren A.

14 │ Woodberry before the Court at the Preliminary Hearing conducted on 01/23/2007, by appointed counsel for the

15 │ defense, as impeachable evidence against Warren A. Woodberry's credibility, deprive this Petitioner of

16 │ guaranteed due process rights to the "effective" assistance of counsel?

17 │    Did the District Attorney suppress critical evidence when he failed to address the contradictions and

18 │ inconsistencies in Warren A. Woodberry's testimony at the Preliminary Hearing on 01/23/2007, in comparison

19 │ to the statements and information originally presented to Oceanside Police Officer JUSTIN ROMANO on

20 │ 01/04/2007, and subsequently causing the arrest of the Petitioner at that time for the alleged violation of Penal

21 │ Code Section §211, a Robbery?

22 │    Did the court appointed counsel for the defense fail to render effective assistance of counsel when he

23 │ failed to call Reporting Officer/Investigating Officer JUSTIN ROMANO to the stand in the defenses favor, at

24 │ the Preliminary Hearing conducted 01/23/2007, in order to impeach the prior testimony of Warren A.

25 │ Woodberry, ESPECIALLY after Woodberry had denied statements and information that Oceanside Police

26 │ Officer JUSTIN ROMANO had previously declared as true and correct within his written reports as those from

27 │ Warren A. Woodberry?

28 │    Did Warren A. Woodberry's testimony at the Preliminary Hearing of 01/23/2007, present enough

01   "sufficient" and "credible" evidence to fulfill the required elements this Petitioner used "force and fear"

02   against Woodberry during the confrontation and altercation initiated by Woodberry outside of the Wal-Mart

03   Stores, Inc. facility on 01/04/2007?

04         Did Woodberry's intentional failure to produce the surveillance video captured/recorded on

05   01/04/2007 of the Petitioner within the interior of the Wal-Mart Stores, Inc. facility described, deprive this

06   Petitioner of the guaranteed Due Process right to present evidence in behalf of the defense with regards to the

07   specific issue of "guilt" or "innocence"?

08         Did court appointed counsel's failure to file the appropriate motions (Order to Show Cause; Motion to

09   Suppress; etc.) deprive this Petitioner of the effective assistance of counsel?

10         Was the Plea Agreement dated 02/28/2007 and the subsequent change of plea to "guilty" of Penal

11   Code Section §484/666 by the Petitioner, induced by the lack of faith in the actions of court appointed counsel

12   and counsel's "bad faith" efforts in his failure to present and adequate and aggressive defense on behalf of this

13   Petitioner to the allegations of violating Penal Code Section §211, a robbery?

14         Were the reactions of the Petitioner when confronted outside of the Wal-Mart Stores, Inc. facility by

15   Warren A. Woodberry and accused of "theft"; (1) those of a person who had committed a crime and attempting

16   to flee; or (2) those of a reasonable person attempting to defend himself against what appeared to be an assault

17   and use of excessive force in an attempt to deprive one of his constitutional guarantee to liberty?

18         Were Woodberry's statements, information, and accusations on 01/04/2007, when Woodberry

19   claimed the Petitioner had "attempted to strike Woodberry in his face with a closed right fist", when confronted

20   outside the Wal-Mart Stores, Inc. facility [which Woodberry initially claimed was his reason for initiating the

21   physical contact with the Petitioner], FALSE in nature and perjurous and criminal in their origin, when

22   testimony at the Preliminary Hearing of 01/23/2007 by Woodberry, under oath, later established the allegations

23   were untruthful and Woodberry stated he initiated the physical contact with this Petitioner based on

24   Woodberry's "belief" this Petitioner had "lunged to the right" in what Woodberry claimed appeared to be an

25   attempt to flee?

26         Did the statements, information, actions and testimony of Woodberry *"AFTER"* the incident outside

27   of the Wal-Mart Stores, Inc. facility, and through his testimony and presentation of evidence at the Preliminary

28   Hearing conducted on 01/23/2007 establish a relevant "consciousness of guilt" that Woodberry had in fact

01 errored in his original interpretation and judgment of the incident, possibly attempting to "cover-up" his error

02 and wrongly convict the Petitioner of a crime the Petitioner had not in fact committed?

03                                    IV.

04      **ARGUMENTS and MEMORANDUM OF POINTS AND AUTHORITIES**

05 **A. HABEAS CORPUS IS A PROPER VEHICLE FOR THE PRESENTATION OF PETITIONER'S**
   **CLAIMS**

06

07      The claims asserted in this Petition are that the Petitioner was denied the guaranteed rights to due

08 process in that:

09      There was an insufficient amount of credible evidence presented at the Preliminary Hearing on

10 01/23/2007 to establish the required elements of "force" and/or "fear" were displayed by this Petitioner in order

11 to justify being ordered to appear in the Superior Court for the violation of Penal Code Section §211, a

12 Robbery; (2) the victim/witness WARREN A. WOODBERRY submitted evidence "*claimed*" to have been

13 obtained from another witness, MICHAEL STEWART, which has now later been declared in the Declaration

14 of MICHAEL STEWART signed on February 29th, 2008, under the penalty of perjury, stating that: "{12.} I

15 never provided any statements or declarations to any individual or entity relating to the January 4, 2007

16 incident at Wal-Mart." (See Exhibit "H", Pg. 25, Lines 24-28; Pg. 26, Lines 1-14), whereas the following

17 statements and information was declared:

18      Q:    *Okay, you brought today with you to Court a statement by M.A. Stewart, correct?*
        A:    *Yes.*
19      Q:    *Is that Michael Stewart?*
        A:    *Yes.*
20      Q:    And when did he write this statement, do you know?
        A:    I don't know.
21      Q:    The statement that you brought, did you witness a signature being placed on that
              statement?
22      A:    No, sir.
        Q:    *It was just given to you by Michael Stewart?*
23      A:    *Yes, sir.*
        Q:    You don't have any idea when it was written?
24      A:    No, sir.

25 and (3) the Petitioner was deprived of his fundamental and constitutional right to the effective assistance of

26 counsel. These constitutional claims cannot be presented as strongly on appeal as it is herein because its factual

27 basis rests in part of evidence both prior and **newly discovered**, in addition to that contained in the record on

28 appeal. *See In re Hochberg (1970) 2 Cal.3d 870, 875.* Although Habeas Corpus cannot serve as a second

                                    - 11 -

01  appeal, denial of the right to effective counsel is a claim cognizable on Habeas Corpus, whether or not it is

02  raised on appeal.

03      With regards to the document presented to the Court, under Penal Code Section §118(a), FALSE

04  AFFIDAVIT AS TO TESTIMONY AS PERJURY; SUBSEQUENT CONTRARY TESTIMONY, it

05  states:

"...Any person who, in an affidavit taken before any person authorized to administer oaths, swears,
06  affirms, declares, deposes, or certifies that he will testify, declare depose, or certify before any competent
    tribunal, officer, or person, in any case then pending or thereafter to be instituted, in any particular manner, or
07  to any particular fact, and in such affidavit willfully and contrary to such oath, states as true, any material
    matter *which he knows to be false*, is guilty of perjury. In any prosecution under this section, the subsequent
08  testimony of such person, in any action involving the matters in such an affidavit contained, shall be prima
    facie evidence that the matters in such affidavit were false."

09

10      As state in *People v Pope (1979) 23 Cal.3d 412, 426:*

"...Where the record does not illuminate the basis for the challenged acts or omissions, a claim
11  of ineffective assistance is more appropriately made in a Petition for Writ of Habeas Corpus. In Habeas Corpus
    proceedings, there is an opportunity in an evidentiary hearing to have trial counsel fully describe his/her
12  reasons for acting or failing to act in the manner complained of. For example, counsel may explain why: (1) the
    Order to Show Cause regarding the failure to produce the surveillance video of 01/04/2007 as subpoenaed, was
13  not filed before the Court; (2) why the document submitted on behalf of MICHAEL STEWART by WARREN
    A. WOODBERRY was not authenticated, thereby establishing the grounds to impeach the intent and credibility
14  of WARREN A. WOODBERRY's actions and testimony towards this Petitioner; (3) why certain defenses were
    or were not presented at the hearing; and (4) why the Investigative Officer, J. ROMANO, was not called to the
15  stand at the Preliminary Hearing on 01/23/2007, when he was present in the courtroom and able to impeach the
    testimony of the witness WARREN A. WOODBERRY at that specific point in time. Having afforded the trial
16  attorney an opportunity to explain, Courts are in a position to intelligently evaluate whether counsel's acts or
    omissions were within the range of reasonable competence."

17

18      The Petitioner believes appointed counsel made the false representation of the plea agreement based on

19  the evidence on hand. Petitioner contends presently that his decision to accept the plea of "guilty" was

20  predicated solely upon the information received within the discussion between himself and appointed counsel,

21  and the belief that appointed counsel HAD in fact investigated all the possibilities to defend and all the

22  evidence previously presented. Evidence now established that the discussion and belief of counsel was lacking

23  itself in credibility.

24  **B. INEFFECTIVE ASSISTANCE OF COUNSEL – DEFENSE COUNSEL DAVID A. THOMPSON.**

25      Although not listed in the statutory grounds for a new trial and/or appropriate relief, a new trial may be

26  granted where trial counsel rendered ineffective assistance *(People v Fosselman (1983) 33 Cal.3d 572)*. As a

27  ground for relief, ineffective assistance of counsel is grounded in the Sixth and Fourteenth Amendments of the

28  U.S. Constitution. The leading case of the U.S. Supreme Court which sets forth the standard of review for

01　ineffective assistance of counsel is _Strickland v Washington (1984) 466 U.S. 668._

02　　　　The Strickland standard of review, which California Courts have articulated many times, is as follows:

03　　　　　　"...The Sixth Amendment guarantees "*competent*" representation by counsel for criminal
04　　　　　　defendants, [and reviewing Courts] presume that counsel rendered adequate assistance and
　　　　　　　exercised reasonable professional judgment in making significant trial decisions." _(People_
05　　　　　　_v Holt (1997) 15 Cal.4th 619, 703 citing Strickland v Washington, supra; and People v_
　　　　　　　_Freeman (1994) 8 Cal.4th 450, 513)._ In appropriate instances, trial judges...have the power to
06　　　　　　grant a new trial (or hearing) based on the ineffective assistance of counsel." _(People v_
　　　　　　　_Lagunas (1984) 8 Cal.4th 1030, 1036)._

07　　　　To prevail of a claim of ineffective assistance of counsel, the defendant must establish both "(1) that

08　counsel's representation fell below an objective standard of reasonableness; and (2) that there is a "*reasonable*"

09　probability that, but for counsel's unprofessional errors, a determination more favorable to the defendant would

10　have resulted." _(People v Rodrigues (1994) 8 Cal.4th 1060, 1126)._ As to the prejudice component, the

11　California Supreme Court has held that a _"reasonable probability is a probability sufficient to undermine_

12　_confidence in the outcome"_ of the prosecution. _(People v Cox (1991) 53 Cal.3d 618, 656)._

13　　　　If the defendant makes an insufficient showing on either one of these components, the ineffective

14　assistance claim fails. _People v Rodrigues, supra @ 1126)._ "...A Court need not determine whether counsel's

15　performance was sufficient before examining the prejudice suffered by the defendant as a result of the alleged

16　deficiencies." _(People v Cox, supra @ p.656)._ " A Court reviewing the conduct of counsel **MUST** in hindsight

17　give great deference to counsel's tactical decisions." _People v Holt, supra, 15 Cal.4th @ p. 703)._

18　　　　Under the standard set forth in _People v Johnson (2003) 114 Cal.App.4th 284 @ P. 301,_ reviewing

19　Courts have granted relief based on counsel's performance during the trial. _(See e.g. People v Donaldson_

20　_(2001) 93 Cal.App.4th 916_ [ineffective assistance of counsel found for failure to object to prosecutor's

21　misconduct].

22　　　　In the instant Cause of Action, an aggregate of instances of ineffective assistance of counsel on the

23　part of defense counsel David A. Thompson, supra, compel a new Preliminary Trial.

24　//

25　//

26　//

27　//

28　//

## C. FAILURE TO IMPEACH WARREN A. WOODBERRY ON HIS PRIOR/INCONSISTENT STATEMENT ON AN ISSUE PIVOTAL TO THE PROSECUTION'S THEORY OF THE CASE.

The Prosecution theorized the Petitioner "shoplifted" property of the Wal-Mart Stores, Inc. facility by leaving the store with merchandise, which was not paid for. Upon being confronted by the Loss Prevention/Asset Protection Officer (Warren A. Woodberry), the theory is as alleged that this Petitioner "became physically combative" and "attempted to strike Woodberry in his face with a closed right fist", on two separate occasions, therefore, alleging the elements of "force" and "fear" in order to sufficiently substantiate an arrest for the violation of Penal Code Section §211, a Robbery. As proof, the Prosecution relied upon the Petitioner's alleged purported spontaneous actions upon being confronted just outside the facility, as described and documented by Wal-Mart's Loss Prevention/Asset Protection Officer, Warren A. Woodberry on the evening of 01/04/2007.

At the Preliminary Hearing conducted 01/23/2007, upon examination under oath, WOODBERRY testified that he "believed" this Petitioner had "lunged to the right", in what WOODBERRY believed was an attempt to "flee", therefore, causing WOODBERRY to initiate a physical altercation in order to restrain/detain this Petitioner. This version of WOODBERRY's testimony IS NOT that which was presented on 01/04/2007 to Oceanside Police Officer JUSTIN ROMANO (#1284), in which WOODBERRY originally stated that this Petitioner initiated the altercation by becoming "irate and physically combative", attempting to strike WOODBERRY in his face on two separate occasions, therefore, causing WOODBERRY to physically restrain this Petitioner with the use of force.

Testimony within the Preliminary Transcripts of 01/23/2007 by WARREN A. WOODBRRY under oath {See Exhibit "H"}, Page 7-11 claimed that Woodberry's actions were based on his belief that this Petitioner was attempting to "flee" and that this Petitioner had NEVER actually struck Woodberry with either a "punch, kick or elbow" during the altercation outside of the Wal-Mart Stores, Inc. facility on 01/04/2007. Both statements are contradictory to the statements and information presented to Oceanside Police Officer JUSTIN ROMANO (#1284) on the evening of 01/04/2007, which initiated the arrest of this Petitioner for the violation of Penal Code Section §211, a Robbery.

Within both the "HANDWRITTEN" {See Exhibit "A"} and the "TYPED" {See Attachment A"} Loss Prevention Apprehension Reports submitted by WARREN A. WOODBERRY, Woodberry at no time ever

01  claimed that his actions were based on his belief that this Petitioner was attempting to "flee", nor does

02  Woodberry submit the information that was included within the Oceanside Police Report submitted by

03  Oceanside Police Officer JUSTIN ROMANO (#1284), that being that Woodberry's decision to physically

04  restrain this Petitioner was based on this Petitioner's attempt to "strike Woodberry in his face" once confronted

05  by Woodberry outside of the Wal-Mart Stores, Inc. facility, essentially initiating the confrontation between this

06  Petitioner and Woodberry. Woodberry only claims that this defendant attempted to strike him in his face within

07  Exhibit "B" *AFTER* he had restrained this Petitioner and was proceeding back inside towards the Loss

08  Prevention Office area. Even this issue in contradicted by Woodberry himself within the statement and

09  information given to Oceanside Police Officer JUSTIN ROMANO (#1284), whereas Woodberry initially

10  claimed this Petitioner had become "physically combative" and "tried to strike Woodberry in his face with a

11  closed right fist"; and during the testimony under oath during the Preliminary Hearing of 01/23/2007, whereas

12  Woodberry directly states that Woodberry initiated physical contact with this Petitioner based on his "belief"

13  that this Petitioner "lunged as if he was going to take off..." (See Exhibit "H"; Page 8; Lines 1-9). Woodberry

14  declares within the Preliminary Hearing testimony under oath that he did not recall at any point, that this

15  Petitioner actually struck Woodberry with either a punch, kick or elbow" (See Exhibit "H"; Page 11; Lines 2-

16  4), and specifically responds "No, sir" when asked if this Petitioner had ever tried to swing his fist at his face

17  (See Exhibit "H"; Page 31; Lines 1-3). This issue has a significant amount of relevance and importance, as it

18  was WOODBERRY's initial allegation that this Petitioner had attempted to "strike him in his face with a

19  closed right fist", as well as the signing of the "Citizen Arrest" section of the San Diego Regional

20  Arrest/Juvenile Contact Report dated 01/05/2007 submitted by Oceanside Police Officer JUSTIN ROMANO

21  (#1284), that initiated the subsequent arrest for the violation of Penal Code Section §211, the Robbery. And by

22  signing the "Citizen Arrest" section of the San Diego Regional Arrest/Juvenile Contact Report dated

23  01/05/2007 submitted by Oceanside Police Officer JUSTIN ROMANO (#1284), Woodberry was aware that

24  this Petitioner was being arrested and charged with a violation of Penal Code Section §211, the Robbery, based

25  on the statements and information he himself presented to Oceanside Police Officer JUSTIN ROMANO

26  (#1284) on the evening of 01/04/2007.

27          Clearly WOODBERRY not only wrote one thing in his handwritten report, then embellished these

28  factors in his typed report submitted to the Wal-Mart Stores, Inc. office, and also participated in embellishing

01 and fabricating the statements and information presented to Oceanside Police Officer JUSTIN ROMANO

02 (#1284) on the evening of 01/04/2007, then testified contrary to the prior statements, information and writings,

03 under oath, during the Preliminary Hearing conducted on 01/23/2007. This was a classic opportunity to

04 impeach WOODBERRY, as a key point, to challenge WOODBERRY's ability to remember the events as well

05 as to truthfully describe it before the Court. *(See Evidence Code Section §780 (c).(e); CALCRIM 318).* If

06 skillfully handled, defense counsel may have been able to elicit from WOODBERRY an admission of

07 untruthfulness. (See *Evidence Code Section §780 (k)).*

08 　　　　Moreover, WOODBERRY was holding the prior inconsistent statement – his report – in his hand

09 while he was testifying before the Court. Also present at the Prosecution table was Oceanside Police Officer

10 JUSTIN ROMANO (#1284), designated as the Investigative Officer on behalf of the Prosecution. Thus,

11 WOODBERRY *COULD NOT* have escaped impeachment of the defense he forgot his prior inconsistent

12 statements. In fact, the Prosecution gave WOODBERRY multiple opportunities to refresh his recollection of

13 what was in the report.

14 　　　.There were several inconsistencies to the statements and/or information within the handwritten report

15 of WOODBERRY, the typed report of WOODBERRY, and the statements and information presented to

16 Oceanside Police Officer JUSTIN ROMANO (#1284), as well as under oath, within the testimony at the

17 Preliminary Hearing of 01/23/2007. Yet, when it was defense counsel David A. Thompson's turn to cross-

18 examine WOODBERRY, Thompson asked nothing about the prior inconsistent statements. When presented

19 with the opportunity to have Oceanside Police Officer JUSTIN ROMANO (#1284) testify before the Court on

20 behalf of the defense, in order to establish the inconsistencies in WOODBERRY's testimony, defense counsel

21 Thompson declined to call Oceanside Police Officer JUSTIN ROMANO (#1284) to the stand.

22 　　　　It should be noted with relevance, that following the Preliminary Hearing of 01/23/2007, during a

23 discussion between this Petitioner and appointed defense counsel David A. Thompson, David A. Thompson

24 informed this Petitioner that he had an opportunity to speak with Oceanside Police Officer JUSTIN ROMANO

25 (#1284) following the Preliminary Hearing, and was advised personally by Oceanside Police Officer JUSTIN

26 ROMANO (#1284) that the testimony of WOODBERRY under oath at the Preliminary Hearing of 01/23/2007

27 was contradictory to the original statements and information presented by WOODBERRY to Oceanside Police

28 Officer JUSTIN ROMANO (#1284) on the evening of 01/04/2007.

01       It is difficult to imagine, understand, and/or comprehend defense counsel David A. Thompson had any

02 tactical reason to pull his punches and not confront WOODBERRY with his prior inconsistent statements,

03 especially considering there were several prior inconsistent statements during the testimony in comparison to

04 Woodberry's own reports, as well as those of Oceanside Police Officer JUSTIN ROMANO (#1284), and

05 especially considering WOODBERRY was holding a majority of the prior inconsistent statements (contained in

06 the reports) in his hand on the witness stand, *AND* Oceanside Police Officer JUSTIN ROMANO (#1284) was

07 present in the Courtroom with his reports, able to testify, had he been respectfully requested to do so.

08       The more likely explanation was defense counsel Thompson was asleep at the switch, or lacked the

09 working knowledge of WOODBERRY's prior statements sufficient to enable him to cross-examine

10 WOODBERRY on these points. The problem is – the essence of this case consisted of sentences and

11 paragraphs, not pages. There was not that much for defense counsel to prepare, yet Thompson managed to blow

12 it. Some defense attorneys avoid the omission committed here by Thompson by the simple expedient of

13 charting each statement a witness makes about a key event in a case. Had Thompson charted WOODBERRY's

14 prior statements (i.e. Woodberry's written report, the statements and/or information presented within the Police

15 Reports, the prior Preliminary Hearing direct examination testimony, etc.), WOODBERRY's multiple prior

16 statements would have been glaring and would have essentially leapt off the page. Thompson could have

17 pounced on these points, rather than missing them. Had Thompson looked at the document(s) WOODBERRY

18 was testifying from, he would have seen it. There was no excuse for this kind of ineffective assistance. Under

19 the two-prong Strickland standard, supra, the Court should order a new hearing based on this evidence.

20 **D. FAILURE TO CHALLENGE WOODBERRY'S TESTIMONY – NO VIDEO IMAGES OF**
    **PETITIONER WITHIN THE WAL-MART STORES, INC. FACILITY INTERIOR WERE**
21     **AVAILABLE WHEN SUBPOENAED TO PRODUCE.**

22       WOODBERRY lied about something else during his testimony at the Preliminary Hearing conducted

23 on 01/23/2007. WOODBERRY was asked about video taping at the Wal-Mart Stores, Inc. facility. In his

24 response to questions about surveillance video on 0/04/2007, WOODBERRY gave the Court the false

25 impression that there was no surveillance video tape of this Petitioner *EXCEPT* for the footage shown to the

26 Court and defense counsel of the Petitioner being confronted and essentially "violently" assaulted by

27 WOODBERRY *{as described by defense counsel}*, outside the store and that no surveillance video images of

28 this Petitioner were erased and/or destroyed.

01       WOODBERRY, under questioning by defense counsel David A. Thompson (See Exhibit "H"; Pg. 32; Lines 14-28, Pg. 33, Lines 1-7), declared:

02       Q:   On the day of this incident when Officer ROMANO came later, you tried to play back some video for him, right?

03       A:   Yes, sir.

      Q:   And you weren't able to?

04       A:   No, sir.

      Q:   Any idea why?

05       A:   It was an old CC TV Video Recorder. If we stop recording it will stop recording all the shots.

06       Q:   And there are many shots within that store?

      A:   Yes.

07       Q:   If we wanted to, we could have shots from probably throughout – from where

08       Mr. Lacy walked throughout the store, right?

      A:   Probably.

09       Q:   And in fact, I subpoenaed those, didn't I?

      A:   Yes, sir.

10       Q:   And you didn't bring those today, did you?

      A:   I don't have them.

11       Q:   You didn't bring them with you, did you?

      A:   No.

12       Two important issues are relevant with regards to this testimony from WOODBERRY. First,

13 WOODBERRY is quite knowledgeable about the CC TV Video Recorder, knows its capacity and workings,

14 and is expresses knowledge with regards to how it works and/or functions. WOODBERRY was well aware on

15 the evening of 01/04/2007, that the Wal-Mart Stores, Inc. facility was in fact closed to the public during the

16 time frame that Oceanside Police Officer JUSTIN ROMANO (#1284) attempted to view the surveillance video

17 captured that evening. In the Oceanside Police Department Officer's Report Narrative dated 01/05/2007,

18 submitted by Oceanside Police Officer JUSTIN ROMANO (#1284), Oceanside Police Officer JUSTIN

19 ROMANO distinctly states: "...WOODBERRY was unable to play back the surveillance video *"that captured*

20 *the incident"*. I (J. Romano) provided Lacy (meaning Woodberry) with a case number and informed

21 (Woodberry) to contact OPD once the surveillance video was available."

22       WOODBERRY was aware on 01/04/2007 that surveillance video with regards to the incident, WAS

23 AVAILABLE. It is suspicious in its entirety why WOODBERRY *did not* in fact contact the Oceanside Police

24 Department the following morning of 01/05/2007 in order to submit the surveillance video as instructed the

25 previous evening by Oceanside Police Officer JUSTIN ROMANO (#1284). The typewritten report submitted

26 by WOODBERRY on 01/05/2007 to the Wal-Mart Stores, Inc. office by fax or Internet access, clearly

27 establishes that WOODBERRY was at the Wal-Mart Stores, Inc. facility on 01/05/2007 completing his

28 paperwork, it is only plausible that WOODBERY was also reviewing the surveillance video recorded from the

01 previous evening with regards to the incident. This is an issue that defense counsel declined to address and

02 therefore, deprived this Petitioner of significant evidence with regards to the importance of WOODBERRY's

03 failure to produce that surveillance video as: (1) instructed by Oceanside Police Officer JUSTIN ROMANO

04 (#1284) on 01/04/2007; and (2) subpoenaed by the defense for evidential purposes at the Preliminary Hearing.

05        The entirety of this testimony and the facts omitted left the Court with the false impression there was

06 no other surveillance videotape of the Petitioner taken on 01/04/2007 at the Wal-Mart Stores, Inc. facility

07 described. Yet, it is evident from the statements and information within the Police Report Narrative submitted

08 by Oceanside Police Officer JUSTIN ROMANO (#1284), that surveillance video was in fact captured of the

09 incident on 01/04/2007, and confirmed by WOODBERRY that evening, and that WOODBERRY did in fact

10 did attempt to replay that surveillance video for Oceanside Police Officer JUSTIN ROMANO (#1284), with no

11 success. Even the truthfulness of the attempt itself now becomes questionable based on the evidence presented.

12 We also know that surveillance video did in fact exist because WOODBERRY submitted the final moments of

13 the video displaying the assault on this Petitioner by WOODBERRY, as evidence in his behalf at the

14 Preliminary Hearing. A questionable factor with regards to the surveillance video submitted was: (1) how much

15 surveillance video actually existed?; (2) did the video establish evidence favorable to the defendant?; (3) who

16 was responsible for editing the surveillance video?; and (4) what portions of the surveillance were

17 erased/destroyed in the editing process?

18        This information regarding the production of the surveillance video as subpoenaed was extremely

19 relevant under Evidence Code Section §350. The door was opened to its admission by the answers

20 WOODBERRY gave to various questions relating to the surveillance videotape. The information was also

21 relevant as to whether the Petitioner/Defendant had in fact committed a crime *AND POSSIBLY*, an act of moral

22 turpitude – the false arrest/false imprisonment of this Petitioner under Penal Code Section §236 and §237

23 *{CALCRIM 1240, 1242}*. Consequently, the information was also relevant to WOODBERRY's bias and

24 motive. Defense should have used this information to challenge WOODBERRY's judgment and credibility and

25 the motive for WOODBERRY to lie before the Court in order to attempt to justify his actions. The information

26 of 0/04/2007; (3) why the surveillance video captured was left in the possession of WOODBERRY and not

27 taken as evidence on 01/04/2007; and (4) the fact the surveillance videotape was erased and/or destroyed.

28 Perhaps defense counsel David A. Thompson had anticipated that he would lose at the Preliminary Hearing

01 | because he had failed to prepare to win, or that he did not have the trial skills to capitalize on the information. It

02 | is apparent by the statement in defense counsel David A. Thompson's closing statement (See Exhibit "H", Pg.

03 | 42, Lines 28; Pg. 43, Lines 1-4) that he did not intend to litigate the matter at a trial in the future, as Mr.

04 | Thompson stated to the Court:

05 |     Mr. Thompson:    "...The reason I ask is that I have a strong suspicion this case is going to settle for something a lot less than a robbery, based on the testimony here today,

06 |     and the sooner we can do that and get Mr. Lacy on his way, the better."

07 | Although defense counsel stated in his closing statements that he *WOULD* submit an Order to Show Cause

08 | regarding WOODBERRY's intentional failure to produce the surveillance video of 01/04/2007 as subpoenaed,

09 | defense counsel Thompson failed to submit any motion to the Court, and established significant doubts by this

10 | Petitioner, in his ability to prepare and present an aggressive, adequate defense for this Petitioner/Defendant.

11 | The assertion, made to the Court by the Representative of the State, simply was not true and void of critical

12 | statements and information contradicted by the Prosecution's witness (Warren A. Woodberry). The effect on

13 | the Prosecutor's argument to the Court at the Preliminary Hearing on 01/23/2007, along with the errors in this

14 | case made by the Prosecution and Defense Counsel, were prejudicial to this Petitioner's defense. The effect of

15 | the representation to the Court was to lull the Court into a false sense of assurance that no evidence was erased

16 | and/or destroyed, that no evidence was withheld from the Court, that nothing in the case was amiss and that the

17 | Court should suffer no pangs of conscience in returning a finding of guilt to the allegation of Penal Code

18 | Section §211, a Robbery.

19 |     This Petitioner does not contend that either counsel in this case -- Prosecutor R. AUGST or Defense

20 | Counsel David A. Thompson – deliberately misled the Court or deliberately sabotaged this Petitioner's case.

21 | This Petitioner is not required to prove intentional misconduct or deliberate sabotage. However, clearly the

22 | missteps of both counsel in this case – due mainly, it would appear, to inattention to the facts and a lack of

23 | familiarity with the record and lack of proper trial preparation – deprived this Petitioner of effective assistance

24 | of counsel and the right to a fair hearing, as guaranteed this Petitioner by the Fifth, Sixth and Fourteenth

25 | Amendments of the United States Constitution.

26 |     Under the two-prong *Strickland* standard, supra, defense counsel's failings compel the conclusion this

27 | Court should order a new hearing.

28 | //

01                                    v.

02        ## PROSECUTION ERROR – DEPUTY DISTRICT ATTORNEY R. AUGST

03        Although not listed in the statutory grounds for a new trial, a new trial may be granted where there has

04  been prosecution error amounting to a denial of due process of law. Thus, a new trial may be granted where:

05        "...an error has occurred resulting in the denial of the defendant's right to a fair trial, and the
        defendant has had no earlier opportunity to raise the issue." *(People v Mayorga (1985) 171*

06      *Cal.App.3d 929, 940)*

07  In *People v Davis (1973) 31 Cal.App.3d 106,* the Court of Appeal stated:

08        "...new trials are frequently granted on nonstatutory grounds where the failure to do so would
        result in a denial of a fair trial to a defendant in a criminal case. *(31 Cal.App.3d @ 109)*

09

10  The same Court also stated:

11        "...The power to grant a new trial on such nonstatutory grounds obviously is derived from the trial
        Court's constitutional duty to insure an accused a fair trial." *(31 Cal.App.3d @ 110)*

12  In *People v Fosselman,* the California Supreme Court stated:

13        "...the statute *(Penal Code Section §1181)* SHOULD NOT be read to limit the constitutional duty
        of trial courts to ensure that defendants be accorded due process of law." *(33 Cal.3d @ 582)*

14

15        In the instant case, this Petitioner asserts as a ground for a new trial; prosecution error on the part of

16  Deputy District Attorney R. AUGST under the 5th and 14th Amendments of the U.S. Constitution, as recognized

17  in the U.S. Supreme Court case *Berger v United States (1935) 295 U.S. 78* and as interpreted by such Federal

18  Circuit Court decisions as *United States v Kojayan (9th Cir. 1993) 8 F.3d 1315,* by the Supreme Court of

19  California in *People v Hill (1998) 17 Cal.4th 800.*

20        Where prosecution error infringes a defendant's rights under the Federal Constitution, the standard of

21  prejudice is the *"Chapman"* standard *(Chapman v California (1967) 386 U.S. 18, 24)* where," the burden shifts

22  to the state to 'prove beyond a reasonable doubt that the error complained of did not contribute to the finding

23  obtained.'[citation]" *(People v Villa (1980) 109 Cal.App.3d 360, 366-367).*

24        In the instant case, the prosecution error occurred when Prosecutor Augst, on direct examination of

25  WOODBERRY, and despite documentary evidence to the contrary (in the form of WOODBERRY's report and

26  the Police Report of Oceanside Police Officer JUSTIN ROMANO, which the prosecution had possession of),

27  failed to elicit testimony that WOODBERRY had originally alleged that the Petitioner had attempted to "strike

28  WOODBERRY in his face with a closed right fist", when initially confronted outside the Wal-Mart Stores, Inc.

                                        - 21 -

01  facility, therefore, causing WOODBERRY to initiate the physical altercation with the Petitioner. Prosecutor

02  Augst further committed error when he failed to inform the Court the point in closing.

03       Prosecutor Augst had possession of WOODBERRY's report, as well as the reports submitted by

04  Oceanside Police Officer JUSTIN ROMANO, wherein statements and information alleged that the Petitioner

05  had "become irate and physically combative -- attempting to strike WOODBERRY in his face with a closed

06  right fist." Moreover, Prosecutor Augst had the Oceanside Police Officer JUSTIN ROMANO present at the

07  prosecution table designated as the "investigative officer", and failed to call the officer to the stand to testify

08  with regards to the information he had been presented by WOODBERRY on the evening of 01/04/2007, that

09  being the inconsistent statements. Yet, prosecutor Augst misled the Court on several material facts – material

10  because the prosecution failed to elicit the "facts" in its direct examination, and material because the

11  prosecution failed to inform the Court of its knowledge of the inconsistencies as it argued the points in closing

12  statements.

13       In argument, a prosecutor may not assert or imply a fact when the opposite is the truth. *[People v*

14  *Varona (1983) 143 Cal.App.3d 566, 570* [prosecutor asserted that complaining witness was not a prostitute

15  while knowing that she was a prostitute; conviction reversed]. It follows that the prosecutor may not elicit

16  testimony from a witness when the opposite is true. The prosecution was aware of the original statements and

17  information presented to Oceanside Police Officer JUSTIN ROMANO on the evening of 01/04/2007 by

18  WOODBERRY regarding the alleged attempt to strike WOODBERRY with the closed fist.

19       In *Merrill v Superior Court (1994) 27 Cal.App.4th 1586, 1594,* involving a discovery violation at a

20  *preliminary hearing,* the Court said, "...Rules of ethical conduct for attorneys prohibit suppression of evidence

21  that they have a 'legal obligation' to disclose." *[Rules Prof. Conduct, Rule 5-220]* In addition, prosecutors have

22  a higher legal obligation to divulge 'substantial material evidence favorable to the accused.' *People v Ruthford*

23  *(1975) 14 Cal.3d 399, 405-406].* Fundamental fairness requires no less."

24       In the instant case, the prosecution divulged the exculpatory evidence to the defense, but then ignored

25  it (along with defense counsel, who was asleep at the switch), yet failed to present the statement to the Court

26  and presented untruthful testimony from the witness on direct examination.

27       In a well-known case from our Appellate District, the Court stated: "...Prosecutors have a special

28  obligation to promote justice and the ascertainment of truth... "The duty of the District Attorney is not merely

01 that of an advocate. His duty is not to obtain convictions, *but to fully and fairly present... the evidence*..."

02 *(People v Kasim (1997) 56 Cal.App.4th 1360, 1378* [reversing conviction with life sentence for mayhem on

03 grounds of prosecutorial misconduct relating to pre-trial discovery], emphasis added.*)*

04      Our State's highest Court has said, "...A prosecutor is held to a standard *higher* than that imposed on

05 other attorneys because of the unique function he or she performs in representing the interests, and in exercising

06 the sovereign power, of the state. *(People v Kelley (1977) 75 Cal.App.3d 672, 690* [142 Cal.Rptr. 457]; *People*

07 *v Hill, supra, 17 Cal.4th @ Pg. 820)*

08      Our high Court observed: "...As the United States Supreme Court has explained, the prosecutor

09 represents "a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at

10 all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, *but that justice shall*

11 *be done.'* *(Berger v United States (1935) 295 U.S. 78, 88* [79 L.Ed 1314, 1321, 55 S.Ct. 629].*)* " *(People v Hill,*

12 *supra, 17 Cal.4th @ Pg. 820)*

13      Prosecution error which rises to the level of a federal due process violation does not require a showing

14 of bad faith or intentional misconduct. A defendant is as injured by inadvertent misconduct as by intentional

15 misconduct. *(People v Hill, supra, 17 Cal.4th @ Pg. 822-823)* No one suggests Prosecutor Augst intentionally

16 misled the Court and this Petitioner is not required to prove intentional misconduct. It appears prosecutor

17 Augst, like defense counsel Thompson, suffered from the same inattention to the facts. Nevertheless, this

18 inattention resulted in a material misrepresentation of the facts to the Court. Accordingly, this Petitioner is

19 entitled to a new hearing.

20      Under the *Chapman* standard, supra, the burden falls on the prosecution to prove the prosecution error

21 did not contribute to the finding. Because the prosecution cannot meet this burden, a new hearing should be

22 ordered.

23                                             **VI.**

24                                    **INSUFFICIENT EVIDENCE**

25      Under Penal Code Section §1181.6, the trial Court may grant a new trial for insufficient evidence.

26 However, where the Court determines the evidence to be insufficient as a matter of law, THE PEOPLE may not

27 retry the defendant on those counts. *(Hudson v Louisiana (1981) 450 U.S. 40)*.

28      In *People v Dickens (July 5, 2005) Cal.App.4th, D.J. D.A.R. July 6, 2005 @ Pg. 8113*, the court (the

01  Fourth District Court of Appeal, Division 2, Docket E036144), in affirming a trial court order *granting* a

02  motion for new trial for insufficiency of evidence, set out the standard which the trial court should apply. The

03  Court said:

> "...In deciding such a motion, the trial Court's function is to see that the Court intelligently and
> justly performed its duty and, in the exercise of a proper legal discretion, to determine whether
> there is sufficient "*credible*" evidence to sustain the finding. The trial Court's duty is to review the
> evidence independently and satisfy itself that the evidence, *as a whole*, is sufficient to sustain the
> finding."
>
> "...the trial Court may not arbitrarily reject a finding which is supported by "*substantial
> evidence*". The trial Court is not bound by a jury's determinations as to the credibility of witnesses
> or as to the weight or effect to be accorded to the evidence. Thus, the presumption that the finding
> is correct does not affect the trial Court's duty to give the defendant the benefit of its independent
> determination as to the probative value of the evidence. If the Court finds that the evidence is not
> sufficiently probative to sustain the findings, it must order a new trial or hearing."
>
> "...The trial Court has broad discretion in determining whether the evidence has sufficient
> probative value to sustain the findings, and its order will not be reversed on appeal absent a
> manifest and unmistakable abuse of the discretion..."

12      The evidence in this case was insufficient to convict this Petitioner with regards to the specific

13  violation of Penal Code Section §211, a Robbery. The statements of WOODBERRY and the omissions of the

14  statements originally presented to Oceanside Police Officer JUSTIN ROMANO on the evening of 01/04/2007

15  by WOODBERRY, are sufficient to raise a "reasonable doubt" whether anything that WOODBERRY testified

16  to was on a reliable basis on which to establish a justifiable finding, especially given the additional evidence

17  presented to the Court by way of this instant motion – evidence which the Court never heard.

18                                            **VII.**

19                                      **CONCLUSION**

20      There is a subtle difference between "TRUTH" and "FACT". "FACT" is objectively real. "TRUTH"

21  *must* conform to "FACT". If one cannot find and distinguish the authenticity of the "FACTS", one can never

22  establish the "TRUTH". This Petitioner is out to present and discover the truth. The issues have been

23  manipulated, fabricated, embellished, omitted, and generally neglected by the complainant and the

24  prosecution, with inclusion of this Petitioner's court appointed counsel, who essentially failed to perform as he

25  was ethically required, exhibited blatant incompetence with regards to his attempts {or lack thereof} to present

26  an adequately aggressive defense in this Petitioner's behalf and displayed the fundamental basis for a true

27  finding with respects to the ineffective assistance of counsel consideration, denying this Petitioner the

28  guaranteed right to expect the allegations against this Petitioner be defended in a manner within the ethical

01 | boundaries of the law.

02 |     In order to render effective assistance of counsel, a criminal defense attorney *MUST* carefully

03 | research and investigate all possible grounds for seeking the suppression of incriminating evidence *AND "file*

04 | *appropriate motions." {In re Neely (1993) 6 Cal.4th 901}* Petitioner's court appointed counsel failed in his

05 | duties, obligations and responsibilities as such.

06 |     This Petitioner's contention is based on the theory that in the *"interest of justice"*, our judicial system

07 | has checks and balances in place that are set forth to provide protections to individuals from suffering through

08 | the "miscarriage of justice" that sometimes take place based upon the complexities of the legal issues our

09 | Courts are in place to uphold. The facts and the truths with regards to this matter presently before this Court for

10 | review and consideration, will establish results that are incongruous and will present an arguable fairness when

11 | compared to the theoretical state of perfect and/or equal justice.

12 |     ROBBERY defined is the felonious taking of personal property in the possession of another, from his

13 | person, or immediate presence, and against his will, *"accomplished by means of force and/or fear"*. The

14 | "force" element of robbery includes not only the actual physical force {which was not a part of this Petitioner's

15 | actions on the evening of 01/04/2007}, but *ALSO* the "threat" or "display" of aggression that would inspire

16 | "fear".

17 |     Because the crime of robbery is basically an "aggravated" or "compound" larceny, the elements

18 | present *MUST* be those of larceny *PLUS* the additional aggravating circumstances -- "force or fear."

19 |     The Due Process Clause requires the Prosecution to *PROVE* "beyond a reasonable doubt" *EVERY*

20 | fact necessary to constitute the crime with which the defendant is charged. No evidence was established to

21 | ascertain that this Petitioner used either element of "force" or "fear" against WOODBERRY during the incident

22 | of 01/04/2007, yet substantial evidence exists to establish that the reactions of this Petitioner were those of a

23 | reasonable person defending himself against what is interpreted as an assault against his person.

24 |     The findings were based on a constitutional deficient Preliminary Hearing in which the required

25 | elements of "force and/or fear" by this Petitioner/Defendant towards WARREN A. WOODBERRY were never

26 | established and proved, in order to constitute this Petitioner be bound-over to the Superior Court in order to be

27 | tried for the violation of Penal Code Section §211, a Robbery. To support a charge of robbery, the taking, either

28 | the gaining possession or the carrying away, *MUST* be accomplished by "force or fear." There is nothing in the

01 record which indicated, or from which it could be inferred, that the alleged victim's [WARREN A.

02 WOODBERRY] property was taken through the use of "force or fear", for the purpose of a robbery

03 consideration. Therefore, this Court should set aside the findings of the Municipal Court, as well as the Plea

04 Agreement, as evidence has been established and presented before this Court, that the basis of accepting the

05 Plea Agreement at its point in time, was improperly induced, and the evidence of the Preliminary Hearing was

06 insufficient to support the finding of the Court. *(People v Gilbert (1944) 25 C.2d 422, 154 P.2d 657; People v*

07 *Adamson (1949) 34 C.2d 320, 327, 210 P.2d 12, 16; People v Hodge (1957) 137 CA.2d 205, 320 P.2d 589;*

08 *People v Cox (1936) 18 CA.2d 283; 63 P.2d 849).*

09       *People v Mungia (1991) 234 Cal.App.3d 1703,* states in part:

10         "...although the victim need not explicitly testify that he or she was afraid in order to show the use
         of fear to facilitate taking for the purpose of a robbery conviction, there *MUST* be evidence from

11         which it can be inferred that the victim was in fact "afraid" and that such fear allowed the crime to
         be accomplished."

12

13       Clearly, a review of the Preliminary Hearing Transcripts of 01/23/2008 of the witness [WARREN A.

14 WOODBERRY], in their entirety, will show the required elements for a finding of "guilty" to the allegation of

15 violating Penal Code Section §211, a Robbery, simply DID NOT exist. If the prosecutions evidence were to be

16 believed, it simply would not support an offense less than robbery. This Petitioner's conduct was either a

17 robbery committed by "the use of force and fear", in resisting attempts to regain the property or in attempting to

18 remove the property from the owner's immediate presence, or it was simply an assault and battery. If the

19 Petitioner was forced to "abandon the property" *BEFORE* any use of force, then although he could be guilty of

20 "theft", the circumstances DO NOT establish one as a participant in an "Estes" type robbery. Indeed, in the

21 situation where property is taken without the use of "force" or the threat thereof and thereafter, such force or

22 threat is employed to prevent the owner from recovering the property or to facilitate an escape, the offense

23 committed simply COULD NOT have been designated as a robbery, attempted or otherwise.

24       The witness, WARREN A. WOODBERRY, clearly states that the Petitioner "dropped" the

25 merchandise in his hands once Woodberry initiated the physical altercation. As well, the witnesses [WARREN

26 A. WOODBERRY] description of the Petitioner's reactions were essentially "defensive" and in response to the

27 physical assault and use of what appeared to be "excessive force", of which this Petitioner was undergoing

28 from WOODBERRY.

01    This case is more serious than most simple "shoplifting" allegations, given the Petitioner's alleged

02 strike prior(s), prison prior(s), theft-related prior(s), and the fact that the Petitioner was on misdemeanor

03 probation at the time of the alleged offense.

04    If there is a one-percent chance that there was in fact fundamental errors during the course of the

05 Preliminary Hearing conducted on 01/23/2007, then fairness compels this Court to re-examination this matter

06 once more. If the issues are deemed sufficiently important, and this Petitioner has presented the fundamental

07 right(s) with respects to the presumption of innocence, in "good faith", this Court is compelled to grant this

08 Petitioner's Petition for Writ of Habeas Corpus and grant this Petitioner a new hearing in order to adequately

09 seek out the truth, and address these matters, with the opportunity to properly defend himself against all

10 allegations. For the foregoing reasons, Petitioner's present confinement pursuant to the induced Plea

11 Agreement of the Superior Court of the State of California, In and For the County of San Diego, Superior Case

12 Number SCN 223021, should be declared illegal on its face, and the Petition for Writ of Habeas Corpus granted

13 forthwith.

14                    **VIII.**

15 **REQUEST FOR APPOINTMENT OF COUNSEL and REQUEST FOR EXPEDITED HEARING**

16    Petitioner's discovered and disclosed evidence, both prior and newly discovered, establish that this

17 conviction was based upon false, fabricated, embellished, manufactured and potentially fraudulent evidence

18 within the meaning of Penal Code Section §1473(b)(1), and in violation of both California and United States

19 Constitution(s). For this reason, Petitioner, DENNIS EVERETT LACY, prays this Court set this matter for an

20 Evidentiary Hearing, in which testimony of witnesses set forth in the attached record(s), may be presented and

21 the issue(s) regarding the witnesses testimony, presentation of evidence and/or willful and intentional failure to

22 produce the surveillance video as subpoenaed, may be addressed and ultimately adjudicated in the "interest of

23 justice." If so granted, this Petitioner requests the appointment of counsel, because the issues herein are

24 complex and this Petitioner is indigent, and, an Expedited Hearing is requested because of the length of time

25 this Petitioner has already spent confined in custody.

26 //

27 //

28 //

01       I, the undersigned, say: I am the Petitioner in this Cause of Action. I declare under the penalty of

02 perjury under the laws of the State of California, that the foregoing information and statements are true and

03 correct, except as to those matters that are stated on my information and belief, and as to those matters, I

04 believe them to be truthful.

05       Dated this 1st day of July, 2008 at the Mule Creek State Prison located at 4001 Highway 104, P.O.

06 Box 409000 in the city of Ione, California 95640.

07

08 DATED: July 1st, 2008                 Respectfully Submitted,

09

10                           /S/ Dennis Everett Lacy   F-64225

11                           Dennis Everett Lacy   F-64225
                          Petitioner/Defendant IN PRO SE

12                           Mule Creek State Prison
                          4001 Highway 104
                          P.O. Box 409000     M1A-04up

13                           Ione, California    95640

14 //

15 //

16 //

17 //

18 //

19 //

20 //

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28 //

ATTACHMENT "A"

Loss Prevention Apprehension Report

## Offender Information:

| | |
|---|---|
| **Case Reference Number:** 2007-5075-1 | **Entry Date:** 1/5/2007 |
| **Store Number:** 5075 | **Offense Type:** Shoplifting |
| **Offense date:** 1/4/2007 | **Offender Name:** Lacy Dennis |
| **Offender Address:** 115 1/5 S. Nevada Ave. APT# A | **Offender City, State, Zip:** Oceanside ,CA - 92054 |
| **Offender Description** White - 165 - 6 - Blonde - Green | **Offender Phone:** 0000000000 |
| **Offender SSN:** 555084347 | **Offender Birth date:** 5/30/1960 |
| **Offender Sex:** Male | **Offender Marital:** Married |
| **Offender Drivers Lic #:** N9616594 | **Offender Drivers Lic State:** CA |
| **Is Offender Associate Y/N:** N | **Parent or Guardian Name:** None |
| **Purchase Amount:** 5.83 | **Possession Amount:** 40 |

## Apprehension Information:

| | |
|---|---|
| **Apprehended by, Name:** Warren Woodberry | **Apprehended by, Userid:** woodberryw |
| **Apprehender Job Title:** In-Store | |
| **Offender In time:** 21:25 | **Offender Out time:** 22:15 |
| **Parent Call time:** 00:00 | **Parent Arrive time:** 00:00 |
| **Police Call time:** 21:40 | **Police Arrive time:** 21:50 |
| **Police Officer Name:** C. Wilson | **Police Officer Badge #:** 1095 |
| **Charges Filed Y/N:** Y | **Was EAS Involved Y/N:** N |
| **Associate Injured Y/N:** ** | **Customer Injured Y/N:** N |
| **Hand Cuffs Used Y/N:** Y | **Civil Statute Read Y/N:** Y |
| **Evidence Location:** AP Evidence Locker | |

## Witness Information:

| Witness # | Witness Name | Witness Address | Witness Phone # |
|---|---|---|---|
| 1 | Michael Stewart | | |

## Statement of facts:

On Thursday January 4th, 2007 I Warren A. Woodberry Asset Protection Wal-Mart #5075. Observed a white male individual later to be known as Mr. Dennis Lacy in the electronics department select a cd from the shelf and began to behaive very suspicious b y constently looking around and actiong as if he was waiting for the aisle the clear of bystanders. I began to follow Mr. Lacy to the automotive department, where there he removed a set of keys from his right side front pocket and used them to open t he cd then concealed it in his left breast pocket. Mr. Lacy then tossed the empty cd case onto a shelf. With Mr. Lacy still in clear view, I then followed him to hardware. There, Mr. Lacy selected three cans of spray paint. I continued to follow Mr. Lacy to the front end of the facility. He stopped in foods and selected a can of cinnamon rolls. Mr. Lacy then went to a front end register and purchased the spray paint and cinnamon rolls, but did not make any attemt to purchase the cd. With Mr. Lac y still in clear view, I followed him to the front entrance. I approached Mr. Lacy approximately 4-5 feet from the exit doors. I approached Mr. Lacy and identified myself as Warren, Asset protection for Wal-Mart. Mr. Lacy immediately became very host ile. I asked if he had any merchandise from the store on his person which he did not pay purchase. Mr. Lacy pulled the cd from his left breast pocket and began to curse and stated that he brought the cd in with him. I produced the empty case and aske d Mr. Lacy to come back inside to resolve the issue. Mr. Lacy continued to curse and became very hostile. I then had to physicall restrain Mr. Lacy and escort him back inside. During this time I noticed that he had a screw driver stuffed half way in the back of his pants. Mr. Lacy continued to make verbal threat and swung at my face. After restraining Mr. Lacy, assistant manager Michael Stewart came to assist in getting Mr. Lacy into the AP office. During my interview with Mr. Lacy the californi a penal code was read to him and he refused to sign a trespass form and continued to make verbal threats. With Michael Stewart as witness, I notified Oceanside Police. Officer C. Wilson responded. Mr. Lacy was released to the custody of Oceanside pol ice. This ends my investigation.

## Item Information:

| Item Description | Item Cost | Item Quantity | Item Total | Dept |
|---|---|---|---|---|
| Rascal Flatts CD | $ 14.96 | 1 | $ 14.96 | 5 |
| | | | **Total Merchandise** $ 14.96 | |

**ATTACHMENT "B"**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*

**Dennis E Lacy, F-64225**
**Sierra Conservation Center 5150 O'Byrnes Ferry Rd**
**J9-08L**
**Jamestown, CA 95327**

Telephone

FAX

E-MAIL

ATTORNEY FOR *(Name):*    **IN PROPRIA PERSONA**

FOR COURT USE ONLY

**San Diego County Superior Court - Vista**

STREET ADDRESS:    **325 S Melrose Dr**
MAILING ADDRESS:
CITY AND ZIP CODE:    **Vista, CA  92081**
BRANCH NAME:    **Vista**

PLAINTIFF:    **Dennis Everett Lacy**

DEFENDANT:    **Warren A. Woodberry et al.,**

| **PROOF OF SERVICE** | FILE NUMBER **2007449624** | COURT CASE NUMBER **37-2007-00079792** |
|---|---|---|

1.  At the time of service, I was at least 18 years of age and not a party to this action

2.  I received the following papers on 12/17/2007:
    f. other (specify documents):    **Form Interrogatories, Stipulation to use of Alternative Dispute Resolution Process, Complaint, Civil Case Cover Sheet, Notice to Litigants, Notice of Case Assignment, Summons, EXEMPLARY DAMAGES ATTACHMENT, INTERROGATORIES SUBMITTED FOR WARREN A. WOODBERRY SET NUMBER TWO (02), REQUEST FOR ADMISSION**

3.  After due search, careful inquiry and diligent attempts at the dwelling house or usual place of abode and/or business, I have been unable to make personal delivery of said process on the following person(s) herein named, to wit:
    **Warren A Woodberry**
    **3405 Marron Rd**
    **Oceanside, CA 92056-4673**

4.  See Attachment for Declaration of Diligence.

7.  Person who attempted Service:
    a. Name:    **S Bauer 3904**
    b. Address:    **San Diego County Sheriff**
    **Sheriff's Civil Office 325 South Melrose Dr  Ste 2400**
    **Vista, CA 92081-6692**

    c. Phone:    **(760) 940-2898**
    d. The fee for service was:    **$30.00 (Waived)**

9. I am a California sheriff or marshal and I certify that the foregoing is true and correct.

THOMAS A. CLEARY

Date: December 20, 2007

Sheriff's Authorized Agent
William B. Kolender, Sheriff

Hearing:  **<No Information>**

Remarks: **This Service was Unsuccessful because the person in Item 3 was not found**

Judicial Council form POS-010    Mail Copy    174107

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | | FOR COURT USE ONLY |
|---|---|---|
| **Dennis E Lacy, F-64225**<br>**Sierra Conservation Center 5150 O'Byrnes Ferry Rd**<br>**09-08L**<br>**Jamestown, CA 95327** | Telephone<br><br>FAX | |
| ATTORNEY FOR *(Name)*:  **IN PROPRIA PERSONA** | | |

| **San Diego County Superior Court - Vista** |
|---|
| STREET ADDRESS:  **325 S Melrose Dr** |
| MAILING ADDRESS: |
| CITY AND ZIP CODE:  **Vista CA 92081** |
| BRANCH NAME:  **Vista** |

| PLAINTIFF:  **Dennis Everett Lacy** |
|---|
| DEFENDANT:  **Warren A. Woodberry et al.,** |

| **DECLARATION OF DILIGENCE** | FILE NUMBER<br>**2007449624** | COURT CASE NUMBER<br>**37-2007-00079792** |
|---|---|---|

Declaration of attempts to personally serve: Warren A Woodberry

1st: Date/Time: 12/18/2007 12:51 PM    Deputy:  S Bauer 3904
   Addr: 3405 Marron Rd Oceanside CA 92056-4673, Remark: defendant is no longer and employee

December 20, 2007                              Mail Copy                                  174107

# ATTACHMENT "C"

DUPLICATE



DUPLICATE

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | | FOR COURT USE ONLY |
|---|---|---|
| **Dennis E. Lacy F-64225**<br>**5150 O'Byrnes Ferry Rd 09-08L**<br>**Jamestown, CA 95327**<br>E-MAIL:<br><br>ATTORNEY FOR *(Name):*    **IN PROPRIA PERSONA** | Telephone<br><br>FAX | |

**San Diego County Superior Court - Vista**
STREET ADDRESS: **325 S Melrose Dr**
MAILING ADDRESS:
CITY AND ZIP CODE: **Vista, CA  92081**
BRANCH NAME: **Vista**

PLAINTIFF: **Dennis Everett Lacy**

DEFENDANT: **Warren A. Woodberry et al.,**

| **PROOF OF SERVICE** | FILE NUMBER<br>**2008440077** | COURT CASE NUMBER<br>**37-2007-<br>00079792** |
|---|---|---|

1. At the time of service, I was at least 18 years of age and not a party to this action

2. I received the following papers on 1/7/2008:
   f. other (specify documents):    **Attachment(s), Form Interrogatories, Stipulation to use of Alternative Dispute Resolution Process, Complaint, Civil Case Cover Sheet, Notice to Litigants, Notice of Case Assignment, Summons, EXEMPLARY DAMAGES ATTACHMENT, INTERROGATORIES SUBMITTED FOR: WARREN A. WOODBERRY SET NUMBER TWO(02), REQUEST FOR ADMISSIONS**

3. After due search, careful inquiry and diligent attempts at the dwelling house or usual place of abode and/or business, I have been unable to make personal delivery of said process on the following person(s) herein named, to wit:
   **Warren A. Woodberry**
   **213 Fryman Ct**
   **Oceanside, CA 92058-7746**

4. See Attachment for Declaration of Diligence.

7. Person who attempted Service:
   a. Name:        **C Newsom, Jr 2530**
   b. Address:     **San Diego County Sheriff**
                   **Sheriff's Civil Office 325 South Melrose Dr  Ste 2400**
                   **Vista, CA 92081-6692**

   c. Phone:       **(760) 940-2898**
   d. The fee for service was:        **$30.00 (Waived)**

9. I am a California sheriff or marshal and I certify that the foregoing is true and correct.

THOMAS A. CLEARY

Date: January 23, 2008                        Sheriff's Authorized Agent
                                              William B. Kolender, Sheriff

Hearing:  <No Information>

Remarks: **This Service was Unsuccessful because the person in Item 3 was not found**

Judicial Council form POS-010                 Mail Copy                              179220

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | | FOR COURT USE ONLY |
|---|---|---|
| Dennis E. Lacy F-64225<br>5150 O'Byrnes Ferry Rd 09-08L<br>Jamestown, CA 95327<br>E-MAIL | Telephone<br><br>FAX | |
| ATTORNEY FOR (Name):    **IN PROPRIA PERSONA** | | |

| San Diego County Superior Court - Vista | |
|---|---|
| STREET ADDRESS:    **325 S Melrose Dr** | |
| MAILING ADDRESS: | |
| CITY AND ZIP CODE:    **Vista CA 92081** | |
| BRANCH NAME:    **Vista** | |

| PLAINTIFF:    **Dennis Everett Lacy** |
|---|
| DEFENDANT:    **Warren A. Woodberry et al.,** |

| **DECLARATION OF DILIGENCE** | FILE NUMBER<br>**2008440077** | COURT CASE NUMBER<br>**37-2007-00079792** |
|---|---|---|

Declaration of attempts to personally serve: Warren A. Woodberry

1st: Date/Time: 1/9/2008 4:20 PM    Deputy: C Newsom, Jr 2530
    Addr: 213 Fryman Ct Oceanside CA 92058-7746, Remark: Per Base Legal, defendant unknown to been in base housing.

| TO *(Name and Address):*                                    TELEPHONE NO.: | LEVYING OFFICER *(Name and Address):* |
|---|---|
| Dennis E. Lacy F-64225<br>5150 O'Byrnes Ferry Rd 09-08L<br>Jamestown, CA 95327 | County of San Diego<br>San Diego County Sheriff<br>Sheriff's Civil Office<br>325 South Melrose Dr  Ste 2400<br>Vista, CA 92081-6692 |
| NAME OF COURT, JUDICIAL DISTRICT OR BRANCH COURT, IF ANY:<br><br>San Diego County Superior Court<br>325 S Melrose Dr<br>Vista, CA 92081 | |
| PLAINTIFF:   Dennis Everett Lacy<br>DEFENDANT:   Warren A. Woodberry et al., | |

| **NOTICE OF ACTION TAKEN** | LEVYING OFFICER FILE NO.: | COURT CASE NO.: |
|---|---|---|
| | 2008440077 | 37-2007-00079792 |

WE ARE UNABLE TO PROCESS YOUR REQUEST FOR THE REASON(S) INDICATED BELOW:
*Every effort has been taken to locate all errors. Please re-check your documents for any additional errors before returning to us.*

      * Other: WE ARE RETURNING YOUR LETTER DATED 1/14/08  WHEREIN YOU REQUESTED WE SERVE DEFENDANT WARREN A WOODBERRY AT 213 FRYMAN COURT, OCEANSIDE,CA 92057. AS YOU CAN SEE IN THE ATTACHED PROOF OF SERVICE THAT WAS ORIGINALLY MAILED TO YOU ON 1/10/08, OUR OFFICE ALREADY ATTEMPTED SERVICE AT THAT ADDRESS AND WAS ADVISED BY CAMP PENDLETON'S BASE LEGAL THAT SAID DEFENDANT WAS UNKNOWN TO BE IN BASE HOUSING.

By: Erin O'Neill                          Date Received: 01/18/08                          Date Returned: 01/23/2008
CAS 15-1                                                                                                                    2755
Revised 4/27/2001

# ATTACHMENT "D"

1    Andrew N. Kohn, Esq., SBN 166385
     Krystal R. Aguilera, Esq., SBN 238640
2    Robert A. Ortiz, Esq., SBN 246849
     **PETTIT KOHN INGRASSIA & LUTZ PC**
3    12250 El Camino Real, Suite 350
     San Diego, CA 92130-3071
4    (858) 755-8500/ FAX (858) 755-8504
     Email: akohn@pettitkohn.com;
5            kaguilera@pettitkohn.com

6    Attorneys for Defendants **WAL-MART
     STORES, INC. and MICHAEL**
7    **STEWART**

8            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9            **COUNTY OF SAN DIEGO – NORTH COUNTY DIVISION**

10

11   DENNIS EVERETT LACY,                      CASE NO.: 37-2007-00079792-CU-CR-NC

12              Plaintiff,                      **DECLARATION OF MICHAEL STEWART
                                               IN SUPPORT SPECIAL MOTION TO**
13   v.                                        **STRIKE PLAINTIFF'S COMPLAINT
                                               PURSUANT TO CODE OF CIVIL**
14                                             **PROCEDURE SECTION 425.16**
     WARREN A. WOODBERRY; MICHAEL              **(ANTI-SLAPP STATUTE)**
15   STEWART; WAL-MART STORES, INC.,
                                               Date:         May 23, 2008
16              Defendants.                    Time:         1:30 p.m.
                                               Dept.:        N-27
17                                             Judge:        Hon. Jacqueline M. Stern
                                               Complaint Filed: November 19, 2007
18                                             Trial Date:   Not Set

19           I, MICHAEL STEWART, declare as follows:        **BY FAX**

20           1.    I am an employee of Defendant Wal-Mart Stores, Inc. ("Wal-Mart"). I have

21   personal knowledge of each fact stated in this declaration.

22           2.    In January of 2007, I was employed at Wal-Mart Store #5075, located at 3405

23   Marron Road, Oceanside, California 92056.

24           3.    I was working at this store on the evening of January 4, 2007. On this date, I was

25   working in the store in the capacity as an Assistant Manager.

26           4.    In the evening of January 4, 2007, I was paged to the front of the store. As I

27   approached the front of the store, I observed former Wal-Mart loss prevention employee Warren

28   Woodberry escorting Plaintiff Dennis E. Lacy to the loss prevention office.

                                              1
DECLARATION OF MICHAEL STEWART IN SUPPORT SPECIAL MOTION TO STRIKE PLAINTIFF'S
COMPLAINT PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16

EXHIBIT 1

5.    Per store procedure, I followed Mr. Woodberry and Mr. Lacy to the loss prevention office and contacted the Oceanside Police Department.  I advised Mr. Lacy that the police were on route to the store.

6.    After approximately fifteen minutes, police officers arrived at the store.  Upon arrival of the police, I left the loss prevention office.

7.    The police arrested Mr. Lacy that evening.

8.    I had no interactions with Oceanside police officers or Mr. Lacy after leaving the loss prevention office.

9.    At no time did I say anything to any individual that was untrue, or designed for the purpose of harming Mr. Lacy.  My purpose in calling the police was to report Mr. Lacy's attempted shoplifting.

10.    I was never subpoenaed to appear at any criminal hearing involving Mr. Lacy.

11.    I never testified at any criminal hearing involving Mr. Lacy.

12.    I never provided any statements or declarations to any individual or entity relating to the January 4, 2007 incident at Wal-Mart.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 29th day of February, 2008 in Riverside, California.

MICHAEL STEWART

DECLARATION OF MICHAEL STEWART IN SUPPORT SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16

2354-1467

# ATTACHMENT "E"



**UNITED STATES MARINE CORPS**
Base Magistrate
Office of the Staff Judge Advocate
Marine Corps Base
BOX 555010
Camp Pendleton, California 92055-5010

5800
PBD/dmg
13 May 08

Mr. Dennis E. Lacy F-64225
Sierra Conservation Center
5150 O'Byrnes Ferry Road 09-08L
Jamestown, CA 95327

Re:  CIVIL DOCUMENTS FOR WARREN A. WOODBERRY RECEIVED ON 07 MAY 08

Dear Mr. Lacy:

On 7 May 2008, the Civil Processing Section, Marine Corps Base,
Camp Pendleton, California received a mailing from you containing
legal documents for service on a Warren A. Woodberry.  In response
to your request, this office contacted the Central Housing Office
here at Camp Pendleton in an effort to locate the individual, and
based on Housing's records, this individual does not currently
reside aboard the base or ever occupied those quarters at that
address.  Contact was made with the current resident of 213 Fryman
Court and they indicated no knowledge of this individual or his
whereabouts, that being the case, your documents are being
returned with no action taken by this office.

Questions pertaining to this letter can be answered in the Civil
Processing Section, Base Magistrate's Office, Building #22161 or
by phone at (760) 725-5302/5561.

Sincerely,

P. B. DAVIS
Base Magistrate